Fee Pd $150
Rec# 1747
[signature]

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LISA BROWN, M.D., ) | |
| ) | |
| Plaintiff, ) | Erie Division |
| ) | |
| v. ) | Civil Action No. 05-32 E |
| ) | |
| HAMOT MEDICAL CENTER, ) | |
| ) | |
| Defendant. ) | |

ERIE ① SP

## COMPLAINT

This is an action for employment discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. Ann. §§ 951-63 ("PHRA"), and for breach of contract.

### The Parties

1.  Plaintiff Lisa Brown, M.D., is an adult citizen of Pennsylvania who resides in this district.

2.  Hamot Medical Center is a non-stock, non-profit corporation organized under the laws of this Commonwealth, engaged in establishing and operating hospitals and health care units. Its principal place of business is at 201 State Street, Erie, Pennsylvania, 16550.

### Jurisdiction and Venue

3.  This court properly exercises jurisdiction over the subject matter of this action, which arises under federal law, based on 28 U.S.C § 1331. Jurisdiction over the supplemental state law claims is invoked pursuant to 28 U.S.C. § 1367. Venue is

proper in this district under 28 U.S.C. § 1391(b)(1) and (2) because a substantial part of the acts giving rise to plaintiff's claims occurred in this district, and because Hamot resides in this district.

## Factual Background

4. Among its various activities, Hamot sponsors graduate medical education. It has a five year Orthopaedic Residency Program ("the Program") in which it educates and trains resident physicians in the care and management of injuries and diseases of the musculoskeletal system, and trains resident physicians in the nonsurgical and surgical skills necessary to provide proper orthopedic care. Terms and conditions of Hamot's employment and training of residents are governed by a series of one-year contracts that are typically renewed throughout the course of the residency. Hamot policy is that all residents are expected to complete the Program.

5. John D. Lubahn, M.D., is the director of Hamot's Orthopaedic Residency Program.

6. From July 2001 to June 2004, through three years of the five year Program, Brown was employed as an orthopedic resident for Hamot. As an orthopedic resident, Brown was required to fulfill the educational requirements of the Program, obtain a full and unrestricted license to practice medicine in the Commonwealth, and abide by all of Hamot's policies.

7. Brown was the only female resident in the Program. Over the last fifteen years, only two other women have been admitted to the Program. Only one woman has ever completed the Program.

8. During Brown's third year in the Program, she was responsible for, among other duties, admitting histories and physical examinations; organizing laboratory and x-ray studies; presenting patients to the attending surgeons or senior residents; conducting new patient work-ups; application of casts on clinic patients; evaluating, treating, and consulting patients in the emergency room; and assisting in surgery.

9. Throughout Brown's residency, the majority of the ratings on her evaluations were average or better. In October 2002, Brown was selected to receive Hamot's Ambassador Award for her exemplary energy, dedication, behavior, and sense of commitment. In addition, Brown received numerous patient acknowledgments thanking her for professional care. In January and February 2002, Brown spent four weeks at Flagship Cardiac Vascular Thoracic Surgery of Erie. Gregory F. Kish, M.D., evaluated Brown's performance during those four weeks, stating that all members of the group believed she would make a fine orthopedic surgeon.

10. Residents in the Orthopaedic Residency Program are required to participate in the Orthopaedic In-Training Examination ("OITE"). The OITE is a national examination designed to be an educational tool for residents. The American Academy of Orthopaedic Surgeons Evaluation Committee, which sponsors the OITE, expressly warns that it should not be used as a qualifying examination, or for determining resident promotion.

11. According to Hamot, Brown performed poorly on the OITE. Contrary to the intent of the sponsors of the OITE, Lubahn improperly treated the OITE as a qualifying exam for Brown.

3

12. On March 1, 2004, Lubahn informed Brown that her contract would not be renewed at the end of the academic year because of her clinical performance and her current knowledge base. On February 11, 2004, however, just eighteen days before she was advised of her termination, Brown received an evaluation in which she was rated average or above average in every one of the 28 categories of skills rated. On January 30, 2004, Lubahn himself evaluated Brown. He observed that her clinical performance had improved and was acceptable, and that her microsurgical skills lab work was excellent. His evaluation improperly focused on the OITE, although he outlined goals for improving her scores in the succeeding two years. He mentioned nothing about her termination from the Program, which occurred approximately one month later.

