IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LISA BROWN, M.D., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>HAMOT MEDICAL CENTER, )<br>)<br>Defendant. ) | Civil Action No. 05-32 E |

PLAINTIFF'S RENEWED MOTION TO COMPEL

This is an action for employment discrimination under Title VII, and for breach of contract. Plaintiff ("Brown") was in the third year of a five year residency in orthopedic surgery when defendant ("Hamot") terminated her contract.

Intending to get a prompt start to discovery after filing her Complaint on January 26, 2005, Brown served Requests for Production of Documents on March 24, 2005. After extending the period for defendant to respond, Brown received responses on June 3, 2005 that were almost entirely inadequate. Tab 1. Brown moved to compel proper production under Federal Rule of Civil Procedure 37, and was prepared to argue the motion at the June 21, 2005 Case Management Conference. At the case management conference, the court requested that the parties attempt to work out their differences.

The parties then negotiated a confidentiality agreement, which the court approved. Since then, Hamot has produced documents in a continual and unexplained sequence; declined to produce key documents; and left its written responses to Brown's

first document requests unsupplemented. The court should remedy these deficiencies with an appropriate order under Federal Rule of Civil Procedure 37.

A.  Law Applicable to Discovery

"Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . ." Fed.R.Civ.P. 26(b)(1). Rule 37(a)(2)(B) provides that

> [I]f a party, in response to a request for inspection submitted under Rule 34, fails to respond that inspection will be permitted as requested or fails to permit inspection as requested, the discovering party may move for an order compelling an answer, or a designation, or an order compelling inspection in accordance with the request.

The discovery rules are designed to enable the parties "to obtain the fullest possible knowledge of the issues and facts before trial." Hickman v. Taylor, 329 U.S. 495, 501 (1947). The rules "are to be accorded a broad and liberal treatment." Id. at 507. Relevancy under Rule 26 has been "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978). While the most recent formulation of Rule 26(b)(1) narrows the definition of relevancy in the rules,[1] the clear preference for liberal discovery remains.

It likely is stating the obvious to observe that "[u]nder the Federal Rules of Civil Procedure and our jurisprudence, district courts have broad discretion to manage discovery." Sempier v. Johnson & Higgins, 45 F.3d 724, 734 (3d Cir. 1995). In Sempier, the Third Circuit added that

---

[1] Before 2000, discovery was available for information relevant to the subject matter of the action, as opposed to the claims and defenses. See Advisory Committee Notes regarding 2000 Amendment to Rule 26(b)(1).

the district court's discretion has boundaries, and in particular, we frown upon unnecessary discovery limitations in Title VII, and hence ADEA, cases. See Trevino v. Celanese Corp., 701 F.2d 397, 405 (5th Cir. 1983). In such cases, other courts have refused, and now we refuse, "to allow procedural technicalities to impede the full vindication of guaranteed rights." Id. at 406.

Brown asks the court to exercise its discretion accordingly in resolving this dispute.

Finally, Brown notes that Rule 37 accounts for responses such as Hamot's in a way that favors Brown. Rule 37(a)(3) states: "For purposes of this subdivision an evasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer, or respond." The governing rules are intended to discourage the sort of piecemeal efforts Hamot has made here.

B.   Hamot's Responses Reveal a Casual Approach to Discovery

Counsel for the parties have had a number of exchanges about discovery, and while counsel have disagreements, Brown does not believe the problem lies in intentional omissions or misinterpretations by counsel. Hamot's approach to its discovery responsibilities simply is not consistent with its obligations under the Federal Rules of Civil Procedure. The court should consider Hamot's shortcomings in devising any potential remedy.

As mentioned above, Brown served Requests for Production of Documents on March 24, 2005. After agreeing to an extension, Brown received responses on June 3, 2005. Tab 1. These were inadequate, but the court urged counsel at the case management conference several weeks later to work out their differences.

As Brown continued to make inquiries, and as weeks passed and the first round of depositions approached, documents continued to dribble out of Hamot's files. Hamot produced documents pursuant to Brown's First Request for Production on June 3, 2005;

3

August 1, 2005; August 17, 2005; August 22, 2005; and August 31, 2005 (confirmed by a September 7, 2005 letter). Tab 2 (in chronological order).[2] Not registered by correspondence but handed to Brown's counsel on August 30, 2005, before a deposition were 133 pages -- about 10% of the total documents produced -- directly related to Brown's performance and termination. These documents included, for example, a statement by the terminating official about the reasons he fired Brown.

