IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LISA BROWN, M.D., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 05-32E |
| | ) |
| HAMOT MEDICAL CENTER, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S RENEWED MOTION TO COMPEL**

Defendant Hamot Medical Center ("Hamot" or "defendant"), through its undersigned counsel, hereby submits its opposition to the Plaintiff's Motion To Compel, and states as follows:

**I.     INTRODUCTION**

Plaintiff's Renewed Motion To Compel seeks an Order requiring defendant (1) to supplement its written response to plaintiff's first request for production of documents, (2) to identify in its written response which of the documents produced are responsive to each document request, and (3) to produce its "resident records" from 1995 through the present.[1]  With respect to issues one and two, Hamot's counsel understood that these matters had been resolved months ago. In fact, when counsel for both parties last discussed the filing of plaintiff's renewed motion to compel in early October, 2005, these issues pertaining to the adequacy of defendant's written responses were not raised.  Nonetheless, despite having previously met its obligations under the

discovery rules, defendant has supplemented its written responses as requested by plaintiff. A true and correct copy of defendant's supplemental responses is attached hereto as Exhibit 1. As reflected in the attached exhibit and as set forth more fully below, defendant's supplemental responses more than satisfy defendant's discovery obligations under Rule 34.

With respect to plaintiff's request for "resident records" dating back to 1995, nearly 10 years prior to plaintiff's termination, defense counsel attempted to reach a compromise with plaintiff's counsel, but all such efforts were rebuffed. Indeed, defendant offered to provide plaintiff with all resident records from 2000 forward in accordance with this Court's holding in <u>EEOC v. Magnetics Division of Spang Industries</u>, 1976 WL 662 (W.D. Pa. 1976), and the holdings of several other courts. Unfortunately, plaintiff refused to budge an inch. For the reasons set forth below, plaintiff's overbroad request for these records should now be denied.

**II.   ARGUMENT**

    **A.   Defendant's Written Responses Satisfy The Requirements of Rule 34(b)**

Pursuant to Rule 34(b) of the Federal Rules of Civil Procedure, defendant's written responses to document requests must "state, with respect to each item or category, that inspection and related activities will be permitted as requested, unless the request is objected to, in which the reasons for the objection shall be stated." Rule 34(b) further states that "[i]f objection is made to part of an item or category, the part shall be specified and inspection permitted of the remaining parts." The rule

---

[1] Plaintiff has known for the past six months that defendant objected to producing records dating back to 1995. Indeed, plaintiff previously filed a motion to compel in June of this year, raising this very issue. At that time, the Court declined to consider plaintiff's motion. Shortly thereafter, during discussions aimed at resolving the parties' discovery disputes, defense counsel made it clear to counsel for plaintiff that it still did not believe it was obligated to produce those records. For reasons unknown, plaintiff waited until now to file her instant motion. Now, of course, we are approaching the end of discovery, and time to submit dispositive motions. While Hamot's counsel is all in favor of reasonable extensions of time to complete necessary discovery, it would not consider an extension for this purpose reasonable or necessary.

further requires defendant to produce documents "as they are kept in the usual course of business or [to] organize and label them to correspond with the categories in the request."

In its first written response to plaintiff's document requests, defendant identified the categories of documents it would produce and clearly stated its objections to the categories of documents that it believed were beyond the scope of allowable discovery. See Attachment 1 to Plaintiff's Renewed Motion To Compel. Moreover, to the extent possible, defendant produced responsive documents as they are maintained in the usual course of defendant's business, and grouped the documents together according to the file in which they were contained or by subject mater. Thus, the documents were produced in a manner that would enable plaintiff to identify the nature of the documents produced. Indeed, on more than one occasion, plaintiff's counsel conceded that he was able to determine exactly what records were produced.

In any event, to avoid burdening this Court with this matter, defendant agreed to supplement its written response. In so doing, defendant went well beyond the call of duty and, in response to each request, identified the responsive documents by their Bates numbers. See Exhibit 1. Therefore, even assuming defendant's first written response somehow was inadequate, its supplemental written response has rendered this issue moot.

