IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LISA BROWN, M.D., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 05-32 E |
| ) | |
| HAMOT MEDICAL CENTER, ) | |
| ) | |
| Defendant. ) | |

PLAINTIFF'S REPLY IN SUPPORT
OF RENEWED MOTION TO COMPEL

A review of Defendant's ("Hamot") response to Plaintiff's ("Brown") Renewed Motion to Compel may give the misimpression that disputes over discovery are limited and minor. It is true that counsel have attempted to work out a number of their differences without approaching the court, as the court directed at the June 2005 case management conference. But court intervention is now necessary. Brown submits this Reply to briefly address a key problem which illustrates the unsettled status of discovery, in which the left hand seemingly is disconnected from the right. As matters now stand, Brown is severely disabled from presenting her case.

The following example should further demonstrate the objectionable course of events in discovery which Brown has faced. When issuing requests for documents from Hamot, Brown naturally requested personnel files, permanent files, or their equivalent, which contain information about orthopedic surgery residents' qualifications, evaluations, history, and performance. Exhibit 1, Request No. 7. In response, Hamot eventually produced form evaluations for the limited number of residents in question. In

addition to form evaluations for Brown, however, Hamot produced six month narrative evaluations from the program director; correspondence between Brown and other physicians; employment contracts; and statements of concern and compliments about performance. Hamot produced more than a hundred pages of such information pertaining to her, a sample of which is attached as Exhibits 8 to 11. <u>To this day, Hamot has failed to produce any similar documents for any other residents</u>. It cannot be, for example, that Hamot created the critical six month narrative evaluations from the program director (and required by hospital policy) only for Brown, but not for any other resident. Exhibit 9. It cannot be that Hamot made employment contracts only with Brown, and no other resident. Exhibit 10. It cannot be that Hamot does not possess a single piece of correspondence, positive or negative, for any resident other than Brown. Exhibit 11. Given the volume of other personnel information Hamot provided for Brown and not for other residents, it is apparent that there are <u>entire files</u> which Hamot has failed to produce. Most disturbingly, Hamot has failed even <u>to notice</u> that it omitted critical documents for all other residents, while it has repeatedly assured Brown, and now this court, that it has produced all relevant performance documents. <u>See</u> Defendant's Opposition to Plaintiff's Renewed Motion to Compel, Supplemental Responses to Plaintiff's First Request for Production of Documents, Response No. 20. Like the other events in the course of discovery described in Brown's Motion to Compel, that Hamot is not taking its solemn discovery obligations seriously.

    This is not a case where a plaintiff is fishing for evidence, but rather is one where close scrutiny is justified by evidence already partly brought to light. Brown is preparing to offer evidence that:

2

- While Hamot's orthopedic residency program has existed since 1948, it has admitted only three female residents, only one of whom was permitted to complete the program.

- The program director who terminated Brown's residency personally gave Brown an acceptable performance evaluation 30 days before he discharged her from the program. Exhibit 12 (Jan. 30, 2004 evaluation), compare to Exhibit 6 (March 1, 2004 discharge date).

- The program director who terminated Brown's residency failed to follow the dismissal policy that he himself had written.

- Two male residents were sued for malpractice during the course of their residency, but were not disciplined. Narducci v. Hamot Medical Center, et al., No. 13672-2001 (Erie Cnty. Com. Pls.).

- While firing Brown from the program for alleged performance deficiencies, the program director permitted a male doctor who had been named in multiple malpractice suits, been professionally disciplined in several states, and who lost his medical license, to participate in the program in an effort to become relicensed. Exhibit 13. No records for this person have ever been produced.

- During her time in the program, Brown received roses from a resident as a purported romantic gesture.

- Residents organized and went on a chauffeured trip to a strip club in Canada, and it is believed went to strip clubs on other occasions while attending professional conferences.

- Early in Brown's tenure at the program, a resident confronted her with the uninvited declaration that he would have sex with her before her residency was over.

- A resident returned from a professional conference in Hawaii, attended with the program director, with a souvenir doll which he gave to Brown. The doll displays imitation male genitals when the covering is lifted.

- When Brown suggested that a female patient's large breasts might be creating postural problems and contributing to her back pain, an attending physician pointed to Brown's breasts and asked if the patient's breasts were "bigger than those."

- An attending physician in an operating room remarked to Brown, in the presence of others, that she had a "nice ass . . . big but nice."

3

All of this evidence justifies the court applying the most rigorous scrutiny to Hamot's poor performance in responding to written discovery thus far. In addition, Brown is aware, from her own observations and those of others, that the performance of other residents and attending physicians presented performance issues for which she was disciplined and other male physicians were not. Brown must have access to their files to confirm this information.

Brown has been frustrated at where to focus her arguments to the court. On one hand, counsel are obligated, by federal rule, local rule, local custom, and the court's specific direction, to attempt to work out their differences. Hamot has made some effort to do this, but the effort falls so far short, as demonstrated above, that comprehensive relief is necessary. Brown would welcome the Court's particularized review of Hamot's responses to her discovery requests. Without burdening itself with this task, however, the court could easily direct that Hamot comply in full with Brown's discovery requests by a date certain, or be subject to sanctions set forth in Federal Rule of Civil Procedure 37(b)(2). These sanctions include orders that designated facts be taken as established, as well as prohibitions against the presentation of designated matters in evidence. Rule 37(b)(2)(A) and (B). It is plain that the court needs to set boundaries, however, and Hamot needs unequivocal direction to comply.

Further, Hamot's arguments in setting an arbitrary limit on the temporal scope of its responses cannot succeed. The Third Circuit has stated that, "in particular, we frown upon unnecessary discovery limitations in Title VII, . . . cases." Sempier v. Johnson & Higgins, 45 F.3d 724, 734 (3d Cir. 1995). Hamot's assertion that it would be required to retrieve and examine some unspecified number of boxes from storage comes nowhere

4

near satisfying its obligation to demonstrate undue burden. Spending time reviewing stored documents is the most routine of discovery tasks. If that is Hamot's argument as to what constitutes undue burden, it is as much as admitting to the court that its position is not realistic.

In addition, Hamot's position that it is "highly unlikely that anything that occurred in 1995 -- or even 1999 -- sheds any light on Hamot's decision not to renew plaintiff's employment contract," Hamot Brief at 6-7, carries no weight in examining the fundamental purpose of discovery in employment discrimination cases, supported by the discovery rules and case law -- that is, to reveal whether persons outside the protected class were treated more favorably.

Accordingly, the court should grant Brown's Renewed Motion to Compel; order that Brown's First Requests for Production of Documents be answered completely and in detail by a date certain; and order appropriate evidentiary sanctions for any failure to comply with such order.

Respectfully submitted,

Leech Tishman Fuscaldo & Lampl

____/s/ Patrick Sorek_____
Patrick Sorek
Pa. ID 41827
Citizens Bank Building, 30th Floor
525 William Penn Place
Pittsburgh, Pennsylvania 15219
(412) 261-1600

Counsel for plaintiff

5

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Plaintiff's Reply in Support of Renewed Motion to Compel was served today by facsimile and by first class mail, postage prepaid, on:

>Kerry M. Richard
>Ziad Haddad
>Tobin O'Connor Ewing & Richard
>5335 Wisconsin Avenue, NW, Suite 700
>Washington, DC  20015

_____12/1/05_____        \_\_\_\_/s/ Patrick Sorek_____
Date                                                              Patrick Sorek