IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LISA BROWN, M.D.,                    )
                                     )
          Plaintiff,                 )
                                     )
     v.                              )          Civil Action No. 05-32 E
                                     )
HAMOT MEDICAL CENTER,                )          (to be filed under seal)
                                     )
          Defendant.                 )

PLAINTIFF'S CONCISE STATEMENT OF MATERIAL FACTS

In support of its Motion for Partial Summary Judgment, and in accordance with
the court's standard order on summary judgment motions and Local Rule 56.1, plaintiff
submits her concise statement of material facts as to which she contends there is no
genuine dispute.

Plaintiff derives the undisputed facts from the following sources which are
exhibits to the Appendix filed in conjunction with plaintiff's motion for partial summary
judgment:

     (i)      Exhibit A –    March 1, 2004 correspondence from John D. Lubahn to Lisa Brown, M.D.

     (ii)     Exhibit B –    Hamot Medical Center Resident Agreement of Appointment in the Graduate Program in Medical Education.

     (iii)    Exhibit C -    Excerpts from transcript of March 16, 2006 and April 21, 2006 deposition of John Lubahn.

     (iv)    Exhibit D –    Institutional Requirements for ACGME

     (v)     Exhibit E –    Program Requirements for Graduate Medical Education in Orthopedic Surgery – ACGME.

(vi)    Exhibit F –    Hamot Medical Center Advancement and Dismissal Policy

(vii)    Exhibit G -    Declaration of Lisa Brown, M.D.

(viii)    Exhibit H -    February 11, 2004 Evaluation of Lisa Brown

1.    From July 2001 to June 2004, Lisa Brown ("Brown") was employed by Hamot Medical Center ("Hamot") as an orthopedic resident.  Exhibit G at ¶1.

2.    Hamot is engaged in establishing and operating a health care facility, including medical services incident to both inpatient and outpatient care.  Exhibit B at 1.

3.    Among its various activities, Hamot sponsors graduate medical education.  Exhibit B at 1.

4.    Hamot has a five year Orthopedic Residency Program ("the Program") in which it educates and trains resident physicians in the care and management of injuries and diseases of the musculoskeletal system, and trains resident physicians in the nonsurgical and surgical skills necessary to provide proper orthopedic care.  Exhibits B at 1-2  Exhibit G at ¶2.

5.    When Lisa Brown was terminated, she had completed 3 of the 5 years of the Program.   Exhibit G at ¶35.

6.    Terms and conditions of Hamot's employment and training of residents are governed by a series of one-year contracts that are typically renewed throughout the course of the residency.  Exhibit C at 134-145; Exhibit B at 1; Exhibit G at ¶35.

7.    Brown's third year residency contract with Hamot ran from July 1, 2003 to June 30, 2004 ("the Contract").  The Contract provided that both Hamot and Brown are

bound by all terms of Hamot's rules and regulations and other policies, including Hamot's Advancement and Dismissal Policy.  Exhibit B at 1; Exhibit C at 89-90.

8.      Hamot policy is that all residents are expected to complete the Program. Exhibit C at 135.

9.      John D. Lubahn, M.D., is the director of Hamot's Orthopedic Residency Program.  Exhibit G at ¶6.

10.     As an orthopedic resident, Brown was required to fulfill the educational requirements of the Program, obtain a full and unrestricted license to practice medicine in the Commonwealth, and abide by all of Hamot's policies.  Exhibit B at 4.

11.     On January 30, 2004, Lubahn himself evaluated Brown.  He observed that her clinical performance had improved and was acceptable, and that her microsurgical skills lab work was excellent.  Exhibit C at 56, 103.

12.     Lubahn's evaluation is devoid of any reference to Brown's possible termination from the Program, which occurred approximately one month later.   Exhibit I.

13.      On February 11, 2004, eighteen days before she was advised of her termination, Brown received an evaluation in which she was rated average or above average in every one of the 28 categories of skills rated.  Exhibit H.

14.     Section 3 of the Hamot employment contract, entitled "Termination and Suspension" provides that either party may terminate this Agreement at any time upon notice thereof for proper cause."  Exhibit B at 7.

15.     On March 1, 2004, Lubahn informed Brown that her contract would not be renewed at the end of the academic year because of her clinical performance and current knowledge base.  Exhibit A.

16.    The March 1, 2004 termination letter did not reference proper cause for Browns' dismissal.  Exhibit A.

17.    Hamot did not make a finding of proper cause prior to terminating Brown's contract.  Exhibit A.

18.    The Advancement and Dismissal Policy lists 13 requirements a resident must meet in order to advance to the subsequent year in training. Exhibit F at 1.

19.    Brown met all 13 of the criteria in the Advancement and Dismissal Policy to advance to the fourth year of the Program.  Exhibit G at ¶37.

20.    The March 1, 2004 letter does not reference the Advancement and Dismissal Policy nor does it identify which of the 13 criteria Brown failed to complete. Exhibit A.

