# LEECH TISHMAN
# FUSCALDO & LAMPL
## ATTORNEYS AT LAW

LEECH TISHMAN
FUSCALDO & LAMPL, LLC

525 WILLIAM PENN PLACE
30TH FLOOR
PITTSBURGH, PA 15219

412-261-1600
412-227-5551 FAX
www.leechtishman.com

April 30, 2004

Patrick Sorek
psorek@leechtishman.com
412-560-1398 x 250 Direct Dial

John T. Malone
President and CEO
Hamot Medical Center
201 State Street
Erie, Pennsylvania  16550

James A. Pepicello, M.D.
Executive Vice President, Clinical Operations
Hamot Medical Center
201 State Street
Erie, Pennsylvania  16550

John D. Lubahn, M.D.
Program Director
Hamot Medical Center
201 State Street
Erie, Pennsylvania  16550

Re:     *Non-Renewal of Lisa Brown, M.D.'s Contract*

Gentlemen:

This firm represents Lisa Brown, M.D. As you know, Dr. Brown's contract for her fourth year of orthopedic residency was not renewed. This letter is sent to invoke her additional right of administrative review in a final attempt to resolve this problem through informal methods. We request that you reconsider the non-renewal decision because of problems with the decision, problems with the review process, and the unwanted consequences, for all parties, of the current situation.

## The Termination Decision

Dr. Brown was advised that her contract would not be renewed by letter dated March 1, 2004, and signed by Dr. Lubahn. Tab 1. HMC has an Advancement and Dismissal Policy. Tab 2. Dr. Lubahn issued this policy. This Policy provides, among other things, that, before termination from the program, "faculty review" must show that the resident is unlikely to improve with remediation.

Comparing the policy to Dr. Brown's circumstances reveals a number of inconsistencies. First, where did Dr. Lubahn obtain the authority to terminate Dr.

HMC-00220



LEECH TISHMAN
FUSCALDO & LAMPL
ATTORNEYS AT LAW

April 30, 2004
Page 2

Brown's participation in the program? Under his Policy, this decision lies with the faculty. In his March 1 letter, he mentions that the decision was difficult for "the faculty," and yet advises Dr. Brown that he made the decision to terminate her.

Second, there was no determination, as required by the Policy, that Dr. Brown was unlikely to improve with remediation. Indeed, only 30 days before Dr. Lubahn made the decision to terminate her from the program, he himself issued an evaluation of her performance. Tab 3. His evaluation included the observations that she had an "excellent performance and evaluation on her microsurgical lab skills," and that "her clinical performance thus far this year had improved and was acceptable." He also set milestones for improvement on her in-training scores, which he expected to improve "over the course of the next two years." This statement makes it apparent that, 30 days before he decided to terminate Dr. Brown from the program, he expected she would be in the program during the following two years. There is no explanation in his March 1 letter concerning what prompted his evaluation to change so drastically in the intervening 30 days.

Another matter that raises questions about the termination decision is the imposition of "academic probation" on Dr. Brown in mid-2003. Dr. Brown had undergone a period of substantial hardship in her personal life during that time, of which Dr. Lubahn was aware. In any event, this occurrence demonstrates two facts relevant to the current inquiry. First, Dr. Lubahn knew of and applied a course of remediation to address any perceived knowledge deficiencies of Dr. Brown. Such a decision is consistent with HMC's Advancement and Dismissal Policy. Second, and more importantly, Dr. Brown emerged successfully from this probationary period in October 2003, following her September 2003 evaluation by Dr. Lubahn. She thus demonstrated, to Dr. Lubahn's satisfaction, that she was capable of improving her performance with the remediation policy HMC has in place. There is no explanation for Dr. Lubahn's decision not to apply some form of remediation to whatever deficiencies prompted his March 1 letter -- which deficiencies he does not clearly identify.

Review of the Termination Decision

After learning of Dr. Lubahn's decision, Dr. Brown approached Dr. Pepicello in pursuing her opportunity for redress under the Grievance Resolution and Due Process Procedure. Tab 4. Dr. Pepicello directed her to step three of procedure, review of the decision by a special committee.

