**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LISA BROWN, M.D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-32 E |
| | ) | |
| HAMOT MEDICAL CENTER, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT HAMOT MEDICAL CENTER'S OPPOSTITION TO PLAINTIFF'S**
**CONCISE STATEMENT OF MATERIAL FACTS**

Defendant Hamot Medical Center ("Hamot"), by and through its undersigned counsel and in accordance with LR 56.1.C.1., hereby submits its opposition to plaintiff's Concise Statement of Material Facts ("Statement") in support of her Motion for Partial Summary Judgment ("Motion") in numbers corresponding with said Statement:

1.    Hamot admits that the facts contained in paragraph 1 of the Statement are undisputed and material.

2.    Hamot admits that the facts contained in paragraph 2 of the Statement are undisputed and material.

3.    Hamot admits that the facts contained in paragraph 3 of the Statement are undisputed and material.

4.    Hamot admits that the facts contained in paragraph 4 of the Statement are undisputed and material.

5.    Hamot admits that plaintiff had completed 3 of the 5 years of the Orthopedic Surgery Residency Program ("Program") at the conclusion of her time in the Program, and that such facts are undisputed and material.  However, Hamot denies that plaintiff was terminated

from the Program.  Rather, on March 1, 2004, Hamot decided that it would not renew plaintiff's contract for a fourth academic year in the Program.  Plaintiff was allowed and expected to complete the term of her Resident Agreement of Appointment, concluding on June 30, 2004. See Exhibits A (Non-Renewal Letter from Dr. Lubahn to Dr. Brown) and B (Resident Agreement of Appointment) of Plaintiff's Motion.

6.    Hamot admits that the terms and conditions of employment at Hamot and the training of residents are governed by one-year contracts, and that such facts are undisputed and material.  However, Hamot denies that contracts are "typically renewed throughout the course of the residency" to the extent that such a statement implies automatic renewal and appointment to the next academic year.  Rather, residents are subject to regular evaluations wherein their level of academic knowledge, clinical skill and professional responsibility, together with their ability to satisfy the corresponding requirements of the Core Competencies of the Accreditation Council on Graduate Medical Education ("ACGME") and contractual obligations of the Resident Agreement of Appointment ("Contract"), are assessed.

7.    Hamot admits that both parties were contractually bound by the terms of the Contract and admits that plaintiff was contractually bound by all terms of Hamot's rules and regulations and other policies, but denies that Hamot was contractually bound by the Advancement and Dismissal Policy ("A&D Policy").   See Exhibit F (Advancement and Dismissal Policy) of Plaintiff's Motion at 1.

8.    Paragraph 8 states an "expectation," not a fact, and accordingly neither an admission nor a denial is appropriate.  Hamot denies that its "expectations" are material.  Hamot further states that any such expectation is based on residents developing knowledge and skill at

each level of the Program in order to complete each level, move on to the subsequent academic year, and ultimately complete the fifth and final year of the Program.

9.    Hamot admits that the facts contained in paragraph 9 of the Statement are undisputed and material.

10.    Hamot admits that the facts contained in paragraph 10 of the Statement are undisputed and material.

11.    Hamot admits that the facts contained in the first sentence of paragraph 11 of the Statement are undisputed.  Hamot admits that the facts contained in the second sentence of the Statement are undisputed. Hamot adds, however, that the facts are incomplete, because immediately following the sentence plaintiff cites in Exhibit C of her Appendix, Dr. John Lubahn, Program Director, found that "[t]here were areas where [plaintiff's] clinical skills did still seem deficient to [Dr. Lubahn] and [he] cited those and suggested additional reading materials."  It is therefore undisputed that Dr. Lubahn saw deficiencies in plaintiff's clinical skill and knowledge as of January 30, 2004.  See Exhibit I (January 2004 Evaluation of Lisa Brown, MD) of Plaintiff's Motion.  Hamot submits that it is only when the facts are considered in total that the standards in paragraph 11 can be considered "material."

12.    Hamot denies that the facts contained in paragraph 12 of plaintiff's Statement are undisputed and material.  First, plaintiff was not terminated from the Program.  Rather, her contract was not renewed for a fourth academic year.  Next, whether or not Dr. Lubahn referred in plaintiff's evaluation to the non-renewal of her contract is immaterial, as intervening events between the evaluation and his decision not to renew plaintiff's contract accounted for that decision.  See Exhibit 1 (Letter from Dr. Mary Beth Cermak to Dr. Lubahn); Exhibit 2 (February

2004 Clinical Presentation Evaluation of Dr. Brown by Dr. Lubahn); and Exhibit 3 (Email from Dr. Frank Benes to Dr. Lubahn).

