IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LISA BROWN, M.D.,                    )
                                     )
            Plaintiff,               )
                                     )
      v.                             )      Civil Action No. 05-32 E
                                     )
HAMOT MEDICAL CENTER,                )
                                     )
            Defendant.               )

PLAINTIFF'S RESPONSE TO DEFENDANT'S
CONCISE STATEMENT OF MATERIAL FACTS

Pursuant to Local Rule 56.1C, Plaintiff Lisa Brown, M.D., submits her response
to Hamot's Statement of Undisputed and Material Facts as to Which There is No
Genuine Issue.

A.    Responses to Defendant's Statement of Facts

      1.    Admitted.

      2.    Admitted that residents in theory and at times in form are treated as
students in Hamot's Orthopaedic Surgery Residency Program. Denied that residents
are always treated as students. Denied that Hamot fulfilled its obligations to Lisa Brown
as a student. Plaintiff's Brief In Opposition to Hamot's Motion for Summary Judgment,
Section II.A and G, and accompanying Exhibits.

      3.    Admitted.

      4.    Admitted.

**FILED**

SEP 1 5 2006

CLERK, U.S. DISTRICT COURT
WEST. DIST. OF PENNSYLVANIA

5.    Denied.  Hamot's contract with residents obligates Hamot to promote them unless they are terminated.  Appendix to Plaintiff's Brief In Opposition to Hamot's Motion for Summary Judgment ("Opposition Appendix"), Exhibit CC.

6.    Admitted.

7.    Admitted.

8.    Admitted.

9.    Denied.  In the very passage cited, satisfactory completion of resident training is a function of "the program director and faculty."

10.    Admitted.

11.    Admitted that plaintiff received a low percentile ranking on the OITE in 2001.  Denied that this is material when considering the low scores of other residents, or the purposes for which the exam is intended.  Opposition Appendix Exhibits U and V.

12.    Admitted.

13.    Admitted that Brown had some difficulties because of severe personal problems.  Opposition Appendix Exhibit E ¶ 14.

14.    Admitted that the cited document includes passages about reading and time management.  Deny any implication that Lubahn helped Brown substantially with reading and time management.  Opposition Appendix Exhibit J.

15.    Admitted that plaintiff received a low percentile ranking on the OITE in 2002.  Denied that this is material when considering the low scores of other residents, or the purposes for which the exam is intended.  Opposition Appendix Exhibits U and V.

16.    Admitted that the cited document includes passages about the subjects mentioned.  Deny any implication that Lubahn helped Brown substantially with such subjects.  Opposition Appendix Exhibit J.

17.    Admitted that a letter appears in Brown's personnel file from Williams containing the passage cited.  Deny the substance of the passage.  Opposition Appendix Exhibits I and E, September 15, 2006 Declaration of Brown ¶¶ 1-3.

18.    Admitted that a letter appears in Brown's personnel file from Williams containing the passage cited.  Deny the substance of the passage.  Opposition Appendix Exhibits I and E, September 15, 2006 Declaration of Brown ¶¶ 1-3.

19.    Admitted that a letter appears in Brown's personnel file from Williams containing the passage cited.  Deny the substance of the passage.  Opposition Appendix Exhibits I and E, September 15, 2006 Declaration of Brown ¶¶ 1-3.

20.    Admitted that Brown called Lubahn about an emergency room patient. Denied that Lubahn adequately communicated the cited instructions.  Denied that Brown's actions in treating the patient were improper.  Opposition Appendix Exhibit E, September 15, 2006 Declaration of Brown ¶ 6.

21.    Admitted that Brown followed the instructions of the emergency room physician on site, who could visually assess the patient and the wound.  Opposition Appendix Exhibit E, September 15, 2006 Declaration of Brown ¶ 6.

22.    Denied that Lubahn adequately communicated the cited instructions. Brown followed the instructions of the emergency room physician on site, which she believed to be the appropriate procedure.  Opposition Appendix Exhibit E, September 15, 2006 Declaration of Brown ¶ 6.

