American Academy of
Orthopaedic Surgeons ®  American Association of
Orthopaedic Surgeons ®

6300 North River Road Rosemont, Illinois 60018-4262
Phone 847/823-7186, 800/346-2267 Fax 847/823-8125 Fax-on-Demand 800/999/2939 Internet www.aaos.org

June 21, 2002

John D Lubahn, MD
Hamot Medical Center
201 State Street
Dept of Medical Education
Erie, PA 16550

Dear Dr. Lubahn:

The American Academy of Orthopaedic Surgeons created the *Diversity Committee* in 1996 to improve minority and female access to the orthopaedic profession. Over the past six years, the Committee has worked to accomplish this objective. Certainly, the ongoing support of orthopaedic surgeons with leadership roles in our residency programs is crucial to these endeavors. I am asking for your help.

As you may know, women, African Americans, Native Americans, Hispanics, Latinos and other minorities are dramatically under-represented in our profession. Only 2.6 percent of all orthopaedic surgeons are women, even though women make up more than half of all medical school graduates. African Americans, Hispanics and Latinos comprise only 7% of orthopaedic residents even though 16% of medical school graduates are members of these minority groups.

The goals of the Academy's *Diversity Committee* are to enhance goodwill and collegiality toward women and minorities in our specialty. In addition, we are striving to improve culturally competent care, eliminate racial/ethnic disparities in health care, and optimize access to orthopaedic care for female and minority patient populations. Our profession can move toward achieving these goals by increasing the number of qualified women and ethnic minorities in our orthopaedic residency programs.

Will you help make these humanitarian goals a reality? Please cooperate with the *Diversity Committee* by completing the attached form and faxing it to the Academy at **(847) 823-0394 by July 15**. Thank you for your valuable time and consideration.

Sincerely,

Augustus A. White, III, MD, PhD
Chairman, AAOS *Diversity Committee*

HMC-07340

# LISA BROWN, M.D., v. HAMOT MEDICAL CENTER
## Civil Action No. 05-32E

Plaintiff's Exhibits in Opposition to
Defendant's Motion for Summary Judgment

# EXHIBIT M

1 them elect to take them in the area of their anticipated
2 career.
3          They still have to do some time in pediatrics,
4 general medicine, OB-GYN, and surgery, but they can spend a
5 month in the orthopedic program. They might elect to spend
6 a month here because they like us or a month at the
7 University of Pittsburgh -- or a month in both places. They
8 are graded on that.
9          We have to write letters back to the medical
10 school and we have to document that they were there and they
11 fulfilled their duties and discuss what their abilities
12 were, both from a patient rapport standpoint, a rapport with
13 their peers, a rapport with their superiors. All of that is
14 taken into account when we report back to the medical
15 school. So it's all part of their educational process.
16     Q.   How many woman have gone through the program --
17 the orthopedic residency program in the period of time you
18 described?
19     A.   The only one I can recall is Stephanie Galey and
20 Lisa Brown.
21     Q.   Is it fair to say that orthopedic surgery is a
22 specialty that numerically is populated mainly by males?
23     A.   Yes.
24     Q.   Is there a reason for that?
25     A.   Yes.

21

1     Q.   What's the reason?
2     A.   It's hard, physical labor for the most part. And
3 most women would rather do a job that requires using their
4 brain rather than there brawn.
5     Q.   The physical labor parts, give me examples of what
6 you're referring to.
7     A.   When you are putting a steel rod inside of a bone
8 to repair it from automobile trauma, you have a mallet that
9 weighs about three, sometimes four pounds. And you're
10 lining up this rod that may be 12 to 14 inches in length and
11 you begin pounding. And you pound that with a mallet and
12 it's a repetitive pounding that requires some strength.
13          Occasionally, it requires so much strength that
14 even a man has to be spelled by another assistant. And it's
15 the kind of physical labor that most women, especially
16 during the time that I can be recall being a student -- none
17 of the women in my medical school class went into
18 orthopedics, they went into OB, they went into pediatrics,
19 they went into radiology, dermatology, things that didn't
20 require hard, physical labor.
21          And I don't recall a female resident until the era
22 of Stephanie Galey. Like the late '90s, early 2000s is when
23 you started seeing a lot more females in orthopedics for all
24 the reasons that I already told you.
25     Q.   Has the issue of the female-resident population

22

1 ever come up among the administration or faculty of the
2 resident program?
3     A.   No.
4     Q.   You're familiar with the term "affirmative
5 action".
6     A.   Yes.
7     Q.   You're not aware of any discussion about
8 affirmative action plans or programs being instituted in the
9 orthopedic residency program?
10     A.   No.
11     Q.   Have you ever taught or been on the faculty at,
12 well, anywhere else other than the places that you mentioned
13 in Erie, the hospitals in Erie?
14     A.   Part of Hamot's background is that they affiliate
15 themselves with universities. It's a tie-in to have medical
16 students rotate through our programs, not only orthopedics
17 but also family practice. And for periods of time we were
18 aligned with Allegheny General Hospital system in
19 Pittsburgh. And then when they bought MCP in Philadelphia,
20 we had an affiliation. And then --
21     Q.   And MCP is the medical college -- I'm sorry.
22     A.   Medical College of Pennsylvania.
23     Q.   All right.
24     A.   And prior to that, we had an affiliation with
25 Hahnemann University, a medical school in Philadelphia. And

23

1 each time Hamot had one of those affiliations, all of the
2 people who were involved in teaching became clinical
3 instructors at that institution. So I have had an assistant
4 clinical professorship at MCP and Hahnemann and Allegheny
5 General in the past.
6          And I think all the other members of the
7 Department of Family Medicine and the Department of
8 Orthopaedics have had the same situation.
9     Q.   In your experience, is it something desirable for
10 Hamot to have that affiliation?
11     A.   Yes.
12     Q.   And does it have such an affiliation now?
13     A.   I've been away for three years, and I'm not aware
14 if they do now or not.
15     Q.   Is there a reason why Hamot has had an affiliation
16 with these different institutions?
17     A.   I'm sure there is, but I'm not aware of the reason
18 for changing.
19     Q.   How does your practice schedule affect your
20 ability to teach residents?
21     A.   Well, none, they follow me everywhere.
22     Q.   That's part of the teaching?
23     A.   Correct.
24     Q.   How does the number of attending physicians
25 available affect the ability to teach residents in the Hamot

24

# LISA BROWN, M.D., v. HAMOT MEDICAL CENTER
## Civil Action No. 05-32E

Plaintiff's Exhibits in Opposition to
Defendant's Motion for Summary Judgment

# EXHIBIT N

# RESIDENT EVALUATION

Name: Lisa Brown

Date: 2/7/03

I reviewed Lisa Brown's progress for the year beginning with her in-training scores which are in need of improvement. I discussed various study approaches for her, a reading list, certain hours to read on a regular basis on evenings and weekends.

Her clinical performance has been acceptable, however I did discuss one patient about whom she had phoned me describing a posterior fracture dislocation of the hip which in addition to a fractured posterior wall of the acetabulum included a pelvic fracture which did modify treatment somewhat. As a result of that particular patient I did suggest she review Epstein's article on fracture dislocations of the hip and his associated classification.

Signature.....................................
John D. Lubahn, MD, Program Director

Lisa Brown
Semi-Annual Evaluation
9/16/03

I initially discussed Lisa's research thus far which has been limited by the need of IRB approval and funding from Biomet. I advised her that she should look for other research, either a clinical project such as hamate fractures with Dr. Pollard, a prospective study of diabetes and joint replacement with Dr. Nechleba, working with Tim Cooney and myself in the basic science studies on relaxin receptors in the basal joint and/or nerve growth factor in Dupuytren's disease. I would also entertain any other clinical research which interests her but hasten to add she needs to decide soon.

Her clinical performance and basic orthopaedic knowledge seemed to have improved significantly. Her presentation at the department meeting last weekend showed significant improvement as has her interaction with other residents and attendings. I advised her that when she once again resumes a clinical rotation that she should establish a better relationship with the emergency room physicians such that she be called more frequently to see fingertip injuries and nondisplaced fractures and also advised her that when she sees these particular problems, specifically fingertip injuries and open interphalangeal joint injuries of the hand or foot that she should be certain to call the attending and discuss care and management at the time the patient is evaluated.

Finally, I believe that when she resumes her clinical rotation in October, pending her performance between now and then, I would remove her probation status.

John D. Lubahn, MD
Program Director

Lisa Brown, MD
Hamot Medical Center Orthopaedic Residency Program
Semi-Annual Evaluation
January 30, 2004
3:30 pm

I discussed Dr. Brown's performance thus far since her last evaluation. Her in-training performance was poor. In fact she and I had discussed this on one previous occasion. My recommendation for her to improve her abilities on standardized testing was to have an evaluation at the Sylvan Learning Center in Erie and to report back to me with their recommendations and a plan.

I did counsel her that if her performance did not improve over the course of the next two years on the order of 20% to 40% each year, that I would be unable to sign her application to take Part I of the American Board of Orthopaedic Surgeons Exam. I would consider an additional year here or an additional year of fellowship at which time she could sit for the examination.

I did counsel her that her clinical performance thus far this year had improved and was acceptable. There were areas where her clinical skills did still seem deficient to me and I cited those and suggested additional reading materials.

I do believe that her performance on the OITE exam is a combination of multiple factors including personal, scholastic (meaning knowledge base gleaned from textbooks and journal articles read thus far), and ability to take standardized tests and will continue to evaluate each of these in the future.

Lisa did have an excellent performance and evaluation on her microsurgical skills lab earlier this year.