13. Hamot maintains an Advancement and Dismissal Policy which outlines the procedure to be followed if a resident is not meeting the requirements of the Program. The policy provides that a resident will first be counseled by the Program Director. At that point, the resident will receive only a verbal warning unless the situation should be deemed more serious. Should the resident who has received a verbal warning fail to meet expectations on subsequent activities, that resident will meet with the Program Director and be placed on academic probation status. A resident will then receive a letter outlining the reasons for academic probation. Should the resident fail to improve or to meet expectations as identified in the academic probation letter, the faculty will determine at that time if remediation will be helpful. If faculty review reveals that the resident is unlikely to improve with remediation, the resident will be terminated from the Program pending Hamot's due process grievance procedure.

4

14. Brown's third year residency contract with Hamot ran from July 1, 2003 to June 30, 2004. This contract provides that both Hamot and Brown are bound by all of Hamot's rules and regulations, including Hamot's Advancement and Dismissal policy.

15. During the contract period July 1, 2003 to June 30, 2004, Brown did not receive a verbal warning from Lubahn that she was not meeting the expectations of the Program. Brown was not placed on academic probation, nor was she given a letter outlining the expectations of the Program. At no time did the faculty meet to discuss whether remediation would be helpful to Brown. Moreover, according to Hamot's Advancement and Dismissal policy, Lubahn did not have sole authority to terminate Brown's participation in the program, which he exercised improperly.

16. After being advised of her termination, Brown filed a grievance in accordance with Hamot's Grievance Resolution and Due Process Procedure.

17. Once Brown asked for review of the termination decision, Hamot's failure to adhere to its obligations continued. For example, when Brown met with the grievance committee, committee members focused their questions to Brown on her performance on the OITE, ignoring the OITE's disclaimer over its use as a tool for resident evaluation or promotion. Furthermore, when the committee learned of this disclaimer, they approved Lubahn's decision only in the most general terms, failing to identify any particular deficiencies in Brown's performance. Moreover, the letter informing Brown of the committee's decision is dated April 7, 2004, when the committee's final meeting was scheduled for April 8, 2004. In addition, Brown is aware that at least one member of the committee did not vote on her review decision, nor was he even aware that a final vote on the review decision had taken place.

18. Brown was subject to sex-based comments and treatment from other employees at Hamot, such as "you're the only female in a man's world." Male residents took trips to strip clubs, from which Brown was excluded because she was a woman. One male resident announced to Brown a goal that he had set -- to have sex with Brown before she graduated. This comment was entirely unwelcome and uninvited. At other times, male physicians made lewd comments about Brown's physical attributes in front of other Hamot employees.

19. Brown has satisfied all administrative prerequisites under Title VII and the Pennsylvania Human Relations Act before filing this action.

## Statement of Claims

### Count One
### Sex Discrimination under Title VII

20. Brown is a member of a group protected by Title VII.

21. Brown was not only qualified to perform the duties of her position, she was evaluated, approved, and praised for her performance before her termination.

22. Despite her qualifications, Brown was terminated from the Orthopaedic Residency Program.

23. Brown's sex was a motivating factor in Hamot's termination of Brown's employment. Hamot treated her as inferior because of her sex. Hamot subjected her to conduct to which men were not subject, and held her to standards to which men were not held. Hamot's proffered reasons for terminating Brown are a pretext to hide its discriminatory motivation.

6

24. Brown believes and therefore avers that similarly situated men were treated more favorably than her. Hamot's unfavorable treatment of women is shown in part by its record of hiring, advancement, and discipline with regard to female residents.

25. Hamot's conduct was willful.

26. Hamot's conduct violated Title VII, and has damaged Brown to the extent set forth below.

## Count Two
### Pennsylvania Human Relations Act

27. Brown is a member of a group protected by the PHRA.

28. Brown was not only qualified to perform the duties of her position, she was evaluated, approved, and praised for her performance before her termination.

29. Despite her qualifications, Brown was terminated from the Orthopaedic Residency Program.

30. Brown's sex was a motivating factor in Hamot's termination of Brown's employment. Hamot treated her as inferior because of her sex. Hamot subjected her to conduct to which men were not subject, and held her to standards to which men were not held. Hamot's proffered reasons for terminating Brown are a pretext to hide its discriminatory motivation.