It is noteworthy that in an August 10, 2005 letter, Hamot "re-confirmed" that it had "produced everything that [it] has" about certain key document requests such as Brown's discharge. Tab 2. Production was supplemented four times after this reconfirmation.

These problems seem to be the result of Hamot's informal approach to its responsibilities under the Federal Rules of Civil Procedure. In July 2004, Brown sent a notice to Hamot -- specifically, to Donald Inderlied, its Senior Vice President for Human Resources and Chief Compliance Officer -- to preserve documents related to Brown. Tab 3. At his deposition, Inderlied testified that, based on Brown's notice, he wrote a memo about preserving such documents. Patricia Rogers, the recordkeeper and coordinator of the orthopedic residency program, did not receive the memo, however. Tab 4, Inderlied Deposition Transcript at 21 lines 7 to 9. In addition, Inderlied had no idea why Hamot kept finding new batches of documents requested by Brown. Id. at page 27 lines 1 to 3.

---

[2] The letter at Tab 2 dated September 7, 2005 refers to a <u>second</u> group of responsive documents Hamot produced during depositions of Hamot personnel taken the previous week.

4

Patricia Rogers is the orthopedic residency coordinator at Hamot. Tab 5, Rogers Deposition Transcript at page 12 line 24. Among her duties is recordkeeping for the orthopedic residents. Id. at 18 lines 11-17. Rogers was not sure how to decide what records should be maintained in residents' files. Id. page 23 line 24 to page 24 line 9. She was not sure what Hamot's e-mail retention policy is. Id. page 24 lines 4 to 9. She did not receive anything in writing about collecting documents requested by Brown; she was "just asked to give him [Donald Inderlied, Director of Human Resources] the file, and if there was anything that I had, to give it to him." Id. at page 25 lines 8 to 10.

Thus, the recordkeeper for the orthopedic residency program did not even see Brown's Request for Production of Documents. Id. at page 36 lines 9 to 25. This is not an adequate method of collecting documents pursuant to a Rule 34 request for production of documents. In addition, there are many other requests Brown made for other documents which do not involve Brown which Rogers treated in the same way. It is not appropriate for the main recordkeeper in a discrimination case involving a physician's termination, faced with 45 particularized document requests, to respond by simply being told "just give me anything you have on Brown." Moreover, Hamot shows no consideration of the deadlines in Rule 34 when it supplements its initial production four separate times. The court should remedy this inadequate response with a careful order to supplement, as requested below.

C.   Hamot Cannot Limit the Relevant
     Period of Investigation to 2001 Forward

Brown requested certain documents for the time period beginning in the year 1995, or ten years before this action was filed. Tab 1, e.g., Document Requests 7, 14-16, 20, 39. Hamot has refused to provide documents for orthopedic residents from any

5

year before 2001, the year Brown entered the residency program. This boundary is unrelated to any of the legal rules that govern Brown's claims, and deprives her of the majority of evidence to which she is entitled to satisfy her legal burdens.

Brown has made a claim under Title VII. To establish a prima facie case of sex discrimination under Title VII, Brown must show that she is a member of a protected class, that she was qualified for her position, and that she was discharged under conditions that give rise to an inference of unlawful discrimination. <u>Geraci v. Moody-Tottrup Int'l Inc.</u>, 82 F.3d 578, 580 (3d Cir. 1996). Brown was discharged for performance reasons. Tab 6. To satisfy her obligations in proving the second and third elements of her prima facie case -- her qualifications, and conditions that give rise to inferences of unlawful discrimination -- the performance of the physicians around her, both attending physicians and residents, is relevant to making these showings. If other physicians performed in ways similar to Brown, for example, but were treated more favorably, Brown is entitled to know this as a basic element of her case.

Brown is also required to show that the proffered reason for her discharge is a pretext for unlawful discrimination. See, e.g., <u>Olson v. General Elec. Astrospace</u>, 101 F.3d 947, 952 (3d Cir. 1996). The performance data for other physicians is relevant to this burden also. That is, the inference that Brown was discharged for unlawful reasons, and not for the reason proffered by Hamot, is strengthened to the extent that other physicians performed at the same level or worse, and were treated more favorably than her. There is no principled reason to limit this information to 2001, because, at minimum, <u>all other residents who have gone through the program in its history are similarly situated</u>. The only conceivable limit on this information would be

burdensomeness. Given the small number of residents and attending physicians covered by the request -- probably fewer than 40 -- burdensomeness is not an issue. Searching orthopedic residency files cannot be burdensome because they are maintained by one person in one office. Tab 5, Rogers Deposition Transcript at page 67 lines 8 to 15 and page 64 lines 12 to 14.