Finally, with respect to plaintiff's complaint that defendant supplemented its document production on four separate occasions, no basis exists to conclude that defendant did so with the intention of frustrating plaintiff's discovery efforts. Rather, due to the size of defendant's organization and the number of different persons within the organization from whom discovery was sought and obtained, certain documents were not located, and thus produced, until after the initial disclosures were made. Nor can plaintiff possibly suggest that she suffered any prejudice as a result. Indeed, among other reasons, defendant agreed to extend the discovery deadline by two months to

provide plaintiff the opportunity to review and conduct any additional discovery made necessary by these inadvertent delays in document production.

### B. Defendant Is Not Required To Produce Resident Records Dating Back to 1995

Plaintiff also seeks an order requiring Hamot to produce additional "resident records" dating back to 1995, despite the fact that the alleged discriminatory acts that form the basis of her Complaint did not occur until 2004, when plaintiff was advised that her contract would not be renewed.[2] Defendant has already produced requested documents relating to all residents for the time period covering her employment with Hamot, plus six months -- January 2001 through June 2004. Yet, plaintiff now argues that she requires records for residents who participated in Hamot's residency training programs for six years before plaintiff ever set foot in Hamot, and nine years prior to any alleged discrimination. Plaintiff suggests that these additional records are necessary to establish that she was qualified at her position and that she was discharged under conditions that give rise to the inference of unlawful discrimination. See Motion To Compel at 6. Plaintiff further maintains that the performance data of other residents is relevant to establishing that others performed at the same level as plaintiff or worse, and were treated more favorably. Id. Plaintiff offers no explanation as to why she claims the appropriate time period for discovery is 1995 to 2004.

---

[2] Plaintiff's motion neither identifies the specific records she seeks nor the particular document requests that are the subject of her motion. Rather, plaintiff's motion merely states that she is seeking "resident records at least back to 1995." See Motion To Compel at 8 and plaintiff's proposed Order. Moreover, despite also suggesting that records of attending physicians and faculty are discoverable back to 1995, she fails to establish why such records are in any way relevant to her case. In fact, the records of attending physicians and faculty are not relevant because plaintiff neither occupied nor was applying for the position of attending physician at any point during her residency. See, e.g., Hicks v. Arthur, 159 F.R.D. 468, 470-1 (E.D. Pa. 1995) (Holding that positions with the employer that are relevant for discovery purposes in sex and race discrimination action are appropriately limited to positions that plaintiff employees occupied or requested promotions into).

4

In fact, her argument – that "all residents who have gone through the program in its history are similarly situated [to her]," Id., suggests that Hamot should be required to produce resident records going back to 1948. Even if she offered a reason, however, both case law and common sense indicate that no further records should be produced.

Both this Court and numerous others have answered the precise question presented by this motion, and have rejected plaintiff's view. For example, in EEOC v. Magnetics Division of Spang Industries, 1976 WL 662 (W.D. Pa. 1976), this Court held that a time span of three and one-half years prior to the alleged violation "is ample for purposes of garnering information to establish a violation of Title VII, yet not unduly oppressive to the employer with respect to its day-to-day business operations." Id. at * 2. Likewise, in Hicks v. Arthur, 159 F.R.D. 468 (E.D. Pa. 1995), the Court held that roughly four months prior to and two years after tenure of employment discrimination plaintiffs was a reasonable time frame in which to conduct discovery on disparate treatment claim. Id. at 471; see also, McClain v. Mack Trucks, 85 F.R.D. 53, 63 (E.D. Pa. 1979) (Holding that, in answering interrogatories propounded by plaintiff in employment discrimination action, employer could restrict its answers to the time period of the plaintiff's employment); James v. Newspaper Agency Corp., 591 F.2d 579 (10th Cir. 1979) (Affirming lower court's restriction on discovery sought by sex discrimination plaintiff from eight year period to period of four year period); General Insurance Company of America v. Equal Employment Opportunity Commission, 491 F.2d 133, 136 (9th Cir. 1974) (Information going eight years back held excessive).