21.    The decision to terminate Brown's contract was a unilateral decision made by John Lubahn.  Exhibit A.

22.    Hamot's Orthopedic Residency Program is accredited by the Accreditation Council for Graduate Medical Education (ACGME).  Exhibit C at 8.

23.    ACGME establishes Institutional and Program requirements for accredited hospitals which must be followed in order to maintain accreditation.  Exhibit C at 8; Exhibit D at 2.

24.    The ACGME approved Institutional Requirements were effective July 1, 2003.  Exhibit D at 1.

25.    Section III of the Institutional Requirements direct that the sponsoring institution must have written policies and procedures for the recruitment, appointment

and reappointment of residents in compliance with ACGME requirements.  Exhibit D at 5.

26.    The ACGME approved Program Requirements were effective July 2002. Exhibit E at 19.

27.    Section III(4)(c) of the Program Requirements require that the program director ensure implementation of fair policies, grievance procedures and due process. Exhibit E at 4.

28.    The Hamot employment agreement with Brown incorporates the policies and procedures of ACGME.  Exhibit B at 1.

29.    Hamot implemented an Advancement and Dismissal Policy which outlines the procedures to be followed if a resident is not meeting the requirements of the Orthopedic Residency Program.   Exhibit F.

30.    Hamot's Advancement and Dismissal Policy was drafted by John Lubahn, M.D., the person who terminated Brown from the Program.  Exhibit F.

31.    Hamot's Advancement and Dismissal Policy states:

All residents will be continuously evaluated by their teaching faculty.  Should a resident, at any point during the year, be identified as not meeting expectations, that resident will be counseled expeditiously by the Program Director.  At this point, the resident will receive only a verbal warning unless the situation should be deemed more serious.  Should the resident, who has received a verbal warning, fail to meet expectations on subsequent activities, that resident will meet with the program director and be placed on an academic probation status.  A letter outlining the reasons for an academic probation and the expectations will be given to the resident at that time.  Academic probation will generally last 3 - 6 months but will be individualized to the resident's situation.  During that time, the resident is expected to demonstrate improvement and will receive, at minimum, monthly reevaluations.  Should the resident demonstrate appropriate advancement of skills, knowledge, and attitude during that time, he/she may be deemed ready for advancement at the appropriate time.  Should it be determined that the resident requires additional remediation, he/she will likely need to repeat those activities in which he/she did not meet expectations at the current level of training.  Only when these requirements

5

are met will the resident be considered for advancement. At such time, academic probation will be lifted and the resident will continue his/her training at the next level. Should the resident fail to improve or to meet the expectations as identified in the academic probation letter, the faculty will determine at that time if remediation will be deemed to be helpful. If so, that resident will continue at the same level for a period of time during which continuous evaluation will occur. At the end of such time, the resident will receive feedback as to his/her performance and a determination will be made as to whether or not the resident could advance at that time.

If the initial faculty review reveals that the resident is unable to improve with remediation, the resident will be terminated from the program pending the due process procedure.

Exhibit F at 2.

32.    During the contract period July 1, 2003 to June 30, 2004, Brown did not receive a verbal warning from Lubahn advising that she was not meeting the expectations of the Program. Exhibit G at ¶19.

33.    During the contract period July 1, 2003 to June 30, 2004, Brown did not meet with the Program Director to be placed on academic probation. Exhibit G at ¶22.

34.    Brown did not receive a letter outlining the reasons for an academic probation and the expectations of the faculty and staff. Exhibit G at ¶¶20, 23.

35.    Brown did not receive monthly reevaluations. Exhibit G at ¶24.

36.    Hamot faculty did not make a determination that Brown required additional remediation. Exhibit G at ¶¶25-27.

37.    Hamot faculty did not review Brown's academic probation letter to determine if remediation would be deemed helpful because no academic probation letter had been issued. Exhibit G at ¶27.

38.    Brown was not advised that she would continue at the same level for a period of time during which continuous evaluation would occur. Exhibit G at ¶28.

39.    Brown was not continuously evaluated during a period of remediation. Exhibit G at ¶29.

40.    Brown did not receive feedback as to her performance during or after a period of remediation.  Exhibit G at ¶30.

41.    Hamot faculty did not make a determination, after remediation, as to whether or not Brown could advance.  Exhibit G at ¶31.

42.    The Hamot faculty did not meet for an initial review to determine if Brown was unable to improve with remediation.  Exhibit G at ¶32.

43.    Brown was not on academic probation when she was terminated.  Exhibit G at ¶33.

44.    Hamot's Advancement and Dismissal policy did not permit Lubahn to unilaterally terminate Brown.  Exhibit F at 2-3.

45.    Lubahn, and Hamot, did not follow the procedures set forth in the Advancement and Dismissal policy.  Exhibit A; Exhibit F; Exhibit G.

Respectfully submitted,

Leech Tishman Fuscaldo & Lampl

By:    /s/ Patrick Sorek
Patrick Sorek
Pa ID No. 41827
Alisa N. Carr
Pa. I.D. No. 56658
525 William Penn Place, 30th Floor
Pittsburgh, Pennsylvania  15219
412-261-1600

Date: August 15, 2006