HMC-00221



LEECH TISHMAN
FUSCALDO & LAMPL
ATTORNEYS AT LAW

April 30, 2004
Page 3

Once Dr. Brown asked for review of the termination decision, the inconsistencies affecting such review continued. In its personal interview with Dr. Brown, the committee members focused their questions on Dr. Brown's performance on the in-training exam. They appeared not to be aware of the express statement on the OITE examination itself disclaiming its use as a resident evaluation tool. When subsequently informed of such disclaimer, the committee approved Dr. Lubahn's decision in only the most general terms, failing to identify any particular deficiencies in Dr. Brown's performance. Tab 5. Since this is one phase of the process where "the faculty" conceivably might have been involved in the process, it is noteworthy that there is no statement, as the Advancement and Dismissal Policy requires, about whether "the faculty" believed Dr. Brown's performance would not improve with remediation.

There are also more basic problems with the review decision. The letter informing Dr. Brown of the committee's decision is dated April 7, 2004, when the committee's final meeting was scheduled for April 8. In addition, the envelope carrying the letter was dated April 12. More seriously, Dr. Brown is aware that at least one member of the committee did not vote on her review decision, nor was he even aware that a final vote on the review decision had taken place. In addition, there is some indication that "the faculty" in fact does not support Dr. Lubahn's decision. This of course would be a breach of HMC's own policy.

Dr. Brown's Current Request

Dr. Brown now requests that the due process committee's decision be reconsidered by the Medical Staff Executive Committee and the Board of Directors, which has the authority for final approval of any due process decision under the Grievance Resolution and Due Process Procedure. Tab 4.

The reasons for reconsideration in Dr. Brown's favor are partly as set forth above. The decision not to renew her contract was inconsistent with HMC's Advancement and Dismissal Policy in both substance and procedure. Moreover, the review of this decision was similarly flawed in substance and procedure, and is likewise inconsistent with HMC policy.

Because of the issues surrounding the termination of her residency at HMC, and because of its likely effect on her medical career, we have advised Dr. Brown that



April 30, 2004
Page 4


litigation is an option should HMC's position remain unchanged. Dr. Brown has a number of advantages as a plaintiff. On one hand are HMC's own errors in carrying out its decision. On the other hand, Dr. Brown has obtained favorable reviews of her performance, including being named a Hamot Ambassador of the Month; she has overcome severe adversity in her personal life; and has the support of other residents and attending physicians in her program. In addition, should a federal jury agree with her potential claims, she could collect enormous damages for all the potential losses arising out of a medical career interrupted before the fourth year of her residency. Moreover, the public impact of such a proceeding would not help HMC. Finally, while Dr. Brown does not currently have the records to compare her performance to her colleagues, such records are available through the litigation process. It is not unusual to find in the personnel files of other similarly situated employees events similar to, or worse than, those allegedly constituting the reason for a termination decision, but which are overlooked in someone else's case. In any event, such personnel records will be thoroughly examined as part of the litigation process.

Despite the fact that some members of the Hamot community are prepared to cut Dr. Brown loose, she is entitled to review of this decision by the Board of Directors. If necessary, she will act through the courts to protect the career she has labored so long and hard to develop. She remains interested, however, in the possibility of avoiding a path from which it will be impossible to turn back. She has some hope that the interests of the institution will be considered in this decision. The undoubted expertise that the persons involved bring to the medical arena do not necessarily translate to the personnel arena, and yet that is the where the decision in question lies. Should this matter proceed to a federal jury, that is how it will be presented -- a personnel decision by the medical center. Without intending to sound entirely self-serving, unless persons responsible for oversight of the medical center are comfortable with the personnel aspects of this decision -- and we attempt above to show why they should not be -- then this is perhaps the last opportunity to remedy the situation before litigation.

The procedure for correcting any deficiencies in Dr. Brown's performance is set forth in HMC's own Advancement and Dismissal Policy. This procedure was previously followed to the satisfaction of Dr. Lubahn. Given this process and this history, Dr. Brown requests that this matter be resolved under the terms previously noted by Dr. Lubahn in his January 30, 2004 evaluation. Tab 3. He there sets an improvement goal for her in-training scores, and suggests an additional year of preparation before the American Board of Orthopaedic Surgeons Exam. Dr. Brown is

HMC-00223



April 30, 2004
Page 5

willing to commit to these conditions to address any deficiencies that led to the non-renewal of her contract.

I would request the opportunity to meet with Dr. Pepicello to address these matters. Otherwise, if there is anything you or your counsel would like to discuss, please let me know.

Very truly yours,

Leech Tishman Fuscaldo & Lampl, LLC

Patrick Sorek

Patrick Sorek

HMC-00224