13.     Hamot denies that plaintiff was terminated from the Program.   Rather, her contract was not renewed for a fourth academic year.   Hamot admits that the facts of plaintiff's average and above-average ratings in the February 11, 2004 evaluation are undisputed, but denies that those facts are material, because intervening events between the evaluation and Dr. Lubahn's decision not to renew plaintiff's contract partly accounted for that decision.  Id.

14.     Hamot admits that the facts contained in paragraph 14 of the Statement are undisputed, but denies that they are material because plaintiff was not terminated.  Hamot adds that even if its decision could be termed a "termination," Hamot had "proper cause" to take such action. Id.

15.     Hamot admits that the facts contained in paragraph 15 of the Statement are undisputed and material.

16.     Hamot denies that the March 1, 2004 letter from Dr. Lubahn to plaintiff was a termination letter.  Hamot admits that it is undisputed that the term "proper cause" was not used in the March 1, 2004 letter, but denies that fact is material because it did not terminate plaintiff from the Program.  Rather, Hamot decided not to renew plaintiff's contract for a fourth academic year.  See Exhibit A of Plaintiff's Motion.

17.     Hamot denies that it terminated plaintiff's contract, so no "finding of proper cause" was required.  Hamot adds that even if its decision constituted a "termination," it had "proper cause" to make that decision.  See Exhibits 1, 2 and 3.

18.     Hamot admits that the facts contained in paragraph 18 of the Statement are undisputed, but denies they are material, as that portion of the A&D Policy did not apply to plaintiff considering her "more serious" situation.  See Exhibit F of Plaintiff's Motion.

19.     Hamot denies that the facts contained in paragraph 19 of plaintiff's Statement are undisputed and material, as that portion of the A&D Policy did not apply to plaintiff considering her "more serious" situation.  Hamot further denies that plaintiff met all 13 of the criteria.  Id.

20.     Hamot admits that the March 1, 2004 letter did not reference the A&D Policy or identify which of those 13 points plaintiff failed to complete, but denies that these facts are material, as Hamot was not contractually bound by the A&D Policy and that portion of the Policy did not apply to plaintiff considering her "more serious" situation.  Id.

21.     Hamot denies that Dr. Lubahn terminated plaintiff's contract.  Hamot states that Dr. Lubahn initially decided not to renew plaintiff's contract for a fourth academic year because of her inability to satisfy the Core Competencies of the ACGME and meet academic and clinical standards of the Program, together with a corresponding failure to comply with her contractual obligations.  Hamot denies that Dr. Lubahn acted unilaterally in making his decision, and denies that such alleged fact is material.  See Exhibit B of Plaintiff's Motion and Exhibits 1, 2 and 3.

22.     Hamot admits that the facts contained in paragraph 22 of the Statement are undisputed and material.

23.     Hamot admits that the facts contained in paragraph 23 of the Statement are undisputed and material.

24.     Hamot admits that the facts contained in paragraph 24 of the Statement are undisputed and material.

25.    Hamot admits that the facts contained in paragraph 25 of the Statement are undisputed and material.

26.    Hamot admits that the facts contained in paragraph 26 of the Statement are undisputed and material.

27.    Hamot admits that the facts contained in paragraph 27 of the Statement are undisputed and material.

28.    Hamot admits that the facts contained in paragraph 28 of the Statement are undisputed and material, and emphasizes that per the ACGME, plaintiff was first and foremost a student rather than an employee.  See Exhibit 4 (ACGME Memorandum dated March 1, 2000).

29.    Hamot admits that the facts contained in paragraph 29 of the Statement are undisputed, but denies that the facts are material because Hamot was not contractually bound by the A&D Policy, and the procedures outlined therein do not elaborate on residents who have already been on probationary status in the Program and thus may be in a "more serious" situation.  See Exhibit F of Plaintiff's Motion.