23.    Admitted.

24.    Admitted that the cited document contains the passage cited.  Denied that Lubahn actually designed or used the probation to assist Brown.  Opposition Appendix Exhibits J and E, September 15, 2006 Declaration of Brown ¶¶ 8-9.

25.    Admitted that Brown omitted a portion of a procedure from a report.

26.    Admitted.

27.    Denied.  According to Hamot's Exhibit 17, probation was scheduled to end in June 2003.  Moreover, any probation must be imposed in accordance with Hamot's Advancement and Dismissal Policy, a policy authored by Lubahn himself.  Exhibit DD. Such policies are made part of the contract between Hamot and its residents.  Exhibit CC.  This is an example of Lubahn's manipulation of virtually any rule, standard, or policy to suit his personal whims.

28.    Admitted that the document cited contains the passages identified, subject to the qualifications stated in paragraph 27.

29.    Admitted that plaintiff received a low percentile ranking on the OITE in 2003.  Denied that this is material when considering the low scores of other residents, or the purposes for which the exam is intended.  Opposition Appendix Exhibits U and V. Brown had undergone severe personal hardships prior to that exam which interfered with her ability to improve her performance.  Moreover, her performance is in part evidence of Hamot's deficiencies in carrying out its teaching function.  Exhibit E, September 15, 2006 Declaration of Brown ¶ 14.

30.    Admitted.

31.    Admitted that the document cited contains the passage identified.

32.     Admitted that a letter appears in Brown's personnel file from Cermak containing the passage cited.  Deny the substance of the passage.  Opposition Appendix Exhibit E; September 15, 2006 Declaration of Brown ¶ 4.

33.     Admitted.

34.     Admitted that a letter appears in Brown's personnel file from Cermak containing the passage cited.  Deny the substance of the passage.  Opposition Appendix Exhibit E; September 15, 2006 Declaration of Brown ¶ 4.

35.     Denied.  Opposition Appendix Exhibit E, September 15, 2006 Declaration of Brown ¶ 7.

36.     Denied that Brown created any problem by delaying responding to emergency room calls.  Opposition Appendix Exhibit E, September 15, 2006 Declaration of Brown ¶¶ 4-6.

37.     Denied that Brown created any problem by recurrently delaying responding to emergency room calls.  Opposition Appendix Exhibit E, September 15, 2006 Declaration of Brown ¶¶ 4-6.

38.     Admitted.

39.     Admitted that Brown met with Pepicello about her discharge from the Program.

40.     Admitted that Pepicello concurred with Lubahn's decision.

41.     Admitted.

42.     Admitted that the committee devised its own procedures for reaching its decision.  Deny that all such procedures, or even the procedure cited, benefited Brown, or even were fair.  For example, other residents were permitted to testify.  Opposition

Appendix Exhibit E, September 15, 2006 Declaration of Brown ¶ 15. Such residents could not be expected to oppose the Program Director's decision, which would be dangerous to their careers. There was thus an incentive to criticize Brown. Any shortcoming, real or merely perceived, in the most subjective terms, was brought before the committee. Thus, the committee was exposed to information which did not result in a fair hearing of Brown's grievance.

43.    Admitted.

44.    Admitted. The Medical Education Committee heard only a summary of the proceedings and reviewed no documents.

45.    Admitted. The Medical Staff Executive Committee heard only a summary of the proceedings and reviewed no documents.

46.    Admitted.

47.    Admitted. The Board of Directors heard only a summary of the proceedings and reviewed no documents.

48.    Admitted that Brown withheld any accusations of discrimination until this action, because, under the circumstances being imposed on her at the time, she did not believe discrimination claims would help her progress through the Program. Opposition Appendix Exhibit E; September 15, 2006 Declaration of Brown ¶ 10.

B.    Additional Facts Necessary to Decide Summary Judgment

49.    Hamot's Orthopaedic Residency Program has been cited by its accrediting body and by participants for failures to provide required instruction. Opposition Appendix Exhibit A.

50.     On a number of occasions Brown complained to Lubahn and Program faculty that they were not providing basic instruction.  Opposition Appendix Exhibits I and J.