_____           _____
John D. Lubahn, MD                        Lisa Brown, MD
Program Director                          Orthopaedic Resident

The GMEToolkit - Hamot Medical Center

<< Back

## Hamot Medical Center-Orthopaedics
## ORTHOPAEDIC RESIDENCY PROGRAM EVALUATION FORM

### Please select the most appropriate rating:

### N/A 1=Unacceptable 2=Poor 3=Average 4=Above Average 5=Excellent

### History and Physical Exam

| | 0 | 1 | 2 | 3 | 4 | 5 | Total |
|---|---|---|---|---|---|---|---|
| Obtain a concise, pertinent history | 0 | 0 | 0 | 0 | 1 | 0 | 1 |
| Perform appropriate physical exam | 0 | 0 | 0 | 1 | 0 | 0 | 1 |

### Medical Knowledge

| | 0 | 1 | 2 | 3 | 4 | 5 | Total |
|---|---|---|---|---|---|---|---|
| Uses proper technique, organizes equipment and efficiently performs with ease and dexterity | 0 | 0 | 0 | 0 | 1 | 0 | 1 |
| Able to interpret history and physical findings, order and interpret appropriate diagnostics | 0 | 0 | 0 | 1 | 0 | 0 | 1 |
| Can identify signs that require urgent vs delayed intervention | 0 | 0 | 0 | 0 | 1 | 0 | 1 |
| Can identify patients requiring acute intervention and provide stabilization | 0 | 0 | 0 | 0 | 1 | 0 | 1 |

### Coordinator of Care and Treatment

| | 0 | 1 | 2 | 3 | 4 | 5 | Total |
|---|---|---|---|---|---|---|---|
| Ensures optimal post-op care of patients | 0 | 0 | 0 | 0 | 1 | 0 | 1 |
| Ensures optimal pre-op evaluation/preparation of patients | 0 | 0 | 0 | 0 | 1 | 0 | 1 |
| Refers patients for care in timely manner when indicated | 0 | 0 | 0 | 1 | 0 | 0 | 1 |
| Implements appropriate treatment of patients | 0 | 0 | 0 | 0 | 1 | 0 | 1 |

### Communication

| | 0 | 1 | 2 | 3 | 4 | 5 | Total |
|---|---|---|---|---|---|---|---|
| Explains problems to patients and involves patients' families in decisions | 0 | 0 | 0 | 0 | 1 | 0 | 1 |
| Presents concise and organized cases to faculty and consultants | 0 | 0 | 0 | 1 | 0 | 0 | 1 |
| Communicates respectfully with team members | 0 | 0 | 0 | 0 | 1 | 0 | 1 |
| Communicates pleasantly and respectfully with patients and families | 0 | 0 | 0 | 0 | 0 | 1 | 1 |

The GMEToolkit - Hamot Medical Center                                      Page 2 of 3

### Patient Education

| | 0 | 1 | 2 | 3 | 4 | 5 | Total |
|---|---|---|---|---|---|---|---|
| Identifies patient education needs, utilizes and coordinates available resources | 0 | 0 | 0 | 0 | 1 | 0 | 1 |

### Procedures and Lab Skills

| | 0 | 1 | 2 | 3 | 4 | 5 | Total |
|---|---|---|---|---|---|---|---|
| Performs core procedures competently and with appropriate supervision | 0 | 0 | 0 | 1 | 0 | 0 | 1 |
| Documents procedures accurately and in a timely manner | 0 | 0 | 0 | 1 | 0 | 0 | 1 |
| Has plan for tests and consults and interprets test results correctly | 0 | 0 | 0 | 1 | 0 | 0 | 1 |

### Attitude

| | 0 | 1 | 2 | 3 | 4 | 5 | Total |
|---|---|---|---|---|---|---|---|
| Demonstrates interest and desire to learn by asking questions and through reading | 0 | 0 | 0 | 0 | 1 | 0 | 1 |
| Cooperative/team attitude with faculty, colleagues and staff | 0 | 0 | 0 | 0 | 1 | 0 | 1 |
| Self-directed, motivated and organized | 0 | 0 | 0 | 0 | 1 | 0 | 1 |

### Core Competencies

| | 0 | 1 | 2 | 3 | 4 | 5 | Total |
|---|---|---|---|---|---|---|---|
| **Patient Care**: provides compassionate care that is effective for the promotion of health, prevention, and treatment | 0 | 0 | 0 | 0 | 0 | 1 | 1 |
| **Medical Knowledge**: demonstrates knowledge of biomedical, clinical and social sciences, and applies that knowledge effectively to patient care | 0 | 0 | 0 | 1 | 0 | 0 | 1 |
| **Practice-Based Learning and Improvement**: uses evidence and methods to investigate, evaluate, and improve his/her patient care practices | 0 | 0 | 0 | 1 | 0 | 0 | 1 |
| **Communication and Interpersonal Skills**: demonstrates these skills and maintains professional and therapeutic relationships with patients and the healthcare team | 0 | 0 | 0 | 0 | 1 | 0 | 1 |
| **Professionalism**: demonstrates behaviors that reflect an ongoing commitment to continuous professional development, ethical practice, sensitivity, and responsible attitudes | 0 | 0 | 0 | 0 | 1 | 0 | 1 |
| **System-Based Practice**: demonstrates both an understanding of the contexts and systems in which health care is provided and applies this knowledge to improve and optimize health care | 0 | 0 | 0 | 1 | 0 | 0 | 1 |

### Overall Evaluation

| | 0 | 1 | 2 | 3 | 4 | 5 | Total |
|---|---|---|---|---|---|---|---|
| Overall evaluation as a physician | 0 | 0 | 0 | 1 | 0 | 0 | 1 |

Comments
- SHE HAS IMPROVED IN MANY ASPECTS SINCE HER FIRST ROTATION. SHE STILL LACKS CONFIDENSE IN SURGERY. SHE STILLS NEEDS TO INCREASE HER CORE ORTHOPAEDIC KNOWLEDGE. SHE MAY NEED MORE ONE ON ONE TUTALEDGE.

The GMEToolkit - Hamot Medical Center

**Evaluatees:**
Lisa Brown (R)

**Form:**
Faculty Evaluation of Resident

**Rotations:**
Anesthesia (Anes)
Babins/Cermak (BaCer)
Babins/Rogers (BabRo)
Basic Science (BasSc)
Cortina/Stefanovski (CorSt)
Emergency Medicine (EM)
General Surgery (GenSu)
Hand (Hand)
Intensive Care Unit (ICU)
Internal Medicine (IM)
Neurosurgery (Neuro)
Ortho-Chief1 (Ch1)
Ortho-Chief2 (Ch2)
Orthopaedics (Ortho)
Plastic Surgery (PlaSu)
Radiology (Rad)
Rheumatology (Rheum)
Shriners Hospital (Peds)
Suprock/Kastrup (SuKas)
Trauma (Traum)
Vascular Surgery (VasSu)

Report Date: 02/11/2004 07:09 AM
Reporting Period: 07/01/2003 - 06/30/2004

Do Not Include Pooled Queue

## ORTHOPAEDIC RESIDENCY PROGRAM EVALUATION FORM

Resident:  Lisa Brown, MD          Attending:  Dr. Babins
Rotation:  Orthopaedics           Rotation Dates: 4/03-6/03

| History and Physical Exam | Unacceptable | Poor | Average | Above Average | Excellent | |
|---|---|---|---|---|---|---|
| 1) Obtain a concise, pertinent history | 1 | 2 | 3 | (4) | 5 | NA |
| 2) Perform appropriate physical exam | 1 | 2 | (3) | 4 | 5 | NA |

**Medical Knowledge**

| | | | | | | |
|---|---|---|---|---|---|---|
| 1) Uses proper technique, organizes equipment and efficiently performs with ease and dexterity | 1 | 2 | (3) | 4 | 5 | NA |
| 2) Able to interpret history and physical findings, order and interpret appropriate diagnostics | 1 | 2 | 3 | (4) | 5 | NA |
| 3) Can identify signs that require urgent vs delayed intervention | 1 | 2 | 3 | (4) | 5 | NA |
| 4) Can identify patients requiring acute intervention and provide stabilization | 1 | 2 | 3 | (4) | 5 | NA |

**Coordinator of Care and Treatment**

| | | | | | | |
|---|---|---|---|---|---|---|
| 1) Ensures optimal post-op care of patients | 1 | 2 | 3 | (4) | 5 | NA |
| 2) Ensures optimal pre-op evaluation/preparation of patients | 1 | 2 | 3 | (4) | 5 | NA |
| 3) Refers patients for care in timely manner when indicated | 1 | 2 | 3 | (4) | 5 | NA |
| 4) Implements appropriate treatment of patients | 1 | 2 | 3 | (4) | 5 | NA |

**Communication**

| | | | | | | |
|---|---|---|---|---|---|---|
| 1) Explains problems to patients and involves patients' families in decisions | 1 | 2 | 3 | (4) | 5 | NA |
| 2) Presents concise and organized cases to faculty and consultants | 1 | 2 | (3) | 4 | 5 | NA |
| 3) Communicates respectfully with team members | 1 | 2 | 3 | (4) | 5 | NA |
| 4) Communicates pleasantly and respectfully with patients and families | 1 | 2 | 3 | (4) | 5 | NA |

**Patient Education**

| | | | | | | |
|---|---|---|---|---|---|---|
| 1) Identifies patient education needs, utilizes and coordinates available resources | 1 | 2 | 3 | (4) | 5 | NA |

HMC-03352
CONFIDENTIAL

**Procedures and Lab Skills**

| | | Unacceptable | Poor | Average | Above Average | Excellent | |
|---|---|---|---|---|---|---|---|
| 1) | Performs core procedures competently and with appropriate supervision | 1 | 2 | ③ | 4 | 5 | NA |
| 2) | Documents procedures accurately and in a timely manner | 1 | 2 | 3 | ④ | 5 | NA |
| 3) | Has plan for tests and consults and interprets test results correctly | 1 | 2 | ③ | 4 | 5 | NA |

**Attitude**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1) | Demonstrates interest and desire to learn by asking questions and through reading | 1 | 2 | 3 | ④ | 5 | NA |
| 2) | Cooperative/team attitude with faculty, colleagues and staff | 1 | 2 | 3 | ④ | 5 | NA |
| 3) | Self-directed, motivated and organized | 1 | 2 | 3 | ④ | 5 | NA |

**Core Competencies**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1) | Patient Care: provides compassionate care that is effective for the promotion of health, prevention, and treatment | 1 | 2 | 3 | ④ | 5 | NA |
| 2) | Medical Knowledge: demonstrates knowledge of biomedical, clinical and social sciences, and applies that knowledge effectively to patient care | 1 | 2 | ③ | 4 | 5 | NA |
| 3) | Practice-Based Learning and Improvement: uses evidence and methods to investigate, evaluate, and improve his/her patient care practices | 1 | 2 | ③ | 4 | 5 | NA |
| 4) | Communication and Interpersonal Skills: demonstrates these skills and maintains professional and therapeutic relationships with patients and the healthcare team | 1 | 2 | 3 | ④ | 5 | NA |
| 5) | Professionalism: demonstrates behaviors that reflect an ongoing commitment to continuous professional development, ethical practice, sensitivity, and responsible attitudes | 1 | 2 | 3 | ④ | 5 | NA |
| 6) | System-Based Practice: demonstrates both an understanding of the contexts and systems in which health care is provided and applies this knowledge to improve and optimize health care | 1 | 2 | ③ | 4 | 5 | NA |

**Overall Evaluation**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1) | Overall evaluation as a physician | 1 | 2 | 3 | ④ 4 | 5 | NA |

2) Comments *Improving; Needs to gain self confidence she needs to continue reading aggressively and be in OR as much as possible. I expect her to improve & over next several years*

HMC-03353

CONFIDENTIAL

## ORTHOPAEDIC RESIDENCY PROGRAM EVALUATION FORM

Resident: Lisa Brown, MD          Attending: Dr. Cermak
Rotation: Orthopaedics            Rotation Dates: 4/03-6/03

| History and Physical Exam | Unacceptable | Poor | Average | Above Average | Excellent | |
|---|---|---|---|---|---|---|
| 1) Obtain a concise, pertinent history | 1 | 2 | (3) | 4 | 5 | NA |
| 2) Perform appropriate physical exam | 1 | 2 | (3) | 4 | 5 | NA |