31. Brown believes and therefore avers that similarly situated men were treated more favorably than her. Hamot's unfavorable treatment of women is shown in part by its record of hiring, advancement, and discipline with regard to female residents.

32. Hamot's conduct was willful.

33. Hamot's conduct violated the PHRA, and has damaged Brown to the extent set forth below.

7

## Count Three
## Breach of Contract
### Lack of Proper Cause for Termination

34. Hamot and Brown entered into an employment contract whereby they agreed to be bound by all the terms of Hamot's rules and regulations.

35. Brown met all her obligations under the contract, such as fulfilling the educational requirements of the Orthopaedic Residency Program, using her best efforts to provide safe, effective, and compassionate care to patients, and following Hamot's rules and regulations.

36. The contract required Hamot to have proper cause for terminating the parties' relationship. Hamot breached its duties under the contract by not having proper cause to terminate Brown from the Program.

37. Hamot's conduct has damaged Brown to the extent set forth below.

## Count Four
## Breach of Contract
### Advancement and Dismissal Policy

38. Hamot and Brown entered into an employment contract whereby they agreed to be bound by all the terms of Hamot's rules and regulations, including, but not limited to, the Advancement and Dismissal Policy.

39. Brown met all her obligations under the contract, such as fulfilling the educational requirements of the Orthopaedic Residency Program, using her best efforts to provide safe, effective and compassionate care to patients, and following Hamot's rules and regulations.

40. Hamot breached its duties under the employment contract by not following its procedures outlined in its Advancement and Dismissal Policy. Specifically,

during the relevant contract period, Hamot failed to verbally warn Brown that she was not meeting the expectations of the Orthopaedic Residency Program; failed to place Brown on academic probation and provide her with a letter outlining the reasons for academic probation; failed to have the faculty meet and determine if remediation would be helpful for Brown; and failed to continuously evaluate Brown and provide her with feedback about her performance.

41.     Hamot's conduct has damaged Brown to the extent set forth below.

## Count Five
## Breach of Contract
### Grievance Resolution and Due Process Procedure

42.     Hamot and Brown entered into an employment contract whereby Hamot and Brown agreed to be legally bound by all terms of Hamot's rules and regulations, including, but not limited to, the Grievance Resolution and Due Process Procedure.

43.     Brown met all her obligations under the contract, such as fulfilling the educational requirements of the Orthopaedic Residency Program, using her best efforts to provide safe, effective and compassionate care to patients, and following Hamot's rules and regulations.

44.     Hamot breached its duties under the employment contract by not following its Grievance Resolution and Due Process Procedure. Specifically, Hamot failed to provide a resolution at step two of the grievance procedure; improperly focused on Brown's performance on the OITE as a condition for retention in the Program; failed to require the votes of the entire grievance committee; and failed to provide timely and unprompted review by the Medical Education Committee, the Medical Staff Executive Committee, or the Board of Directors.

45.     Hamot's conduct has damaged Brown to the extent set forth below.

## REQUEST FOR RELIEF

Hamot's actions have caused Brown lost wages, benefits, and seniority; pain, suffering, embarrassment, and humiliation; severe mental, emotional, and physical distress; and the interruption of her career and the accompanying income and benefits associated with practice as an orthopedic surgeon.

Accordingly, Brown requests that the court enter an order:

Finding that Hamot violated Title VII;

Finding that Hamot violated the PHRA;

Finding that Hamot breached its contract with Brown;

Restoring plaintiff to the position she would have attained had she not been the subject of Hamot's unlawful discrimination;

Awarding plaintiff back pay, benefits, and seniority rights from the date of her discharge to the date of her reinstatement;

Awarding plaintiff double the amount of her back pay because her termination was willful;

Awarding plaintiff front pay until her projected retirement age should the court find that the employment relationship is not suitable for plaintiff's reinstatement;

Awarding plaintiff compensatory damages for pain, suffering, embarrassment, humiliation, and reputational harm;

Awarding plaintiff all damages incurred as a consequence of defendant's breaches of contract, and which are necessary to place plaintiff in the position she otherwise would have occupied had the contract been followed;

Awarding plaintiff attorney's fees, costs, interest, prejudgment interest, witness fees, and any other relief to which she is entitled.