In <u>Williams v. URS Corp.</u>, 2005 U.S. App. LEXIS 2730 *10, the Third Circuit considered the pay of "every other employee" that a supervisor had listed for the Pittsburgh office to determine whether a plaintiff was being discriminated against in her pay. In <u>Evans v. Port Authority of NY and NJ</u>, 273 F.3d 346, 350 n. 3 (3d Cir. 2001), the Third Circuit found no error in the admission of evidence from 1999 for a 1994 promotion. In <u>Ryder v. Westinghouse Electric Corp.</u>, 128 F.3d 128, 133 (3d Cir. 1997), an age-discrimination case, the Third Circuit found no error with the admission of age-related comments made a year after the plaintiff's termination by persons who had no hand in the decision to terminate him, because they were relevant to showing corporate culture. In <u>Brewer v. Quaker State</u>, 72 F.3d 326, 333-34 (3d Cir. 1995), the Third Circuit found that age-related remarks by an executive two years before the plaintiff's termination were relevant evidence.

The point of this brief review is to demonstrate that relevant evidence comes in many forms and at many times. Hamot cannot be permitted to strangle Brown's opportunity to obtain key evidence in the case -- performance records of similarly situated persons -- with its arbitrary 2001 time limit. The hospital is the defendant here, not a particular person, and the culture or atmosphere at the hospital over the years, as the cases cited above show, is relevant. Brown should have access to all resident

records for at least ten years. The minimal comparator resident records produced thus far have useful information. One evaluation describes a resident who was not disciplined as "Poorly prepared for cases. Always in a rush." Tab 7.

Accordingly, the court should compel the production of resident records at least back to 1995.

D. Hamot Must Supplement its Written Responses and Should Be Required to Separate Documents Accordingly

While Hamot has supplied Brown with additional groups of documents, and so has supplemented its disclosures, it has never supplemented its written responses beyond those received at Tab 1. This is required under Rule 26(e). Such supplementation is necessary so that Brown can have a comprehensive and reliable response to know, for example, when such production or response is complete. This will avoid further need to bother the court with motions such as the one at hand.

In addition, Hamot has always furnished documents in single, consecutively numbered stacks. If a group of records are segregable by the request to which they are relevant, Rule 34 requires that they be identified as such. Fed.R.Civ.P. 34(b). Records can be produced as they are kept in the normal course of business, but it cannot be the normal course of business, for example, for Hamot to keep the thousand pages of documents it has produced this far in a single file. Hamot's delivery of an unsegregated group of documents deprives Brown of her ability to determine whether her requests have received a response at all, or if it has, whether the response is complete.

E. Conclusion

Brown's requests for production are focused on the elements of proof in her case. Hamot's responses are improperly limited, slow, and indistinct. The court should

issue an order that requires adherence to the discovery rules as they are written, and that does not deprive Brown of the basic information to which she is entitled in proving her case.

        Respectfully submitted,

        Leech Tishman Fuscaldo & Lampl

        *Patrick Sorek*

        Patrick Sorek
        Pa. ID 41827
        Citizens Bank Building, 30th Floor
        525 William Penn Place
        Pittsburgh, Pennsylvania 15219
        (412) 261-1600

        Counsel for plaintiff

Date: 11/11/05

## CERTIFICATE OF CONFERENCE

I hereby certify that, in accordance with Federal Rule of Civil Procedure 37(a)(2)(A) and Local Rule 37.1, I attempted to make a reasonable effort at resolving these disputes. I wrote to defendant's counsel to determine whether defendant would remedy the major deficiencies in its responses, and spoke with counsel on other occasions, and received replies that were unsatisfactory.

11/11/05
Date

Patrick Sorek

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Plaintiff's Renewed Motion to Compel was served today by facsimile and by first class mail, postage prepaid, on:

>Kerry M. Richard
>Ziad Haddad
>Tobin O'Connor Ewing & Richard
>5335 Wisconsin Avenue, NW, Suite 700
>Washington, DC  20015

_11/11/05_
Date

_Patrick Sorek_
Patrick Sorek