Plaintiff's cases are not persuasive because they are not on point. Indeed, none of plaintiff's cases even address disputes regarding the temporal scope of discovery in Title VII cases, much less any discovery disputes whatsoever. In Williams v. URS Corp., 124 Fed. Appx. 97 (2005), an unpublished opinion, the Third Circuit held that the employer's summary judgment motion was

5

erroneously granted because a reasonable factfinder could conclude that the employer subjected the plaintiff to disparate treatment. Among other evidence considered, the Williams court noted that every employee other than plaintiff that was situated in plaintiff's office received a salary that was within the range established for that employee's pay grade. See id., at 100-1. Significantly, no indication whatsoever is given as to when these other employees were employed vis-à-vis plaintiff's employment with the company.

Likewise, Evans v. Port of Authority of N.Y. and N.J., 273 F.3d 346 (3rd Cir. 2001), merely held that the trial court did not err in denying the employer's request for a new trial based on, among other things, trial court's allowance of evidence regarding the filling of a client manager position opening in 1999, five years after the employer refused to promote plaintiff to a similar position. Id. at 350-1. The Evans decision neither describes the nature of this evidence, its relevance, how it was offered into evidence, nor how it was obtained. Thus, it is a far cry for plaintiff to suggest that Evans supports her view that resident records dating back ten years are discoverable.

Plaintiff's reliance on Ryder v. Westinghouse Electric Corp., 128 F.3d 128 (3rd Cir. 1997), and Brewer v. Quaker Oil Refining Corp., 72 F.3d 326 (3rd Cir. 1995), also is misplaced. Ryder merely held that the trial court did not err in admitting evidence of ageist statements made by corporate executives one year after plaintiff's termination. 128 F.3d at 133. The Ryder court further noted that these statements pertained to circumstances existing around the time the plaintiff was terminated. Id. at 133-4. In Brewer, the court held that summary judgment in favor of the employer should not have been granted because, among many other disputed facts considered, a factfinder could infer that a statement made by a company executive two years prior to the plaintiff's discharge reflected the corporate culture that existed at the time of plaintiff's termination. Id. at 333.

The relevant case law properly recognizes a need to limit the burdensomeness of discovery

6

for an employer, but also recognizes a lack of probative value in "comparative cases" that occurred remotely in time from the instant case. Indeed, it is highly unlikely that anything that occurred in 1995 – or even 1999 – sheds any light on Hamot's decision not to renew plaintiff's employment contract in 2004.

In this regard, contrary to plaintiff's assertion, it would be unduly burdensome for Hamot to locate, retrieve and produce countless records dating back to 1995. As undersigned counsel explained to plaintiff's counsel, all resident records prior to 2000 are stored at an offsite storage facility. Locating these records would require numerous hours of sifting through countless boxes to locate and identify responsive documents. Doing so would clearly be disruptive to Hamot's operations.

Defendant does, however, maintain records relating to the performance of its residents from 2000 to the present onsite. Although defendant believes that records predating plaintiff's tenure are neither relevant nor likely to lead to discoverable evidence, defendant has offered to produce these records to avoid having to burden this Court with the matter. Plaintiff has rejected defendants offer.

For each of the reasons set forth above, this Court should deny plaintiff's request.

                      Respectfully submitted,

                      TOBIN, O'CONNOR, EWING & RICHARD

                      By  /s/ Ziad Haddad
                          Kerry M. Richard, Esq.
                          Ziad P. Haddad, Esq.
                          Forrest G. Read, IV, Esq.
                          5335 Wisconsin Ave., N.W. Suite 700
                          Washington, DC  20015
                          (202) 362-5900
                          Counsel for Defendant
                          Hamot Medical Center

Local Counsel:
KNOX McLAUGHLIN GORNALL &
SENNETT, P.C.
Mark J. Kuhar, Esq.
120 West Tenth Street
Erie, Pennsylvania 16501-1461
(814) 459-2800

## **CERTIFICATE OF SERVICE**

  The undersigned hereby certifies that on November 21, 2005, a copy of the foregoing was served by facsimile and by first-class, United States mail, postage pre-paid, on the following:

Patrick Sorek, Esq.
Leech Tishman Fuscaldo & Lampl, LLC
525 William Penn Place, 30th Floor
Pittsburgh, PA 15219

              /s/ Ziad Haddad
              Ziad Haddad