30.    Hamot admits that Dr. Lubahn drafted the A&D Policy, but denies that he terminated plaintiff from the Program.  Hamot admits that Dr. Lubahn decided not to renew plaintiff's contract for a fourth academic year because of her inability to satisfy the Core Competencies of the ACGME and meet academic and clinical standards of the Program, together with a corresponding failure to comply with her contractual obligations.  See id. and Exhibits 1, 2 and 3.

31.    Hamot admits that the facts contained in paragraph 31 of the Statement are undisputed, but denies that it was contractually bound by the A&D Policy.  Further, all

procedures within the A&D Policy not addressing "more serious" situations are not material, as plaintiff's situation was "deemed more serious."  See Exhibit F of Plaintiff's Motion.

32.    Hamot admits that the facts contained in paragraph 32 of the Statement are undisputed, but denies that it was contractually bound by the A&D Policy.  Further, Hamot denies that the facts are material because a verbal warning was not necessary under the A&D Policy.  Id.

33.    Hamot admits that the facts contained in paragraph 33 of the Statement are undisputed, but denies that it was contractually bound by the A&D Policy.  Further, Hamot denies that the facts are material because a meeting and a second period of probation for plaintiff were not necessary under the A&D Policy.  Id.

34.    Hamot admits that the facts contained in paragraph 34 of the Statement are undisputed, but denies that it was contractually bound by the A&D Policy.  Further, Hamot denies that the facts are material because a letter and a second period of probation for plaintiff were not necessary under the A&D Policy.  Id.

35.    Hamot admits that the facts contained in paragraph 35 of the Statement are undisputed, but denies that it was contractually bound by the A&D Policy.  Further, Hamot denies that the facts are material because monthly reevaluations and a second period of probation for plaintiff were not necessary under the A&D Policy.  Id.

36.    Hamot admits that the facts contained in paragraph 36 of the Statement are undisputed, but denies that it was contractually bound by the A&D Policy.  Further, Hamot denies that the facts are material because a faculty determination as to additional remediation and a second period of probation for plaintiff were not necessary under the A&D Policy.  Id.

37.    Hamot admits that the facts contained in paragraph 37 of the Statement are undisputed, but denies that it was contractually bound by the A&D Policy.  Further, Hamot denies that the facts are material because an academic probation letter, faculty review of the letter and a second period of probation for plaintiff were not necessary under the A&D Policy. Id.

38.    Hamot admits that the facts contained in paragraph 38 of the Statement are undisputed, but denies that it was contractually bound by the A&D Policy.  Further, Hamot denies that the facts are material because plaintiff's being advised she would continue under continuous evaluation and a second period of probation for plaintiff were not necessary under the A&D Policy.  Id.

39.    Hamot admits that the facts contained in paragraph 39 of the Statement are undisputed, but denies that it was contractually bound by the A&D Policy.  Further, Hamot denies that the facts are material because continuous evaluation during a period of remediation and a second period of probation for plaintiff were not necessary under the A&D Policy.  Id.

40.    Hamot admits that the facts contained in paragraph 40 of the Statement are undisputed, but denies that it was contractually bound by the A&D Policy.  Further, Hamot denies that the facts are material because feedback during or after a period of remediation and a second period of probation for plaintiff were not necessary under the A&D Policy.  Id.

41.    Hamot admits that the facts contained in paragraph 41 of the Statement are undisputed, but denies that it was contractually bound by the A&D Policy.  Further, Hamot denies that the facts are material because a faculty determination as to advancement and a second period of probation for plaintiff were not necessary under the A&D Policy.  Id.

42.     Hamot admits that the facts contained in paragraph 42 of the Statement are undisputed, but denies that it was contractually bound by the A&D Policy.  Further, Hamot denies that the facts are material because an initial review by faculty and a second period of probation for plaintiff were not necessary under the A&D Policy.  Id.

43.     Hamot denies that plaintiff was terminated from the Program.  Hamot admits that plaintiff's contract was not renewed for a fourth academic year.  Hamot further admits that the fact that plaintiff was not on probation when the decision not to renew her contract was made is undisputed, but denies that that fact is material because it was not contractually bound by the A&D Policy and a second period of academic probation for plaintiff was not necessary for Hamot to ultimately decide that plaintiff could not be appointed to a fourth academic year.  Id.

44.     This statement is not true, either as a conclusion of law or as a matter of fact.  First, the premise is flawed: plaintiff was not "terminated;" her Contract was not renewed.  Further, the A&D Policy is not contractually binding nor is it true that a resident cannot be unilaterally – and immediately – terminated.  The A&D Policy itself notes the inapplicability of its stated procedures to "more serious" circumstances.   See Exhibits A and F of Plaintiff's Motion.