51.     The Program has had only two female participants since Lubahn became Director in 1988.  Only one graduated.  Opposition Appendix Exhibit H at 136-137.

52.     Although more than half of medical school graduates are women, in 2002 only 2.6% of orthopedic residents were women.  Opposition Appendix Exhibit L.

53.     Brown received numerous positive performance evaluations during her time in the Program.  Opposition Appendix Exhibit N.

54.     Brown remained as a resident with her duties unchanged for four months after she was discharged from the Program.  Opposition Appendix Exhibit E, September 15, 2006 Declaration of Brown ¶ 11.

55.     Male colleagues had performance problems far worse than Brown's, but were not discharged from the Program.  Opposition Appendix Exhibits P,Q,R,S,T.

56.     During Brown's time in the Program, Lubahn went to extraordinary lengths to provide medical training for a male physicians who lost his license, lost admitting privileges, had interpersonal problems, had malpractice problems, and had substance abuse problems.  Opposition Appendix Exhibit T.

57.     Lubahn improperly gave determinative weight to Orthopedic In-Training Examination rankings in evaluating residents, and in deciding to discharge Brown.  Opposition Appendix Exhibit U.

58.    Lubahn offered personal attention and help to male residents with low OITE rankings. He made no such offer to Brown, instead recommending she consult a childrens' tutoring service. Opposition Appendix Exhibits W and X.

59.    Brown was subject to a range of unwanted and embarrassing comments, items, and incidents directly related to her status as a woman from Hamot staff, other residents, and faculty. Opposition Appendix Exhibit Y.

60.    At the time Brown was discharged, Hamot possessed information about the occurrence of medical errors involving residents demonstrating that Brown's alleged performance problems were not out of the ordinary for residents. Opposition Appendix Exhibits Z and AA.

61.    At the time Brown was a resident, Hamot had in its possession articles, including a study published in the Journal of the American Medication Association ("JAMA"), that analyzed residents' tendencies not to report medical errors. Opposition Appendix Exhibit Z.

62.    The JAMA study suggested that residency programs reduce errors by encouraging communication between residents and their supervisors. Opposition Appendix Exhibit Z.

63.    Section 5 of Brown's contract with Hamot states that "Upon satisfactory completion of the resident training year as determined by the program director and faculty, the Resident shall be promoted to the next level of resident training required and approved for his/her specialty, unless either HMC or the Resident shall give written notice to the other of termination upon completion of the current contract year." . Opposition Appendix Exhibit CC.

64.    The Hamot contract does not allow expiration, either a resident is promoted to the next level or terminated. Opposition Appendix Exhibit CC.

65.    Section 3 of Brown's contract with Hamot provides that either party may terminate the contract upon notice of proper cause.   Opposition Appendix Exhibit CC.

65.    Hamot maintained an Advancement and Dismissal Policy for its residents. Opposition Appendix Exhibit DD.

66.    According to the Advancement and Dismissal Policy, a resident cannot be terminated unless they are presently on academic probation.   Opposition Appendix Exhibit DD.

67.    Brown was not on academic probation at the time her contract was terminated.   Opposition Appendix Exhibit BB; August 15, 2006 Declaration of Brown ¶18.

68.    Hamot maintains a Grievance and Due Process policy. Opposition Appendix Exhibit EE.

69.    The Grievance committee focused on Brown's OITE scores in violation of policy and their intended use and application. Opposition Appendix Exhibit U.

70.    Hamot failed to require the votes of the entire grievance committee. Opposition Appendix Exhibits EE and E, September 15, 2006 Declaration of Brown ¶15.

71.    Hamot never provided a resolution at step two of the grievance committee proceedings. Opposition Appendix Exhibits EE and E; September 15, 2006 Declaration of Brown ¶ 15.

Respectfully submitted,

Leech Tishman Fuscaldo & Lampl

/s/ Patrick Sorek
Patrick Sorek, Pa. ID 41827
Alisa N. Carr, Pa. ID 56658
Citizens Bank Building, 30th Floor
525 William Penn Place
Pittsburgh, Pennsylvania  15219
(412) 261-1600

Counsel for plaintiff