**Medical Knowledge**

| | | | | | | |
|---|---|---|---|---|---|---|
| 1) Uses proper technique, organizes equipment and efficiently performs with ease and dexterity | 1 | 2 | (3) | 4 | 5 | NA |
| 2) Able to interpret history and physical findings, order and interpret appropriate diagnostics | 1 | 2 | (3) | 4 | 5 | NA |
| 3) Can identify signs that require urgent vs delayed intervention | 1 | 2 | 3 | (4) | 5 | NA |
| 4) Can identify patients requiring acute intervention and provide stabilization | 1 | 2 | (3) | 4 | 5 | NA |

**Coordinator of Care and Treatment**

| | | | | | | |
|---|---|---|---|---|---|---|
| 1) Ensures optimal post-op care of patients | 1 | 2 | (3) | 4 | 5 | NA |
| 2) Ensures optimal pre-op evaluation/preparation of patients | 1 | 2 | (3) | 4 | 5 | NA |
| 3) Refers patients for care in timely manner when indicated | 1 | 2 | (3) | 4 | 5 | NA |
| 4) Implements appropriate treatment of patients | 1 | 2 | (3) | 4 | 5 | NA |

**Communication**

| | | | | | | |
|---|---|---|---|---|---|---|
| 1) Explains problems to patients and involves patients' families in decisions | 1 | 2 | (3) | 4 | 5 | NA |
| 2) Presents concise and organized cases to faculty and consultants | 1 | (2) | 3 | 4 | 5 | NA |
| 3) Communicates respectfully with team members | 1 | 2 | 3 | 4 | (5) | NA |
| 4) Communicates pleasantly and respectfully with patients and families | 1 | 2 | 3 | 4 | (5) | NA |

**Patient Education**

| | | | | | | |
|---|---|---|---|---|---|---|
| 1) Identifies patient education needs, utilizes and coordinates available resources | 1 | 2 | (3) | 4 | 5 | NA |

HMC-03354

CONFIDENTIAL

Procedures and Lab Skills

|  | | Unacceptable | Poor | Average | Above Average | Excellent | |
|---|---|---|---|---|---|---|---|
| 1) | Performs core procedures competently and with appropriate supervision | 1 | 2 | ③ | 4 | 5 | NA |
| 2) | Documents procedures accurately and in a timely manner | 1 | 2 | ③ | 4 | 5 | NA |
| 3) | Has plan for tests and consults and interprets test results correctly | 1 | 2 | ③ | 4 | 5 | NA |

Attitude

| 1) | Demonstrates interest and desire to learn by asking questions and through reading | 1 | 2 | 3←→ 4 | | 5 | NA |
|---|---|---|---|---|---|---|---|
| 2) | Cooperative/team attitude with faculty, colleagues and staff | 1 | 2 | 3 | 4 | ⑤ | NA |
| 3) | Self-directed, motivated and organized | 1 | 2 | 3 | ④ | 5 | NA |

Core Competencies

| 1) | **Patient Care:** provides compassionate care that is effective for the promotion of health, prevention, and treatment | 1 | 2 | 3 | 4 | ⑤ | NA |
|---|---|---|---|---|---|---|---|
| 2) | **Medical Knowledge:** demonstrates knowledge of biomedical, clinical and social sciences, and applies that knowledge effectively to patient care | 1 | 2 | ③ | 4 | 5 | NA |
| 3) | **Practice-Based Learning and Improvement:** uses evidence and methods to investigate, evaluate, and improve his/her patient care practices | 1 | 2 | ③ | 4 | 5 | NA |
| 4) | **Communication and Interpersonal Skills:** demonstrates these skills and maintains professional and therapeutic relationships with patients and the healthcare team | 1 | 2 | 3 | ④ | 5 | NA |
| 5) | **Professionalism:** demonstrates behaviors that reflect an ongoing commitment to continuous professional development, ethical practice, sensitivity, and responsible attitudes | 1 | 2 | ③ | 4 | 5 | NA |
| 6) | **System-Based Practice:** demonstrates both an understanding of the contexts and systems in which health care is provided and applies this knowledge to improve and optimize health care | 1 | 2 | ③ | 4 | 5 | NA |

Overall Evaluation

| 1) | Overall evaluation as a physician | 1 | 2 | ③ | 4 | 5 | NA |
|---|---|---|---|---|---|---|---|

2)     Comments _____

Improving need keep reading

HMC-03355
CONFIDENTIAL

## ORTHOPAEDIC RESIDENCY PROGRAM EVALUATION FORM

Resident: Lisa Brown, MD
Rotation: Hand Service

Attending: Mary Beth Cermak, MD
Rotation Dates: 7/1/02 – 9/30/02

| History and Physical Exam | | Unacceptable | Poor | Average | Above Average | Excellent | |
|---|---|---|---|---|---|---|---|
| 1) | Obtain a concise, pertinent history | 1 | 2 | (3) | 4 | 5 | NA |
| 2) | Perform appropriate physical exam | 1 | 2 | 3 | (4) | 5 | NA |

**Medical Knowledge**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1) | Uses proper technique, organizes equipment and efficiently performs with ease and dexterity | 1 | 2 | 3 | (4) | 5 | NA |
| 2) | Able to interpret history and physical findings, order and interpret appropriate diagnostics | 1 | 2 | (3) | 4 | 5 | NA |
| 3) | Can identify signs that require urgent vs delayed intervention | 1 | 2 | 3 | 4 | (5) | NA |
| 4) | Can identify patients requiring acute intervention and provide stabilization | 1 | 2 | 3 | 4 | (5) | NA |

**Coordinator of Care and Treatment**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1) | Ensures optimal post-op care of patients | 1 | 2 | 3 | (4) | 5 | NA |
| 2) | Ensures optimal pre-op evaluation/preparation of patients | 1 | 2 | 3 | (4) | 5 | NA |
| 3) | Refers patients for care in timely manner when indicated | 1 | 2 | 3 | (4) | 5 | NA |
| 4) | Implements appropriate treatment of patients | 1 | 2 | 3 | (4) | 5 | NA |

**Communication**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1) | Explains problems to patients and involves patients' families in decisions | 1 | 2 | (3) | 4 | 5 | NA |
| 2) | Presents concise and organized cases to faculty and consultants | 1 | 2 | (3) | 4 | 5 | NA |
| 3) | Communicates respectfully with team members | 1 | 2 | 3 | 4 | (5) | NA |
| 4) | Communicates pleasantly and respectfully with patients and families | 1 | 2 | 3 | 4 | (5) | NA |

**Patient Education**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1) | Identifies patient education needs, utilizes and coordinates available resources | 1 | 2 | 3 | (4) | 5 | NA |

OCT - 7 2002

HMC-03370
CONFIDENTIAL

| Procedures and Lab Skills | Unacceptable | Poor | Average | Above Average | Excellent | |
|---|---|---|---|---|---|---|
| 1)  Performs core procedures competently and with appropriate supervision | 1 | 2 | 3 | (4) | 5 | NA |
| 2)  Documents procedures accurately and in a timely manner | 1 | 2 | (3) | 4 | 5 | NA |
| 3)  Has plan for tests and consults and interprets test results correctly | 1 | 2 | (3) | 4 | 5 | NA |

**Attitude**

| | | | | | | |
|---|---|---|---|---|---|---|
| 1)  Demonstrates interest and desire to learn by asking questions and through reading | 1 | 2 | 3 | 4 | (5) | NA |
| 2)  Cooperative/team attitude with faculty, colleagues and staff | 1 | 2 | 3 | 4 | (5) | NA |
| 3)  Self-directed, motivated and organized | 1 | 2 | 3 | 4 | (5) | NA |

**Core Competencies**

| | | | | | | |
|---|---|---|---|---|---|---|
| 1)  Patient Care:  provides compassionate care that is effective for the promotion of health, prevention, and treatment | 1 | 2 | 3 | 4 | (5) | NA |
| 2)  Medical Knowledge: demonstrates knowledge of biomedical, clinical and social sciences, and applies that knowledge effectively to patient care | 1 | 2 | (3) | 4 | 5 | NA |
| 3)  Practice-Based Learning and Improvement: uses evidence and methods to investigate, evaluate, and improve his/her patient care practices | 1 | 2 | 3 | (4) | 5 | NA |
| 4)  Communication and Interpersonal Skills: demonstrates these skills and maintains professional and therapeutic relationships with patients and the healthcare team | 1 | 2 | 3 | 4 | (5) | NA |
| 5)  Professionalism: demonstrates behaviors that reflect an ongoing commitment to continuous professional development, ethical practice, sensitivity, and responsible attitudes | 1 | 2 | 3 | (4) | 5 | NA |
| 6)  System-Based Practice: demonstrates both an understanding of the contexts and systems in which health care is provided and applies this knowledge to improve and optimize health care | 1 | 2 | 3 | (4) | 5 | NA |

**Overall Evaluation**

| | | | | | | |
|---|---|---|---|---|---|---|
| 1)  Overall evaluation as a physician | 1 | 2 | 3 | (4) | 5 | NA |

2)  Comments _Improved notably over_
_last 3 mos.  q knowledge_
_q confidence_

HMC-03371

CONFIDENTIAL

## ORTHOPAEDIC RESIDENCY PROGRAM EVALUATION FORM

Resident:  Lisa Brown, MD
Rotation:  Hand Service

Attending:  John Hood, MD
Rotation Dates: 7/1/02 – 9/30/02

| History and Physical Exam | Unacceptable | Poor | Average | Above Average | Excellent | |
|---|---|---|---|---|---|---|
| 1) Obtain a concise, pertinent history | 1 | 2 | 3 | (4) | 5 | NA |
| 2) Perform appropriate physical exam | 1 | 2 | 3 | (4) | 5 | NA |

**Medical Knowledge**

| | | | | | | |
|---|---|---|---|---|---|---|
| 1) Uses proper technique, organizes equipment and efficiently performs with ease and dexterity | 1 | 2 | (3) | 4 | 5 | NA |
| 2) Able to interpret history and physical findings, order and interpret appropriate diagnostics | 1 | 2 | 3 | (4) | 5 | NA |
| 3) Can identify signs that require urgent vs delayed intervention | 1 | 2 | 3 | (4) | 5 | NA |
| 4) Can identify patients requiring acute intervention and provide stabilization | 1 | 2 | 3 | (4) | 5 | NA |

**Coordinator of Care and Treatment**

| | | | | | | |
|---|---|---|---|---|---|---|
| 1) Ensures optimal post-op care of patients | 1 | 2 | 3 | (4) | 5 | NA |
| 2) Ensures optimal pre-op evaluation/preparation of patients | 1 | 2 | 3 | (4) | 5 | NA |
| 3) Refers patients for care in timely manner when indicated | 1 | 2 | 3 | (4) | 5 | NA |
| 4) Implements appropriate treatment of patients | 1 | 2 | 3 | (4) | 5 | NA |