Plaintiff demands a jury trial for all claims triable by jury.

Respectfully submitted,

Leech Tishman Fuscaldo & Lampl, LLC

*Patrick Sorek*

Patrick Sorek
Pa. ID 41827
Citizens Bank Building, 30th Floor
525 William Penn Place
Pittsburgh, Pennsylvania  15219
(412) 261-1600
Attorneys for plaintiff

January 26, 2005

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

 ERIE 05-32 E

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
LISA BROWN

**DEFENDANTS**
HAMOT MEDICAL CENTER

(b) County of Residence of First Listed Plaintiff: Erie
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant: Erie
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Patrick Sorek
Leech Tishman Fuscaldo & Lampl
525 Wm. Penn Place 30th Fl
Pittsburgh PA 15219   412-261-1600

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☒ 3  Federal Question (U.S. Government Not a Party)
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY | PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | PERSONAL PROPERTY | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☒ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 U.S.C. § 2000e
Brief description of cause: Sex discrimination in termination of employment

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE: 1/26/05
SIGNATURE OF ATTORNEY OF RECORD: Patrick Sorek

**FOR OFFICE USE ONLY**
RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

JS 44A REVISED OCTOBER, 1993

IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

THIS CASE DESIGNATION SHEET MUST BE COMPLETED

**PART A**

This case belongs on the ( _X_ Erie _____ Johnstown _____ Pittsburgh) calendar.

1. ERIE CALENDAR - If cause of action arose in the counties of Crawford, Elk, Erie, Forest, McKean, Venang or Warren, OR any plaintiff or defendant resides in one of said counties.
2. JOHNSTOWN CALENDAR - If cause of action arose in the counties of Bedford, Blair, Cambria, Clearfield or Somerset OR any plaintiff or defendant resides in one of said counties.
3. Complete if on ERIE CALENDAR: I certify that the cause of action arose in _Erie_ County and that the _defendant_ resides in _Erie_ County.
4. Complete if on JOHNSTOWN CALENDAR: I certify that the cause of action arose in _____ County and that the _____ resides in _____ County.

**PART B** (You are to check ONE of the following)

1. _____ This case is related to Number _____ Judge _____.
2. _X_ This case is not related to a pending or terminated case.

**DEFINITIONS OF RELATED CASES:**

CIVIL: Civil cases are deemed related when a case filed relates to property included in another suit or involves the same issues of fact or it grows out of the same transactions as another suit or involves the validity or infringement of a patent involved in another suit

EMINENT DOMAIN: Cases in contiguous closely located groups and in common ownership groups which will lend themselves to consolidation for trial shall be deemed related.

HABEAS CORPUS & CIVIL RIGHTS: All habeas corpus petitions filed by the same individual shall be deemed related. All pro se Civil Rights actions by the same individual shall be deemed related.

**PART C**

1. CIVIL CATEGORY (Place x in only applicable category).
   1. ( ) Antitrust and Securities Act Cases
   2. ( ) Labor-Management Relations
   3. ( ) Habeas Corpus
   4. (X) Civil Rights
   5. ( ) Patent, Copyright, and Trademark
   6. ( ) Eminent Domain
   7. ( ) All other federal question cases
   8. ( ) All personal and property damage tort cases, including maritime, FELA, Jones Act, Motor vehicle, products liability, assault, defamation, malicious prosecution, and false arrest
   9. ( ) Insurance indemnity, contract and other diversity cases.
   10. ( ) Government Collection Cases (shall include HEW Student Loans (Education), VA Overpayment, Overpayment of Social Security, Enlistment Overpayment (Army, Navy, etc.), HUD Loans, GAO Loans (Misc. Types), Mortgage Foreclosures, S.B.A. Loans, Civil Penalties and Coal Mine Penalty and Reclamation Fees.)

I certify that to the best of my knowledge the entries on this Case Designation Sheet are true and correct

Date: _1/26/05_

_Patrick Sorek_

ATTORNEY AT LAW

NOTE: ALL SECTIONS OF BOTH SIDES MUST BE COMPLETED BEFORE CASE CAN BE PROCESSED.