45.     Hamot denies that the facts contained in paragraph 45 of the Statement are undisputed.  Hamot denies that it was bound by the A&D Policy, and denies that it did not follow the procedures in the A&D Policy as applied to plaintiff's "more serious" situation, which allowed wide discretion to the Program Director in resolving such a matter.  See Exhibit F of Plaintiff's Motion.

<u>Additional Facts</u>

In accordance with LR 56.1.C.1(c), Hamot sets forth the following material facts that are at issue and that are necessary for the Court to determine plaintiff's Motion for Partial Summary Judgment:

46.    As a result of her academic and clinical underperformance, and per the A& D Policy, plaintiff was placed on probation on or about the beginning of April 2003.    <u>See</u> Exhibit 5 (Probation Letter from Dr. Lubahn to Dr. Brown).

47.    Plaintiff remained on probation through on or about October 1, 2003. <u>See</u> Exhibit 6 (September 2003 Semi-Annual Evaluation of Lisa Brown, MD).

48.    In a letter to Dr. Lubahn dated February 20, 2004, Dr. Mary Beth Cermak reported an incident where plaintiff had refused to go to the emergency room to treat a patient sent there by Dr. Cermak.  <u>See</u> Exhibit 1 (Letter from Dr. Cermak to Dr. Lubahn).

49.    Plaintiff denied that she had refused to go to the emergency room. <u>Id.</u>

50.    Dr. Cermak reported that she followed up with the emergency room nurse, who confirmed what had transpired.  <u>Id.</u>

51.    On February 25, 2004, in an evaluation of a presentation given by plaintiff, Dr. Lubahn concluded that plaintiff "had no immediate knowledge when questioned" more specifically about the presentation's subject matter and that the presentation was unsatisfactory considering plaintiff's level of training.  <u>See</u> Exhibit 2 (Clinical Presentation Evaluation of Dr. Brown by Dr. Lubahn).

52.    On February 27, 2004, Dr. Lubahn spoke with Dr. Frank Benes, who advised that plaintiff had delayed on multiple occasions in responding to calls from the emergency department. <u>See</u> Exhibit 3 (Email from Dr. Benes to Dr. Lubahn).

53.     The Advancement and Dismissal Policy states, in pertinent part, that "[s]hould a resident, at any point during the year, be identified as not meeting expectations…the resident will receive only a verbal warning unless the situation should be deemed more serious."  See Exhibit F of Plaintiff's Motion.

54.     Based on plaintiff's past probationary status and her frequent academic, clinical and professional deficiencies, Dr. Lubahn considered the events of February 2004 to be recurrences and her overall situation more troubling than he would have if she had never before demonstrated an inability to meet the requirements of a resident in the Program.  See Exhibit 7 (Deposition Transcript of Dr. John Lubahn) at 94:14-95:1.

55.     After considering the entire picture of plaintiff's performance and the events of February 2004 in the context of the skills and competence required of a fourth year resident in the Program, and after discussing the possibility of not renewing plaintiff's Contract for a fourth academic year, Dr. Lubahn decided not to reappoint plaintiff in the Program. Id. at 69:13-24, 71:21-72:21 and 76:5-15.

56.     After Dr. James Pepicello reviewed Dr. Lubahn's decision and concluded it was reasonable, the Grievance Committee met three times, decided it would only uphold the decision if it was unanimous, and unanimously voted to uphold the decision.  Subsequently, the Medical Education Committee, Medical Staff Executive Committee and Hamot's Board of Directors all upheld the decision.   See Exhibit 10 (Deposition Transcript of Don Inderlied) at 80:15-21 and 88:19-20; Exhibit 11 (Deposition Transcript of Dr. James Pepicello) at 81:16-18; and Exhibit 12 (Deposition Transcript of Dr. J. David Albert, II) at 25:5-27:4.

Respectfully submitted,

Tobin O'Connor Ewing & Richard


/s/ Kerry M. Richard
Kerry M. Richard
Ziad Haddad
Forrest G. Read
5335 Wisconsin Avenue, NW, Suite 700
Washington, DC  20015
202-362-5900
Date: September 15, 2006         Counsel for defendant