**Communication**

| | | | | | | |
|---|---|---|---|---|---|---|
| 1) Explains problems to patients and involves patients' families in decisions | 1 | 2 | 3 | (4) | 5 | NA |
| 2) Presents concise and organized cases to faculty and consultants | 1 | 2 | 3 | (4) | 5 | NA |
| 3) Communicates respectfully with team members | 1 | 2 | 3 | (4) | 5 | NA |
| 4) Communicates pleasantly and respectfully with patients and families | 1 | 2 | 3 | (4) | 5 | NA |

**Patient Education**

| | | | | | | |
|---|---|---|---|---|---|---|
| 1) Identifies patient education needs, utilizes and coordinates available resources | 1 | 2 | 3 | (4) | 5 | NA |

HMC-03366

CONFIDENTIAL

OCT - 7 2002

**Procedures and Lab Skills**

| | | Unacceptable | Poor | Average | Above Average | Excellent | |
|---|---|---|---|---|---|---|---|
| 1) | Performs core procedures competently and with appropriate supervision | 1 | 2 | 3 | (4) | 5 | NA |
| 2) | Documents procedures accurately and in a timely manner | 1 | 2 | 3 | (4) | 5 | NA |
| 3) | Has plan for tests and consults and interprets test results correctly | 1 | 2 | 3 | (4) | 5 | NA |

**Attitude**

| | | Unacceptable | Poor | Average | Above Average | Excellent | |
|---|---|---|---|---|---|---|---|
| 1) | Demonstrates interest and desire to learn by asking questions and through reading | 1 | 2 | 3 | (4) | 5 | NA |
| 2) | Cooperative/team attitude with faculty, colleagues and staff | 1 | 2 | 3 | (4) | 5 | NA |
| 3) | Self-directed, motivated and organized | 1 | 2 | 3 | (4) | 5 | NA |

**Core Competencies**

| | | Unacceptable | Poor | Average | Above Average | Excellent | |
|---|---|---|---|---|---|---|---|
| 1) | **Patient Care:** provides compassionate care that is effective for the promotion of health, prevention, and treatment | 1 | 2 | 3 | (4) | 5 | NA |
| 2) | **Medical Knowledge:** demonstrates knowledge of biomedical, clinical and social sciences, and applies that knowledge effectively to patient care | 1 | 2 | 3 | (4) | 5 | NA |
| 3) | **Practice-Based Learning and Improvement:** uses evidence and methods to investigate, evaluate, and improve his/her patient care practices | 1 | 2 | 3 | (4) | 5 | NA |
| 4) | **Communication and Interpersonal Skills:** demonstrates these skills and maintains professional and therapeutic relationships with patients and the healthcare team | 1 | 2 | 3 | (4) | 5 | NA |
| 5) | **Professionalism:** demonstrates behaviors that reflect an ongoing commitment to continuous professional development, ethical practice, sensitivity, and responsible attitudes | 1 | 2 | 3 | (4) | 5 | NA |
| 6) | **System-Based Practice:** demonstrates both an understanding of the contexts and systems in which health care is provided and applies this knowledge to improve and optimize health care | 1 | 2 | 3 | (4) | 5 | NA |

**Overall Evaluation**

| | | Unacceptable | Poor | Average | Above Average | Excellent | |
|---|---|---|---|---|---|---|---|
| 1) | Overall evaluation as a physician | 1 | 2 | 3 | (4) | 5 | NA |
| 2) | Comments _____ | | | | | | |

_____

_____

HMC-03367

CONFIDENTIAL

## ORTHOPAEDIC RESIDENCY PROGRAM EVALUATION FORM

Resident: Lisa Brown, MD

Attending: John Lubahn, MD

Rotation: Hand Service

Rotation Dates: 7/1/02 – 9/30/02

| History and Physical Exam | | Unacceptable | Poor | Average | Above Average | Excellent | |
|---|---|---|---|---|---|---|---|
| 1) | Obtain a concise, pertinent history | 1 | 2 | (3) | 4 | 5 | NA |
| 2) | Perform appropriate physical exam | 1 | 2 | (3) | 4 | 5 | NA |

**Medical Knowledge**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1) | Uses proper technique, organizes equipment and efficiently performs with ease and dexterity | 1 | 2 | 3 | (4) | 5 | NA |
| 2) | Able to interpret history and physical findings, order and interpret appropriate diagnostics | 1 | 2 | (3) | 4 | 5 | NA |
| 3) | Can identify signs that require urgent vs delayed intervention | 1 | 2 | (3) | 4 | 5 | NA |
| 4) | Can identify patients requiring acute intervention and provide stabilization | 1 | 2 | (3) | 4 | 5 | NA |

**Coordinator of Care and Treatment**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1) | Ensures optimal post-op care of patients | 1 | 2 | (3) | 4 | 5 | NA |
| 2) | Ensures optimal pre-op evaluation/preparation of patients | 1 | 2 | (3) | 4 | 5 | NA |
| 3) | Refers patients for care in timely manner when indicated | 1 | 2 | (3) | 4 | 5 | NA |
| 4) | Implements appropriate treatment of patients | 1 | 2 | (3) | 4 | 5 | NA |

**Communication**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1) | Explains problems to patients and involves patients' families in decisions | 1 | 2 | 3 | (4) | 5 | NA |
| 2) | Presents concise and organized cases to faculty and consultants | 1 | 2 | (3) | 4 | 5 | NA |
| 3) | Communicates respectfully with team members | 1 | 2 | 3 | (4) | 5 | NA |
| 4) | Communicates pleasantly and respectfully with patients and families | 1 | 2 | 3 | 4 | (5) | NA |

**Patient Education**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1) | Identifies patient education needs, utilizes and coordinates available resources | 1 | 2 | 3 | (4) | 5 | NA |

OCT - 7 2002

HMC-03364

CONFIDENTIAL

**Procedures and Lab Skills**

| | | Unacceptable | Poor | Average | Above Average | Excellent | |
|---|---|---|---|---|---|---|---|
| 1) | Performs core procedures competently and with appropriate supervision | 1 | 2 | (3) | 4 | 5 | NA |
| 2) | Documents procedures accurately and in a timely manner | 1 | 2 | (3) | 4 | 5 | NA |
| 3) | Has plan for tests and consults and interprets test results correctly | 1 | 2 | (3) | 4 | 5 | NA |

**Attitude**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1) | Demonstrates interest and desire to learn by asking questions and through reading | 1 | 2 | (3) | 4 | 5 | NA |
| 2) | Cooperative/team attitude with faculty, colleagues and staff | 1 | 2 | (3) | 4 | 5 | NA |
| 3) | Self-directed, motivated and organized | 1 | 2 | (3) | 4 | 5 | NA |

**Core Competencies**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1) | Patient Care: provides compassionate care that is effective for the promotion of health, prevention, and treatment | 1 | 2 | 3 | (4) | 5 | NA |
| 2) | Medical Knowledge: demonstrates knowledge of biomedical, clinical and social sciences, and applies that knowledge effectively to patient care | 1 | 2 | (3) | 4 | 5 | NA |
| 3) | Practice-Based Learning and Improvement: uses evidence and methods to investigate, evaluate, and improve his/her patient care practices | 1 | 2 | (3) | 4 | 5 | NA |
| 4) | Communication and Interpersonal Skills: demonstrates these skills and maintains professional and therapeutic relationships with patients and the healthcare team | 1 | 2 | 3 | 4 | (5) | NA |
| 5) | Professionalism: demonstrates behaviors that reflect an ongoing commitment to continuous professional development, ethical practice, sensitivity, and responsible attitudes | 1 | 2 | 3 | 4 | (5) | NA |
| 6) | System-Based Practice: demonstrates both an understanding of the contexts and systems in which health care is provided and applies this knowledge to improve and optimize health care | 1 | 2 | 3 | (4) | 5 | NA |

**Overall Evaluation**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1) | Overall evaluation as a physician | 1 | 2 | (3) | 4 | 5 | NA |
| 2) | Comments _____ | | | | | | |

_____

_____

HMC-03365

CONFIDENTIAL

 

**Hamot Medical Center**
201 State Street
Erie, PA 16550
(814) 877-6000
www.hamot.org

June 5, 2002

Lisa A. Brown
3104 Evanston
Erie, PA  16506

Dear Lisa:

I am pleased to let you know that you have been nominated for the Hamot Ambassador of the Month award and that your nomination is currently being considered by the Selection Committee.  This is a significant recognition of the dedication you bring to your work.  I would like to take this opportunity to personally thank you for that high level of commitment and support of Hamot.

A special nomination gift of a Hamot HOSPITAL-ity mug will be awarded to you.  Please see Audrey Dick, Support Services (basement floor of the Medical Center, next to Credit Union) to collect your mug.

You set an excellent example for other Hamot associates by demonstrating the high quality of service in your professional and personal actions that earned you this Ambassador nomination. Congratulations!

Sincerely,

John S. Malone
President and CEO

c:    Dr. Lubahn

 ***Hamot***                    **Inter-Office Correspondence**

**DATE:**        September 20, 2002

**TO:**          Lisa A. Brown, MD

**FROM:**        Donald K. Inderlied

**SUBJECT:**     Ambassador of the Month

Congratulations on being chosen one of Hamot's October Ambassadors! Through your exemplary energy, behavior and sense of commitment you have demonstrated what excellent customer relations should be.

In recognition of your efforts, Hamot would like to thank you by:

1. Recognizing your achievements by displaying your picture and name on a plaque in the Medical Center main lobby;
2. Sponsoring a recognition reception in your honor;
3. Inviting you to wear an Ambassador Program pin and ID card;
4. Providing you with one months's free parking in the Bayfront Parking Ramp;
5. Providing you with a $25.00 Gift Certificate to Hamot Health Connection to apply towards a class or massage;
6. Honoring you at the October 18, 2002 Leadership Meeting;
7. Asking you to select a gift from the gift menu to be awarded at the Leadership Meeting;
8. Considering you for the Ambassador of the Year award next May.

Please stop in Human Resources to receive your new Ambassador ID.

Again, on behalf of Hamot, thank you for showing you really care.

c: John D. Lubahn, MD



# LISA BROWN, M.D., v. HAMOT MEDICAL CENTER
## Civil Action No. 05-32E

Plaintiff's Exhibits in Opposition to
Defendant's Motion for Summary Judgment

## EXHIBIT O

 

**Hamot Medical Center**
201 State Street
Erie, PA 16550
(814) 877-6000
www.hamot.org

March 1, 2004

Lisa Brown, MD
5459 CiderMill Road
Erie, PA   16509

Dear Dr. Brown:

Based on clinical performance and concerns regarding your current knowledge base in orthopaedics for the PGY-3 level, I have decided not to renew your contract at the end of this academic year, June 30, 2004.  The decision is a difficult one for me as for the entire faculty, but I believe it to be the best for all concerned.

During the remainder of this academic year, any failure on your part to provide competent care as outlined in your contract, such as not responding to patient consults or calls from the emergency room will result in immediate termination.

Sincerely,

John D. Lubahn, MD
Program Director

*Hand delivered by John D Lubahn*
*March 1, 200*

# LISA BROWN, M.D., v. HAMOT MEDICAL CENTER
## Civil Action No. 05-32E

Plaintiff's Exhibits in Opposition to
Defendant's Motion for Summary Judgment

# EXHIBIT P

Brown v. Hamot Medical Center

Mark Suprock, M.D.

1 (Pages 1 to 4)

---

**1**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LISA BROWN, M.D.,          :
        Plaintiff          :
                           :
        v.                 :   Civil Action No. 05-32B
                           :
HAMOT MEDICAL CENTER,      :
        Defendant          :

        Deposition of MARK SUPROCK, M.D., taken before
and by Carol A Holdnack, RPR, Notary Public in and
for the Commonwealth of Pennsylvania, on Friday
March 17, 2006, commencing at 2:09 p.m. at the
offices of Scarpitti & Mead, Renaissance Center,
1001 State Street, Suite 800, Erie, PA 16501.

For the Plaintiff:
    Patrick Sorek, Esq.
    Leech Tishman Fuscaldo & Lampl, LLC
    525 William Penn Place, 30th Floor
    Pittsburgh, PA 15219

For the Defendant:
    Kerry M. Richard, Esq
    Tobin O'Connor Ewing & Richard
    5335 Wisconsin Avenue NW, Suite 700
    Washington, DC 20015

        Reported by Carol A. Holdnack, RPR
        Ferguson & Holdnack Reporting, Inc.

---

**2**

1       I N D E X
2
3   MARK SUPROCK, M.D.
4       Direct Examination by Mr. Sorek . . . . .   3
5       Cross-Examination by Ms. Richard . . . .
6       Redirect Examination by Mr. Sorek . . . .
7
8   EXHIBITS:
9       Lubahn Deposition Exhibit 1 . . . . . . .
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

---

**3**

1       M A R K   S U P R O C K, M.D., first having
2   been duly sworn, testified as follows:
3
4               DIRECT EXAMINATION
5   BY MR. SOREK:
6
7       Q.  Would you state your name.
8       A.  Mark Douglas Suprock.
9       Q.  Dr. Suprock, have you ever had your deposition
10  taken before?
11      A.  Yes.
12      Q.  About how many times?
13      A.  It's really hard to say, if you count Workers'
14  Compensation depositions.  20 or more, maybe.
15      Q.  20 or more?
16      A.  Yeah.
17      Q.  So you know the process about what this is all
18  about, taking your testimony down under oath.  You have
19  Counsel here.  I represent the Plaintiff in this case, Lisa
20  Brown.  Your testimony can be used in place of live
21  testimony in a courtroom.  And that all your answers have to
22  be out loud.  And that if you have any need to consult with
23  Counsel or take a break, you're free to do that.  Do you
24  understand all that?
25      A.  Yes, I do.

---

**4**

1       Q.  All right.  Could you tell us about your education
2   beginning with high school.
3       A.  High school, Greater Latrobe High School in
4   Latrobe, Pennsylvania.  Graduated in 1975.  And then
5   attended Gannon College at the time.
6       Q.  Do you know Mark Visnick (phonetic)?
7       A.  Name is familiar.  I was not in a frame of mind of
8   thinking about that.
9       Q.  I understand, no, I just threw that out.
10      A.  And then Gannon College at the time.  And at
11  Gannon/Hahnemann Program, which was a six-year undergraduate
12  and medical school combination.  And I graduated from both
13  those institutions, Hahnemann Medical College and Gannon
14  University then in 1981.
15          After 1981 I started at Hamot Medical Center
16  residency program in family practice.  Finished that three
17  years later in 1984, and went directly into an orthopaedic
18  residency program at Hamot Medical Center.  At the same time
19  I became board certified in family practice.  In 1988 I
20  finished the Hamot residency program in orthopaedics, and
21  became board certified two years later in orthopaedics.
22      Q.  Will you provide a CV for us if I asked you to do
23  that?
24      A.  I can.
25      Q.  All right.  How have you been employed since 1984?

---

29

1 already have in their heads. I think they're all pretty
2 smart people. And it's not so much how smart or how stupid
3 your physician is, but can they make good judgment calls and
4 do appropriate things to care for you.
5     Q.   Are you able to compare the performance of Dr.
6 Brown in your rotation to other residents?
7     A.   Yes, I can do that.
8     Q.   How would you compare?
9     A.   I think she was comparable with the other
10 physicians.
11    Q.   As you know, Dr. Brown was terminated from the
12 residency program. And we've gotten some information about
13 the reasons for that decision, that we spoke with Dr. Lubahn
14 yesterday here. I have some information about -- do you
15 know whether there were other performance problems with
16 other residents, in your experience?
17    A.   Could you expound about that a little bit more.
18    Q.   Yeah, I will. It seems that Dr. Brown, her
19 participation in the program was terminated because of some
20 concerns about her performance. And I'm trying to find a
21 way to find the right word or phrase. But from information
22 that I've looked at and obtained, there were other
23 performance problems that other residents had that did not
24 result in their termination from the program. And so what
25 I'm trying to find out, if you know of any issues, concerns,

30

1 problems, with other residents' performance.
2     A.   I know of one instance where a fellow by the name
3 of -- is it okay to mention people's names?
4     MS. RICHARD:  Actually, that's a good point. Let
5 me just state for you that we have agreed to a
6 confidentiality agreement in this case for the
7 benefit of exactly that type of situation. So
8 that people's names and so on can be discussed
9 here. They can't be used outside of this
10 litigation.
11         That includes you, by the way. If you learn
12 of anything in the course of this deposition that
13 you didn't know, you would be expected to keep it
14 confidential.
15    MR. SOREK:  And I want to pitch in some 2 cents,
16 which is there's no dispute that patients' names
17 are out. No one ever wants to hear a patient
18 name.
19         I will probably have to use physicians' names
20 at some point. But I don't get to tell you how to
21 answer the question. So my answer to your
22 question -- my answer doesn't matter.
23    MS. RICHARD:  Okay. Let's all take a deep breath
24 for a moment. Can you just read back the
25 question, because I think you probably

31

1 understand -- because of the confidentiality
2 agreement you can answer his question.
3     THE WITNESS:  I can.
4     MS. RICHARD:  Yes. You can answer his question.
5 It may be used in this case, but it won't be used
6 out of this case and won't be disclosed anyplace
7 else.
8     THE WITNESS:  Okay.
9     MS. RICHARD:  That's true.
10    A.   That works. I was involved with a research
11 project with a resident by the name of ████. And it
12 turned out he was falsifying the records. He was falsifying
13 the records in the research project because the other
14 attendings were demanding to do what they felt was the
15 legitimate arm of the double blinded study.
16         The specifications of the study were reamed versus
17 not reamed, which is a particular way to do an
18 intramedullary nailing of a femur for fractures in trauma
19 patients. And Dr. ████ was responding to the demands of
20 my colleagues to do a certain portion of that procedure
21 which invalidated the study. And he didn't disclose that to
22 me. So it basically messed up all the data we were
23 collecting, and made it an invalid study, which was gone
24 through the IRB Committee of the hospital.
25    Q.   Could you -- IRB, what is that?

32

1     A.   Institutional Review Board Committee of the
2 hospital, which is a federally-mandated committee you have
3 to have, oversight of clinical research at any institution.
4 So, low and behold, I didn't know this was happening, and I
5 get dragged before the committee for falsified data.
6 Because I had a resident who was falsifying the data at the
7 request of my colleagues.
8         So, yeah, there was a huge breach with that one
9 resident. And, you know, I know he had some counseling
10 about that, but I don't know whether anything else. And
11 that's really the only big issue that I know of with any of
12 the other residents.
13    Q.   I know that for one reason or another malpractice
14 suits are brought against physicians and residents. Is
15 there any set procedure for how the Orthopaedic Department
16 deals with those?
17    A.   I know you have to report them to Counsel of the
18 hospital. And you have to work with your Counsel and the
19 insurance company's Counsel. But aside from that, I don't
20 know of any set proceedings.
21    Q.   I know the hospital has a patient complaint
22 office, correct?
23    A.   Correct.
24    Q.   Is it so that the hospital does not -- doesn't
25 follow the same process with, say, a legal complaint? In

## MISSISSIPPI STATE BOARD OF MEDICAL LICENSURE
Cypress Ridge Building • 1867 Crane Ridge Drive, Suite 200-B • Jackson, MS 39216
Mailing Address: Post Office Box 926B • Jackson, MS 39286-926B
(601) 987-3079

### APPENDIX B

### VERIFICATION OF POSTGRADUATE MEDICAL EDUCATION

Physician Name: _Eric L. Thomas MD_

SSN: _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_

DOB: _____

Institution: _Hamot Medical Center_

Program Participation:

Department: _Orthopaedic Surgery_

☐ Internship    ☒ Residency    ☐ Fellowship    ☐ Research

From: _7, 1, 95_    To: _6, 30, 98_

Successfully Completed?:    ☒ Yes    ☐ No    ☐ In Progress-Anticipated Completion Date: _____

Accredited by: ☒ ACGME    ☐ AOA    ☐ Not Accredited    ☐ Other

| | Yes | No |
|---|---|---|
| Did this individual ever take a leave of absence or break from his/her training? | ☐ | ☒ |
| Was this individual ever placed on probation? | ☐ | ☒ |
| Was this individual ever disciplined or placed under investigation? | ☐ | ☒ |
| Were any negative reports ever filed by instructors? | ☐ | ☒ |
| Were any limitations or special requirements placed upon this individual because of questions of academic incompetence, disciplinary problems or any other reason? | ☐ | ☒ |

Please explain any "Yes" response from above: (use separate sheet if necessary)

_____

_____

Completion of the following is certification that the information above is an accurate account of this individual's records and is true and correct.  This section MUST be signed by the Program Director (M.D./D.O. only.)

Name: _John D. Lubahn MD_    Signature: _____

Title: _Program Director_    Date: _8/27/02_

INSTRUCTIONS TO INDIVIDUAL COMPLETING THIS FORM:

Please fill in all applicable spaces and return to the Mississippi State Board of Medical Licensure at the above address. Please do not send this application back to the applicant as the Board will not consider this certification unless it is received directly from the institution.  Board policy requires original documents, please do not fax.

G:\PERM\2003 training cert.wpd

HMC-04732

CONFIDENTIAL

# LISA BROWN, M.D., v. HAMOT MEDICAL CENTER
## Civil Action No. 05-32E

### Plaintiff's Exhibits in Opposition to
### Defendant's Motion for Summary Judgment

# EXHIBIT Q

THELMA NARDUCCI AND
NICKOLA NARDUCCI, her husband

:IN THE COURT OF COMMON PLEAS
:OF ERIE COUNTY, PENNSYLVANIA

PLAINTIFFS

VS.                                        :NO. 13672-01

HAMOT MEDICAL CENTER, HAMOT
HEALTH FOUNDATION trading and
doing business as HAMOT MEDICAL
CENTER, CRAIG LIPPE, M.D.,
JAMES SEEDS, M.D., AND
JOHN KASTRUP, M.D.

DEFENDANTS

## SECOND AMENDED COMPLAINT

NOW COME, THELMA NARDUCCI AND NICKOLA NARDUCCI, HER HUSBAND,

Plaintiffs above named by and through their attorney John W. McCandless, Esquire, make the

following Second Amended Complaint against HAMOT MEDICAL CENTER, HAMOT

HEALTH FOUNDATION, trading and doing business as HAMOT MEDICAL CENTER,

CRAIG LIPPE, M.D., JAMES SEEDS, M.D., AND JOHN KASTRUP, M.D., Defendants

above named

1. Thelma Narducci and Nickola Narducci are adult indiviudals and husband and wife,

and reside in Conneaut, Ohio.

2. Defendant Hamot Medical Center ("Hamot") is a corporation duly organized under the

laws of the Commonwealth of Pennsylvania and is engaged in the business of providing health

care services to the public, maintaining its place of business in Erie, Erie County, Pennsylvania.

3. Defendant Hamot Health Foundation ("Foundation") is a corporation duly organized

under the laws of the Commonwealth of Pennsylvania and is engaged in the business of providing

health care services to the public, maintaining its place of business in Erie, Erie County,
Pennsylvania.

4. Upon information and belief, Hamot is owned, operated by and is the agent, servant or
employee of the Foundation. In any event, the Foundation is vicariously liable for the conduct
and omissions of Hamot and the agents, servants and employees or practitioners using Hamot's
facilities.

5. Defendant Craig Lippe, M.D., ("Lippe") is an adult individual who holds himself out to
be a health care provider who possesses skill and knowledge as a surgeon with a principal place of
business in Erie, Erie County, Pennsylvania.

6. At all times relevant hereto the Defendant Lippe was acting within the scope of his
authority and was providing his medical care as an agent, servant or employee of Hamot and/or
the Foundation.

7. Defendant James Seeds, M.D. ("Seeds") is an adult individual who holds himself out to
be a health care provider who possesses skill and knowledge as a surgeon with a principal place of
business in Erie, Erie County, Pennsylvania.

8. At all times relevant hereto the Defendant Seeds was acting within the scope of his
authority and was providing his medical care as an agent, servant, or employee of Hamot and/or
the Foundation.

9. Defendant John Kastrup, M.D ("Kastrup") is an adult individual who holds himself out
to be a health care provider who possesses skill and knowledge as a surgeon with a principal place
of business in Erie, Erie County, Pennsylvania.

10. At all times relevant hereto the Defendant Kastrup was acting both in a dual capacity,
both as a practitioner utilizing the facilities of Hamot and/or the Foundation; Defendant Kastrup

was also acting as a member of the faculty of the Hamot Medical Center Orthopedic Residency Program, and acting as an agent, servant or employee of Hamot and/or the Foundation with responsibility for the supervision and direction of orthopedic residents who participated in wife Plaintiff Thelma Narducci's surgery as set forth hereinafter.

11. On or about September 19, 2000 Plaintiff Thelma Narducci was admitted to Hamot by Defendant Kastrup for right total hip replacement.

12. The operation was performed on September 19, 2000 at Hamot. The Defendants Lippe and Seeds assisted Defendant Kastrup in the surgery.

13. At said time Thelma Narducci was a patient of Hamot and the Foundation, as well as the Defendants Kastrup, Seeds and Lippe.

14. Hamot and the Foundation supplied its agents, servants and employees, the Defendants Lippe and Seeds, who were orthopedic residents, to assist the Defendant Kastrup in the surgery.

15. Upon information and belief, near the conclusion of the surgery and in the presence of the Defendants Seeds and Kastrup, the Defendant Lippe caused Thelma Narducci to suffer a gash in her right lower extremity between the knee and the ankle of approximately 5" in length.

16. Upon information and belief it is asserted that the Defendant Lippe caused this gash with blunt-nosed surgical scissors when he was removing a surgical stockinette and bandage from her leg.

17. As a direct and proximate result of the acts and omissions of the Defendants as set forth hereinafter, Thelma Narducci was caused to suffer the following injuries:

      a. A gash in her right lower extremity of approximately 5" in length;

      b. A tear of the skin of her right lower extremity of approximately

         3" in length;

      c. Serous drainage;

      d. Edema;

      e. Insertion of surgical staples and sutures;

      f. Permanent scarring and discoloration of the leg;

      g. Exacerbation or aggravation of pre-existing depression;

      h. Other injuries the exact nature of which are unknown to the

         Plaintiff at this time.

18. As a direct and proximate result of the aforesaid injuries, Plaintiff Thelma Narducci has suffered and will in the future suffer the following damages, some or all of which are permanent in nature:

      a. Substantial physical pain and suffering, discomfort;

      b. Substantial mental anguish and anxiety;

      c. Substantial embarrassment and humiliation;

      d. Serious and severe permanent cosmetic scarring and disfigurement;

      e. A substantial loss of a sense of health and well being;

      g. A substantial loss of the activities of daily living and enjoyment of

         the pleasures of life;

      h. Substantial medical treatment, hospitalizations, rehabilitations,

         consultations, the services of doctors, surgeons, nurses,

therapists, and psychologists,

i. Substantial expense for care and treatment of her injuries

19. As a result of the aforesaid injuries to his wife, the Plaintiff Thelma Narducci, husband Plaintiff Nickola Narducci has suffered and will in the future suffer the following damages, some or all of which are permanent in nature:

a. He has lost and will lose the society, comfort, consortium,

companionship and services of his wife;

b. He has incurred and will in the future continue to incur expense

for the care and treatment of his wife.

## COUNT I.

### THELMA NARDUCCI AND NICKOLA NARDUCCI VS. CRAIG LIPPE, M.D., HAMOT MEDICAL CENTER, HAMOT HEALTH FOUNDATION trading and doing business as HAMOT MEDICAL CENTER

20. Plaintiffs Thelma Narducci and Nickola Narducci incorporate herein by reference the averments of paragraphs 1-19 above inclusive as though fully set forth at length.

21. The aforesaid injuries and damages are the direct and proximate result of the negligence of the Defendant Lippe in the following particulars:

a. In causing her right leg to suffer a laceration;

b. In failing to be observant and note that his actions were causing

a laceration to her right leg;

c. In failing to stop his actions so as to prevent further laceration

of her leg;

d. In failing to use other methods of removing the stockinette and

ace bandage that would avoid lacerating her leg;

e. In failing to recognize and appreciate the friable condition of her
skin;

f. In failing to recognize the condition of her skin, and to remove the
stockinette in a manner that would not risk laceration.

22. All of the aforesaid acts and omissions of the Defendant Lippe were within the scope
of his employment of as an agent, servant, and/or employee of the Defendants Hamot and the
Foundation.

23. The Defendants Hamot and the Foundation are vicariously liable for the acts or
omissions of the Defendant Lippe as though those entities had performed the acts or omissions
themselves.

WHEREFORE, Plaintiffs Thelma Narducci and Nickola Narducci demand
damages of the Defendants Hamot Medical Center, Hamot Health Foundation trading and doing
business as Hamot Medical Center and Craig Lippe, M.D., in an amount in excess of $35,000.00
and the limits of arbitration, plus interests and costs of this suit.

## COUNT II

### THELMA NARDUCCI AND NICKOLA NARDUCCI
### VS.
### HAMOT MEDICAL CENTER, HAMOT HEALTH FOUNDATION
trading and doing business as HAMOT MEDICAL CENTER

### NEGLIGENCE AND CORPORATE LIABILITY

24. Plaintiffs incorporate herein by reference the averments of paragraphs 1-23 above as
though fully set forth at length.

25. The Defendants Hamot and the Foundation have a duty and a responsibility to the

patient and to the public to furnish appropriate and competent medical care.

26. As a part of their duties and responsibilities, the Defendants have an obligation to establish policies and procedures and have competent medical personnel to insure the appropriate quality of medical care is conducted within the institution.

27. The Defendants have an obligation to train and supervise their residents, including the Defendants Lippe and Seeds, in a manner that will insure that those residents deliver the appropriate quality of medical care within the institution.

28. As a part of their duties and responsibilities, the Defendants have the obligation to provide a standard for professional practice by the members of their staff, including the orthopedic residents.

29. The Defendants failed to exercise the judgment of a reasonable healthcare provider under the circumstances in:

> a. Failing to provide the appropriate supervision for the Defendants Lippe and Seeds;
>
> b. Failing to furnish the appropriate training of Dr. Lippe and Dr. Seeds;
>
> c. Furnishing to the Plaintiff Thelma Narducci individuals who lacked sufficient training and skill to deal with the conditions and circumstances set forth above and to act upon them in a manner calculated to preserve her health and safety;
>
> d. Failing to establish and/or enforce protocols regarding the practice within the hospital of Defendants Lippe and Seeds so as to prevent the laceration complained of.

30. As a direct and proximate result of the conduct as set forth above, the Plaintiffs

Thelma and Nickola Narducci have suffered the injuries and damages as set forth above.

WHEREFORE, Plaintiffs Thelma Narducci and Nickola Narducci demand

damages of the Defendants Hamot Medical Center, Hamot Health Foundation trading and doing

business as Hamot Medical Center in an amount in excess of $35,000.00 and the limits of

arbitration, plus interests and costs of this suit.

## COUNT III

### THELMA NARDUCCI AND NICKOLA NARDUCCI VS JAMES SEEDS, M.D., JOHN KASTRUP, M.D. AND HAMOT MEDICAL CENTER AND HAMOT HEALTH FOUNDATION trading and doing business as HAMOT MEDICAL CENTER

31. Plaintiffs incorporate herein by reference the averments of paragraphs of 1-30 above

incorporated as though fully set forth at length.

32. Plaintiffs believe and therefore aver that the Defendant Lippe is contending that he

had no knowledge at the time of the accident complained of that Thelma Narducci had easily

damageable ("friable") skin.

33. If the Defendant Lippe's contention, as set forth in the previous paragraph, is true,

then the aforesaid injuries and damages are the direct and proximate result of the negligence of the

Defendants Seeds and Kastrup in failing to record, report, inform and notify the Defendant Lippe

of Thelma Narducci's condition, when they knew or should have known that her skin was easily

damageable.

34. The aforesaid injuries and damages were also the direct and proximate result of the

negligence of the Defendants Seeds and Kastrup in the following particulars:

a. In failing to provide the appropriate supervision for the

Defendant Lippe;

b.  In permitting the Defendant Lippe to remove the surgical

stockinette and ace bandage in a manner that was improper

and risked serious injury and damage to the Plaintiff Thelma

Narducci due to the friable condition of her skin;

c.  In failing to train, instruct and oversee the manner in which

the Defendant Lippe was removing the stockinette and ace

bandage, to assure that it was done in a manner appropriate

for a patient, such as Thelma Narducci, who had easily

damageable skin;

d.  In permitting Defendant Lippe to remove the surgical

stockinette and ace bandage when he lacked

sufficient training and skill to deal with the conditions

and circumstances set forth above and to act upon

them in a manner calculated to preserve her health and safety;

e.  In failing to enforce protocols regarding the practice of Dr.

Lippe within the hospital so as to prevent him from causing

lacerations complained of.

35.  At all times relevant hereto, the Defendants Seeds and Kastrup were acting within the

scope of their authority as agents, servants and employees of the Defendant Hamot and the

Foundation

36.  The Defendants Hamot and the Foundation are vicariously liable for the acts or

omissions of the Defendants as though those entities had performed the acts or omissions

themselves.

WHEREFORE, Plaintiff Thelma Narducci demands damages of the Defendants James Seeds, M.D, John Kastrup, M.D., Hamot Medical Center, Hamot Health Foundation trading and doing business as Hamot Medical Center, in an amount in excess of $35,000.00 and the limits of arbitration, plus interests and costs of this suit.

## COUNT IV

### THELMA NARDUCCI VS. HAMOT MEDICAL CENTER, HAMOT HEALTH FOUNDATION trading and doing business as HAMOT MEDICAL CENTER AND CRAIG LIPPE, M.D.

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

37   Plaintiffs incorporate herein by reference the averments of paragraphs 1-36 above incorporated as though fully set forth at length.

38.  As a result of the acts and omissions of the Defendants as set forth above, the Plaintiff Thelma Narducci suffered and continues to suffer anxiety, depression and nervousness.

WHEREFORE, Plaintiff Thelma Narducci demands damages of the Defendants Hamot Medical Center, Hamot Health Foundation trading and doing business as Hamot Medical Center and Craig Lippe, M.D., in an amount in excess of $35,000.00 and the limits of arbitration, plus interests and costs of this suit.

Respectfully submitted,

BY: _____

JOHN W. MCCANDLESS, ESQUIRE
Attorney for Plaintiffs
2222 West Grandview Blvd.
Erie, PA 16506
(814)833-2222

# Hamot Medical Center

Erie, Pennsylvania

This is to certify that

## Craig N. Lippe, MD

has satisfactorily completed sixty months of

### Residency Training

from July 1, 2000 – June 30, 2005

in the

## Orthopaedic Surgery Residency Program

including twelve months as Chief Resident

_____
Chief Executive Officer

_____
Program Director

_____
Director, Medical Education

HMC-03682

CONFIDENTIAL

LISA BROWN, M.D., v. HAMOT MEDICAL CENTER
Civil Action No. 05-32E

Plaintiff's Exhibits in Opposition to
Defendant's Motion for Summary Judgment

# EXHIBIT R

01.13/2006   09:57    8148363063                                                    PAGE  86

IN THE COURT OF COMMON PLEAS OF ERIE COUNTY,
PENNSYLVANIA

| | | |
|---|---|---|
| HENRIETTA AUGUST | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Division |
| | ) | |
| | ) | No. |
| ORTHOPEDIC & SPORTS | ) | |
| MEDICINE  OF ERIE, P.C., a corporation, | ) | |
| HAMOT MEDICAL CENTER, a | ) | |
| corporation, D. BABINS, N. | ) | |
| STEFANOVSKI, M.D., J. NECHLEBA, | ) | |
| M.D., J. KEVERLINE, M.D., | ) | |
| | ) | |
| Defendants | ) | |

COMPLAINT IN CIVIL ACTION

**HENRIETTA AUGUST, Plaintiff v. ORTHOPEDIC & SPORTS MEDICINE OF
ERIE, P.C. , a corporation, HAMOT MEDICAL CENTER, a corporation, D.
BABINS, M.D., N. STEFANOVSKI, M.D., J. NECHLEBA, M.D., J. KEVERLINE,
M.D., Defendants**

1.   Henrietta August, Plaintiff herein, is a resident of Erie, Erie County,

Pennsylvania.

2.   Orthopedic and Sports Medicine of Erie, P.C., Defendant herein, hereinafter

referred to as "Defendant Sports Medicine" is a corporation existing under the laws of the

Commonwealth of Pennsylvania with a principal place of business in Erie, Erie County,

Pennsylvania.   At all times relevant to the matters set forth in this Complaint, this

corporation owned, operated, maintained and controlled a corporation that employed

orthopedic surgeons for the provision of orthopedic surgery to the general public, and

plaintiff, in particular, known as "Orthopedic & Sports Medicine of Erie, P.C."

1

01/13/2006  09:57    8148393063                                                    PAGE  07

3.  Hamot Medical Center, Defendant herein, hereinafter referred to as "Defendant Hospital," is a corporation, chartered and existing under the laws of the Commonwealth of Pennsylvania, with a principal place of business in Erie, Erie County, Pennsylvania.  At all times relevant to the matters set forth in this Complaint, this Defendant owned, operated, maintained and controlled a general hospital in Erie, Pennsylvania providing both surgical and postoperative services through its agents, servants and/or employees known as "Hamot Medical Center."

4.  D. Babins, Defendant herein, hereinafter referred to as "Defendant Babins," is a resident of Erie, Erie Country, Pennsylvania.  At all times relevant to the matters set forth in this Complaint, this Defendant was a licensed physician and surgeon in the Commonwealth of Pennsylvania, engaged in the practice of surgery and in the specialty of orthopedic surgery.

5.  N. Stefanovski, Defendant herein, hereinafter referred to as "Defendant Stefanovski," is a resident of Erie, Erie County Pennsylvania.  At all times relevant to the matters set forth in this Complaint, this Defendant was a licensed physician and surgeon in the Commonwealth of Pennsylvania, engaged in the practice of surgery and in the specialty of orthopedic surgery.

6.  J. Nechleba, Defendant herein, hereinafter referred to as "Defendant Nechleba," is a resident of Erie, Erie County, Pennsylvania.  At all times relevant to the matters set forth in this Complaint, this Defendant was a licensed physician and surgeon in the Commonwealth of Pennsylvania, engaged in the practice of surgery and in the specialty of orthopedic surgery.

01 13 2006   09:57    8148393063                                          PAGE  06

7.  J. Keverline, Defendant herein, hereinafter referred to as "Defendant Keverline," is a resident of Erie, Erie County Pennsylvania.  At all times relevant to the matters set forth in this Complaint, this Defendant was a licensed physician and surgeon in the Commonwealth of Pennsylvania, engaged in the practice of surgery and in the specialty of orthopedic surgery.

8.  Prior to her first evaluation at Defendant Associates' office Plaintiff had been diagnosed with a dysplastic hip which did not articulate normally.  This problem had been present and diagnosed when she was two (2) years old and had caused gradual leg shortening without pain until 1998 when she fell at work.

9.  On or about August 11, 1999, Plaintiff presented to Defendant Babins, to whom she was referred by Thomas Masters, M.D., her family physician, with increasing pain in her left hip.

10.  Thereafter, Defendant Babins obtained x-ray views of Plaintiff's left hip.  Said x-rays demonstrated osteoarthritis of the hip with "50% uncovering of the femoral head," rotating out of the acetabulum.

11.  At that visit, Defendant Babins' performed a clinical evaluation of Plaintiff.  Defendant Babins described Plaintiff as having a severely antalgic gait.  Defendant Babins suggested a total left hip arthroplasty.

12.  Plaintiff was scheduled for elective hip arthroplasty to be performed on October 11, 1999.

13.  Thereafter on October 11, 1999, Plaintiff was taken to an operating room at Defendant Hospital.  Under the supervision of Defendant Babins, Stefanovski, Nechleba, and Keverline, she underwent a total hip arthroplasty.

3

01/13/2006  09:57    8148383063                                          PAGE  09

14. At that time and place Defendants knew or should have known that Plaintiff's hip anatomy had been altered by the evolving dysplasia which had been diagnosed when she was two years old.  The risk of anatomical variation required careful and direct visualization of the hip and all its neurologic and vascular structures so as to protect them during the manipulation and incising that was part of the surgery.

15. At that time and place Defendants selected a lateral approach to Plaintiff's hip surgery.

16. During the course of the surgical procedure, despite Plaintiff's altered anatomy, neither Defendants Babins, Stefanovski, Nechleba, nor Keverline identified Plaintiff's sciatic nerve so as to protect it during the surgery.  Failing to identify the sciatic nerve prevented them from knowing whether the nerve was at risk for damage or whether they were placing excessive traction on the nerve once the new hip was articulated.

17. After the surgical procedure, Defendant's Hospital staff noted that Plaintiff experienced numbness and an inability to dorsiflex her left foot, both of these nerve impairments representing new problems which had developed since the surgery.

18. The day following Plaintiff's surgery, Defendants wrote in the medical chart that Plaintiff's sciatic nerve had been damaged.

19. Thereafter, Plaintiff was given an ankle-foot orthosis for her left foot to hold her foot in a dorsiflexed position so as to protect her foot from further damage.

20. Thereafter, on October 27, 1999, at the time of Plaintiff's first postoperative visit, Plaintiff was evaluated by Defendant Babins in his office.  He noted that Plaintiff

4

01:13/2006  29:57    8148383063

was suffering from a foot drop, which he concluded was the result of a contusion or other injury to her sciatic nerve.

21. This injury had occurred during the surgery of October 11, 1999.

22. At this time and place, Defendant Babins recommended performing an EMG to determine the type and extent of the injury that occurred to Plaintiff's sciatic nerve, and whether it was going to be permanent.

23. Prior to the EMG, on November 24, 1999, Defendant Babins told Plaintiff that her left foot drop was caused by a sciatic nerve stretch injury from traction during the surgical procedure.

24. Plaintiff was scheduled for an EMG to be performed in December, 1999.

25. Thereafter, on or about December 2, 1999, Plaintiff underwent an EMG. It was interpreted as indicating neurotmesis, or severance, of the left peroneal component of the sciatic nerve proximal to or before the bifurcation of the short biceps femoris branch of the sciatic nerve which is a location consistent with the operative site of the hip surgery.

26. Plaintiff's sciatic nerve injury is permanent.

27. As a result of the negligence and carelessness of Defendants as is stated above and more fully hereafter, Plaintiff was caused to suffer severe and permanent damage to her sciatic nerve.

28. At all times relevant to the matters set forth in this Complaint, Defendants Babins, Keverline, Stefanovski and Nechleba were the agents, servants and/or employees of Defendants Associates and Hospital and were at all times acting within the course and

scope of their employment by said Defendants and within the supervision and control of said Defendants.

29.  At all time relevant to the matters set forth in this Complaint, those individual physicians, nurses and other personnel who had contact with Plaintiff during the surgical procedure performed on October 11th at Defendant Hospital were the agents, servants and/or employees of Defendant Hospital and were acting within the course and scope of their employment by said Defendants and under the custody and control of said Defendant.

30.  Defendants Babins, Keverline, Stefanovski, Nechleba and Hospital and their agents, servants and/or employees were negligent and careless in some or all of the following particulars:

        (a)    In causing Plaintiff to suffer permanent neurologic injury;

        (b)    In causing Plaintiff to suffer damage to her sciatic nerve;

        (c)    In failing to have utilized a surgical approach that enabled Defendant to directly identify, visualize, and protect Plaintiff's sciatic nerve during the course of surgery performed on October 11, 1999;

        (d)    In selecting an approach to the surgical procedure performed on October 11, 1999 that prevented Defendants from visualizing Plaintiff's sciatic nerve when they knew or should have known that the nerve had been subject to scarring and displacement as a result of the prolonged dysplasia;

        (e)    In performing Plaintiff's hip surgery without knowing the position of Plaintiff's sciatic nerve at all times during the course of their tissue dissection and retraction;

        (f)    In excessively retracting Plaintiff's sciatic nerve during the course of surgery performed on October 11, 1999;

        (g)    In causing dissection and damage to Plaintiff's sciatic nerve during the course of surgery performed on October 11, 1999;

01/13/2026  09:57    8148383063

(h)    In exerting excessive stretch on Plaintiff's sciatic nerve during the course of and surgery on Plaintiff in October of 1999, thereby causing damage and tearing to her sciatic nerve;

(i)    In selecting a femoral neck component that excessively stretched Plaintiff's sciatic nerve after rearticulation of the joint;

(j)    In failing to be aware of the fact that the sciatic nerve was under tension and stress once the hip was rearticulated;

(k)    In failing to visualize and palpate the sciatic nerve after rearticulation so as to ascertain whether excessive stretch and tearing was placed on Plaintiff's sciatic nerve;

(l)    In failing to free Plaintiff's sciatic nerve from scarring which resulted from dysplasia thereby permitting Plaintiff's nerve to be tethered and excessive stretch to be exerted on Plaintiff's nerve following the rearticulation of her hip at the conclusion of surgery on October 11, 1999;

(m)    In permitting portions of the surgical procedure to be performed by individuals who, by virtue of their lack of training, knowledge and experience were not capable of protecting Plaintiff's sciatic nerve under the circumstances then and there existing;  and

(n)    In failing to adequately supervise the circumstances and actions performed on Plaintiff during the course of her surgery at Defendant Hospital on October 11, 1999.

31.  As a result of the negligence of Defendants and their agents, servants and/or employees, Plaintiff suffered the destruction of her sciatic nerve.  She suffered severe and continuous stretching and other insults to her sciatic nerve.  She suffered continuous evidence of sciatic nerve damage and pain.  She suffered the permanent inability to dorsiflex her left foot.  She suffered atrophy of her muscles.  She suffered the loss of her ability to ambulate freely and has become dependent on a cane and/or walker.  She suffered the loss of opportunity to have preserved her neurologic function in conjunction

7

01/13/2005  09:57    8148383063                                              PAGE  13

with reconstruction of her hip. She continues to suffer chronic pain in her sciatic nerve distribution. She cannot run or participate in activities with her young children. Some or all of these injuries are permanent in nature.

32. As further result of the conduct of Defendants and their agents, servants and/or employees, Plaintiff was caused to endure great pain, suffering and inconvenience and will suffer the same in the future. She was forced to submit to medical, surgical, radiologic and anesthetic care and pain management and will be forced to submit to same in the future. She has suffered the embarrassment and humiliation of impairment and her inability to ambulate freely and will suffer same in the future. Her health, in general, has been seriously and permanently impaired.

33. As further result of the conduct of Defendants and their agents, servants and/or employees, Plaintiff was forced to expend large sums of money for doctors, hospitals and other items necessary for proper care and treatment and she will be forced to expend additional sums for like items in the future. She suffers from the requirement of revision of her home and an inability to drive a car and she will continue to expend additional sums of money for these problems in the future.

34. As further result of the conduct of the Defendants and their agents, servants and/or employees, Plaintiff, who was gainfully employed in the area of managing a food and drug store, has been absent from her work and unable to continue work. She has become completely work disabled and the satisfaction and remuneration she derived from these activities has been lost to her. Her earning capacity has been impaired and will continue to be impaired in the future.

8

01/13/2005  09:57    8148383063

PAGE 14

WHEREFORE, Plaintiff claims damages in excess of $25,000 and demands a

trial by jury.

RAIZMAN & FRISCHMAN, P.C.

Dorothy L. Raizman, Esquire
Craig E. Frischman, Esquire

Suite 3400, The Grant Building
Pittsburgh, Pennsylvania 15219
(412) 281-3633

Attorneys for Plaintiff

**JURY TRIAL DEMANDED**

9

LISA BROWN, M.D., v. HAMOT MEDICAL CENTER
Civil Action No. 05-32E

Plaintiff's Exhibits in Opposition to
Defendant's Motion for Summary Judgment

EXHIBIT S

## DECLARATION OF LISA A. BROWN, M.D.
## IN SUPPORT OF OPPOSITION TO MOTION TO QUASH SUBPOENA

I, Lisa A. Brown, M.D., hereby declare as follows:

1.      I was a resident in Hamot Medical Center's Orthopaedic Surgery Residency Program from July 2001 to June 2004.  Through that experience, I became familiar with the backgrounds and job performance of faculty of the program, residents in the program, and other attending physicians at Hamot.

2.      While I was an orthopaedic resident at Hamot Medical Center, the majority of orthopaedic attendings I worked with were graduates from the orthopaedic residency at Hamot.  Those attendings included Vince Rogers MD, Mark Suprock MD, David Babins MD, Nick Stefanovski MD, Gary Cortina MD, John Hood MD, John Kastrup MD, and Stephanie Galey MD.

3.      Two residents in the program during my time at Hamot, Jeff Nechleba MD, and Jamie Delullo MD, are now attendings in the orthopaedic residency program at Hamot.

4.      Through my experience in the program, I am aware of incidents in which residents or other physicians placed patient health or safety at risk.

a       For example, one resident treated a patient's hip dislocation and discharged the patient to home with no restrictions, despite the presence of bone fragments in the hip.  The resident missed finding the bone fragments.  This is potentially harmful because such fragments can lead to immediate and future disease or injury.  This problem required prompt surgical intervention.

b.    On another occasion, a resident improperly sent a pediatric patient with a femur fracture to another facility without first arranging a transfer to that facility, without arranging transport in a controlled environment such as an ambulance, and without first stabilizing the child. Medically unsupervised transport of an unstabilized fracture could have led to harm to the patient.

c.    On another occasion, a resident seriously lacerated the leg of a surgical patient while cutting the surgical dressings from that leg post operatively. The resident failed to be sufficiently cautious in removing the dressings.

d.    On another occasion, a resident, using a power drill, improperly drove a screw into the pelvis of an elderly patient while repairing that patient's femoral fracture. Done properly, the screw should not have entered the pelvis.

5.    Each of the residents involved in these incidents graduated from the program. I am aware of no discipline imposed on them based on their performance during these incidents.


I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and understanding.


\_\_4/14/06\_\_\_                           \_\_/s/ Lisa A. Brown, MD_____
Date                                  Lisa A. Brown, MD

# LISA BROWN, M.D., v. HAMOT MEDICAL CENTER
## Civil Action No. 05-32E

Plaintiff's Exhibits in Opposition to
Defendant's Motion for Summary Judgment

# EXHIBIT T

HAMOT MEDICAL CENTER

---

Incident Number: 0-3593                    File Number: O4-210                    Security Level: Unclassified

Incident Details

| | | | |
|---|---|---|---|
| Category: | Suspicious Person | | |
| Security Level: | Unclassified | Status: | Under Review |
| Occurred From Date: | 5/15/2004 | Occurred From Time: | 3:50:00PM |
| Occurred To Date: | 5/15/2004 | Occurred To Time: | 4:30:00PM |
| Reported Date: | 5/15/2004 | Reported Time: | 3:50:00PM |
| Reporting Person: | Kinter, Matthew L | Supervisor: | Watts, Mark C |
| Building Name: | South complex | | |
| Street Address: | 201 State St | | |
| City: | Erie | State/Province: | Pennsylvania |
| Location: | Emergency Department | | |

Incident Persons (For more Person Details please see the Person Profile Report)

| | | | |
|---|---|---|---|
| Person Name: | Bambrick, William | | |
| Incident Person Type: | Actor | Company Employee: No | Barring Notice: No |

Incident Person Details

| | | | |
|---|---|---|---|
| Sex/Gender: | M | | |
| Home Address: | IRIMS 5.1 address | | |
| City: | Erie | State/Province: | PA |
| Injured: | No | Hospitalized: | No |

HMC-06131

CONFIDENTIAL

Narrative

Suspicious person in Emergency Department presenting himself as a doctor.

Nancy Prichard, ER Charge RN, called this investigator to the ED at about 1550hrs on 5/15/04 about an individual by the name of William Bambrick who was presenting himself as a Hamot Orthopedic Physician. Prichard said that a patient, Craig Williams, was playing in a rugby game and dislocated his shoulder. According to Prichard, the patient said that Bambrick was at the game and presented himself as a Hamot Orthopedic Doctor and then brought the patient to Hamot for treatment. Prichard said that during the course of the patient's treatment in the ED, Bambrick was trying to dictate the patient's care to the patient's nurse, Michelle Burrs. Prichard also said that Bambrick was walking around the ED as if he were a staff member. Prichard first approached Bambrick when he had gone into the ED west nurse's station, physician's area. Prichard did not recognize Bambrick so she asked him what he was doing. Bambrick told her that he was and orthopedic doctor and that he was going to show a patient his x-rays. Prichard then asked Bambrick if he had admitting rights at Hamot and he said that he was part of the residency program. Bambrick then told Prichard that she needed to call the on-duty orthopedic resident. Prichard explained to Bambrick that ED protocol was that the ED physician examined the patient first and then the ED physician would call whoever they felt was necessary. Bambrick then told Prichard that he was aware of Hamot's policies and walked out. Prichard then went to tell Dr. Davison, who was the patient's physician, about Bambrick. After talking to Dr. Davison, Prichard went to tell Bambrick that Dr. Davison would be in to see the patient. At that time Bambrick told Prichard that he had already called the on-duty orthopedic resident. Prichard also

---

Incident Report                    Printed: 08/30/2005 3:36 pm                    Page 1 of 2