### Section 1. Terms of Agreement

The named Resident is appointed as 3rd year Resident 3rd year Graduate in the Orthopaedic Surgery Residency Program.

### Section 2. Agreement of the Parties

During the term of this agreement, both parties agree as follows:

*A. HMC agrees to:*

1. Provide the Resident with a program of graduate medical education that meets the Institutional and Program Requirements of the Essentials of Accredited Residencies as approved by the Accreditation Council for Graduate Medical Education (ACGME).

2. Provide compensation for the Resident subject to his/her assigned graduate year of training as determined by the Program Director, in consultation with the VP for Quality & Medical Education or designate. Accordingly, Dr. Brown will receive $44,118 as compensation from July 1, 2003 to June 30, 2004.

   An additional compensation at the rate of XXX will be paid to the resident for such period as the Resident performs those duties and responsibilities required of a Chief Resident at Hamot Medical Center. The foregoing compensation will be paid in equal bi-weekly installments, less authorized and legally required deductions.

3. Grant the Resident twenty days of vacation with pay. Such vacation may be affected by unsatisfactory performance, illnesses, or noncompliance with the rules and regulations and policies approved by the Medical Staff Executive Committee and/or Board of Trustees. The allowable vacation time shall not be cumulative from year to year and must be taken during the appointed Graduate Year, subject to satisfactory scheduling by the applicable Program Director and the VP for Quality & Medical Education (or designate). Consistent with the requirements for Board Certification by respective specialty boards and with written Medical Education policy, non-educational time off (vacation, illness, interviews, etc.) that exceed program requirements during the academic year will result in extension of the total residency period equivalent to the excess time.

4. Grant a compensatory day off when the Resident works on Christmas Day, Thanksgiving Day or New Years Day.

5. Grant leave of absence with pay to the Resident, solely for the purpose of attending educational meeting/s that directly relate to his/her specialty training. Attendance at such meeting/s shall be determined by the Program Director. For each first year Resident, HMC will grant $500 solely for the above stipulated educational materials, publications and dues.

6. Grant compensatory time off to the Resident for his/her attendance at the United States Medical Licensing Examination (USMLE) III; presentation of research paper; and interviews necessary to his/her continuing graduate training outside of Erie, as approved by the VP for Quality & Medical Education (or designate) and the applicable Program Director.

7. Provide reimbursement in the amount of $210.00 to the Resident toward the Drug Enforcement Agency (DEA) fee renewable every three years.

8. Provide lounge, sleeping quarters and meals ($130/month) while the Resident is on-duty or on-call at HMC. These benefits shall not apply when the Resident is away from HMC unless otherwise approved by the VP for Quality & Medical Education (or designate).

9. Furnish the Resident with uniforms and laundry for his/her duty and on-call requirements at HMC.

10. Provide professional liability insurance of the claims made type covering the Resident for his/her official activities at HMC or HMC affiliates as approved by the VP for Quality & Medical Education. The amount of such coverage shall be determined by HMC, but will be consistent with amounts provided by Hamot for other medical/professional practitioners and consistent with that required by Pennsylvania law.

11. Provide life insurance to the Resident equal to one (1) year of his/her annualized compensation.

12. Provide disability insurance to the Resident with amounts and coverage determined by HMC policy and provide access to insurance, where available, for disabilities resulting from activities that are part of the educational program.

13. Provide hospitalization, medical, dental and additional health services to the Resident, his/her spouse and eligible children, in amounts and coverage consistent with that of all HMC employees.

14. Assign the Resident to institutional committees and councils whose actions affect the resident's educational programs or that conduct patient care review and/or performance improvement activities.

15. Allow accrual of one (1) day sick leave per month for the Resident, with an accrual rate of twelve (12) days per annual appointment, cumulative for the continuous period of graduate medical education at HMC, less the number of days lost due to excused illness. No payment for sick leave(s) in excess of accrued hours will be permitted, except when it is deducted from accrued vacation benefits and authorized by the VP for Quality & Medical Education (or designate) in consultation with the Program Director. An institutional leave policy will be provided to the resident in the resident handbook.

16. Provide security and safety measures, appropriate to the risks associated with the training environment, in all areas and locations associated with training, including parking areas, on-call quarters, inpatient and outpatient facilities, hospital, and institutional grounds.

17. Provide a resident policy that describes how physician impairment, including substance abuse, will be managed. An educational program regarding physician impairment and substance abuse also will be provided.

18. Provide access to appropriate, confidential counseling and medical and psychological support services through the Employee Assistance Program and through the resident's primary care physician, in accordance with the current health benefits plan.

19. Provide confidential evaluations of the resident's performance on a regular basis, consistent with applicable Residency Review Committee requirements.

B. *The Resident Agrees to:*

1. Fulfill the educational requirements of the resident training program and accept the obligation to use his/her best efforts to provide safe, effective and compassionate care to patients (while under supervision) that is commensurate with his/her level of advancement and responsibility, as assigned by the Program Director and required by the <u>Essentials of Accredited Residencies</u> of the Accreditation Council for Graduate Medical Education (ACGME).

2. Obtain a full and unrestricted license to practice medicine in the State of Pennsylvania, either by passing the USMLE or COMLEX Examination. Such license should be obtained as soon as possible. (After successfully completing two years of approved graduated medical training for graduates of an accredited medical college, or after successfully completing three years of approved graduate medical training for graduates of an unaccredited medical school as required by Section 29 of the Pennsylvania Medical Practice Act of 1985, and rules and regulations issued thereunder. The above exams must be completed before the resident can begin his/her third graduate year of training. If eligible, the Resident must obtain a DEA license.

3. Abstain from any outside work, whether or not for remuneration, except as specially approved by the applicable Program Director and the VP for Quality & Medical Education (or designate). Approved work must be consistent with the Medical Education policy regarding work outside of the residency program.

4. Abide by and adhere to all HMC policies, procedures, rules and regulations, where applicable, and as may be promulgated from time to time to govern the Resident's participation in the medical educational and clinical affairs of HMC, including HMC and residency policies and procedures regarding gender or other forms of harassment and exploitation and policies regarding physician impairment and substance abuse.

5. Authorize HMC to divulge such information deemed pertinent to a requesting institution and hold HMC harmless from any liability that may be associated with release of such information should another medical or health care institution request references and other information on the Resident from HMC and HMC believes that such a request is honorable and proper.

6. Become certified in ACLS and ATLS before completion of the PGY 1 year of training or to provide current certification documentation of the same, and to maintain such certification through appropriate recertification procedures; to receive training and education in Occupational Safety and Health Administration (OSHA) regulations and Centers for Disease Control (CDC) recommendations regarding protection from blood-borne diseases and other occupational hazards encountered by the health care professional; training in quality assurance/performance improvement processes; and education in physician impairment and substance abuse.

4

HMC-03377
CONFIDENTIAL

7. Provide representation on institutional committees and councils whose actions affect the resident's education and participate in other institutional programs and activities involving the medical staff.

8. Participate fully in the educational and scholarly activities of the training program and, as required, assume responsibility for teaching and supervising other residents and/or students.

9. Develop a personal program of independent study and professional growth under the supervision and guidance of the program teaching staff.

10. Develop an understanding of ethical, socioeconomic and medical/legal issues that affect graduate medical education and cost containment measures as they apply to the provision of patient care as appropriate.

11. Submit confidential written evaluations of the faculty and of the educational experiences to the program director. Participate in evaluation of security and safety issues related to the training environment.

12. Accept the obligation to function as an integral member of the health care team, treating other health care professionals and support staff with respect, courtesy and professionalism.

HMC-03378
CONFIDENTIAL

13. DUTIES

    Orthopaedic Third Year Resident

a.  During the third year, the Orthopaedic resident is responsible for satisfactorily completing the following duties:

    While assigned to the Floors: The resident is responsible for all admitting histories and physical examinations and for organizing all pertinent laboratory and x-ray studies for his/her patients. He/she will also be required to present patients to the attending surgeon or senior resident.

    The resident will have increased direct patient-care responsibility under the direction of a senior resident, for all orders, progress notes, dressing changes, adjustment of traction, etc. The resident should not be responsible for direct patient care for more than 80 hours a week.

    The resident will directly supervise all medical students and first and second year residents rotating on Orthopaedics who are assigned to assist the resident in patient care. These duties include teaching responsibilities and discussing with and explaining to students and first and second year residents why particular procedures are being done, as well as the diagnosis and projected patient management.

    While assigned to the Clinic: The resident is responsible for new patient workups and the application of casts on clinic patients who are waiting in the Cast Room. He/she will be supervised by either the senior resident or the attending staff.

    While assigned to the Emergency Room: The resident must respond within ten (10) minutes following a call from the Emergency Room. He/she will act as the primary Orthopaedic evaluator and provide consultation and treatment. The resident will be under the direct supervision of the senior orthopaedic resident.

    While assigned to the Operating Room: The resident is responsible for the surgical preparation of all cases and will assist in surgery when requested.

b.  After each rotation, the resident will return a completed evaluation form to the Director, and the attending physician will return an evaluation of the resident. The Director will regularly review these evaluations with the resident.

c.  The resident will be on call in the hospital approximately every fourth night.

d.  The resident will be responsible for all assigned conferences throughout the year.

e.  During the year, the resident is responsible for one clinical research projects suitable for presentation and/or publication. It should be submitted to a refereed journal, e.g., JBJS, CORR, JHS, AJSM, etc. or to a national meeting. Acceptable meetings for which the resident will be reimbursed to attend include AAOS, AOA Residents Conference, POS and EOA (when held in the continental US). Subspecialty meetings are acceptable academic travel, however, the senior author, e.g., hand surgeon, sports medicine attending, etc., will be responsible for travel expenses. The resident will attend monthly research meetings.

f.  During the third year, the resident will spend a six-month rotation in the Hamot Research Center under the direction of the Director of Research. The resident will adhere to all policies and procedures of the Department. The resident will complete a minimum of one case report and one clinical research project, inclusive of write-up. The resident will be involved in at least one basic science project. The requirements may be modified by mutual agreement. Attendance is required Monday-Friday, 8:00am to 4:30 pm. Studying for examinations and preparing for lectures will be done during evenings and on weekends. On occasion, these may be done on rotation, but only approved by the Director.

If the Director documents that the resident is not progressing per expectations, the resident will be placed on academic probation. His/her progress will be subject to ongoing review. Failure to comply may results in suspension from the program.

g.  The resident is responsible for pre- and post-operative follow-ups in one of his/her attending's office one half day per week. Physical examination, radiologic findings and surgical indications will be discussed with the attending.

h.  During the third year, the resident is required to attend a pathology conference.

Section 3. Termination and Suspension

1. Either party may terminate this Agreement at any time upon notice thereof for proper cause.

2. The Chairman of the Medical Staff Executive Committee, the Vice-President for Quality & Medical Education, the chairman of a clinical department, the Program Director, the President of HMC or HHF (or a designate), the Executive Committee of either the Medical Staff or the Board of Trustees shall each have the right to summarily suspend all or any portion of the activities of the Resident whenever such action must be taken immediately in the best interest of patient care. Such summary suspension shall become effective immediately. Upon imposition of a summary suspension, the Program Director shall provide written notice of the matter to the Vice President for Quality & Medical Education (or designate) and the matter shall be processed in accordance with the procedures as outlined in the "Grievance Resolution and Due Process for Resident Physicians" policy.

Section 4. Due Process

Any problem, grievance, misunderstanding, or alleged violation(s) arising under this Agreement and any pertinent matters relating thereto and to the resident's status in his/her residency, shall be resolved in accordance with the policy for "Grievance Resolution and Due Process for Resident Physicians" contained within the resident handbook.

Section 5. Continuation of Training

Upon satisfactory completion of the resident training year as determined by the program director and faculty, the Resident shall be promoted to the next level of resident training required and approved for his/her specialty, unless either HMC or the Resident shall give written notice to the other of termination upon completion of the current contract year. Such notice must be provided at least one hundred twenty (120) days before completion of the contract year.

*[handwritten annotations: "MEC Policy", "says 90 days", "on Eval + advancement", "ACGME Instit Require = 120 day", "ACGME Instit"]*

HMC-03381
CONFIDENTIAL

Section 6. Entire Agreement

This Agreement shall supersede all prior understandings and agreements between HMC and the Resident, and no changes shall be made in this Agreement without execution by the parties hereto in the same manner as the original agreement.

IN WITNESS WHEREOF, the parties have, in good faith, executed this Agreement on the day of _____, 2003.

_____
Signature of Resident

_____
John D. Lubahn, MD
Program Director
Hamot Medical Center

_____
Hershey S. Bell, MD
Vice President for Quality & Medical Education
Hamot Medical Center

_____
John T. Malone
Chief Executive Officer
Hamot Health Foundation

_____
(Witnessed By)

Date 4/8/03

HMC-03382
CONFIDENTIAL

# LISA BROWN, M.D., v. HAMOT MEDICAL CENTER
## Civil Action No. 05-32E

Plaintiff's Exhibits in Opposition to
Defendant's Motion for Summary Judgment

# EXHIBIT DD

| | |
|---|---|
| HAMOT MEDICAL CENTER | APPROVED BY MEC: 6/4/99 |
| ORTHOPAEDIC RESIDENCY PROGRAM | REVISED BY MEC: 5/4/01 |

ISSUED BY: John D. Lubahn, MD
Program Director, Orthopaedic Residency Program

| | |
|---|---|
| SUBJECT: Advancement and Dismissal Policy | Page 1 of 3 |

## PURPOSE

To define the advancement from year to year of all residents.

## POLICY

*Advancement of Residents:*

It is expected that upon entry to the residency all residents will complete the program. This residency does not accept applicants for one year positions. However, should a resident not meet the advancement criteria as noted below, this residency will not advance that resident until such time as all requirements are met. The procedures outlined below are for the purposes of identifying the steps necessary for a resident to advance as well as those that will come into play should advancement not be deemed appropriate.

*General Process:*

In order to advance to the subsequent year of training, all residents must meet the following requirements each academic year:

1. Must receive an overall rating of "average or above" on all rotations.
2. Must have no more than one "poor" in the key subcategories of a rotation.
3. Must participate in the Orthopaedic In-Training Examination given each academic year.
4. Must be present for greater than 80% of all residency conferences in any given academic year.
5. Must maintain certification in ATLS through the residency.
6. Must have less than three confirmed, significant patient complaints directed specifically at the individual resident per academic year.
7. Must successfully complete all requirements for the given academic year as identified in the Orthopaedic Residency Program Goals and Objectives.
8. Must meet all the requirements to renew the PA training license. To advance to the 3rd level, the resident must have taken and passed USMLE I, II and III. USMLE III should be taken in the first year of training.

HMC-03256
CONFIDENTIAL

Advancement and Dismissal Policy
Page 2 of 3

8. Must complete all assigned work including scheduled conferences, journal clubs, morning rounds in a matter deemed as "meeting expectations" by colleagues and supervisors.
9. Must complete two clinical research projects suitable for slide presentation and/or publication
10. Must be present at their respective teaching faculty's office at least ½ day per week for pre and post-op care.
11. Must attend orthopaedic clinic two afternoons a week.
12. Must be on-call as scheduled.
13. Must be on emergency room call during daytime hours as assigned.

*Requirements for Advancement to Graduation:*

All requirements including meeting all goals and objectives, must be met prior to being considered for graduation. All residents, by the time of graduation, must have completed an effective teaching workshop.

The Program Director will review all scheduled activity of residents to insure that he/she will have met all requirements to sit for the Orthopaedic Board examination. All chief residents will participate in an exit interview to insure that appropriate feedback is given.

*Process In Case Advancement Criteria Are Not Met:*

All residents will be continuously evaluated by their teaching faculty. Should a resident, at any point during the year, be identified as not meeting expectations, that resident will be counseled expeditiously by the Program Director. At this point the resident will receive only a verbal warning unless the situation should be deemed more serious. Should the resident, who has received a verbal warning fail to meet expectations on subsequent activities, that resident will meet with the Program Director and be placed on an academic probation status. A letter outlining the reasons for an academic probation and the expectations will be given to the resident at that time. Academic probation will generally last 3-6 months but will be individualized to the resident's situation. During that time the resident is expected to demonstrate improvement and will receive, at minimum, monthly re-evaluations. Should the resident demonstrate appropriate advancement of skills, knowledge, and attitude during that time, he/she may be deemed ready for advancement at the appropriate time. Should it be determined that the resident requires additional remediation, he/she will likely need to repeat those activities in which he/she did not meet expectations at the current level of training. Only when these requirements are met will the resident be considered for advancement. At such time academic probation will be lifted and the resident will continue his/her training at the next level.

HMC-03257
CONFIDENTIAL

Advancement and Dismissal Policy
Page 3 of 3

Should the resident fail to improve or to meet the expectations as identified in the academic probation letter, the faculty will determine at that time if remediation will be deemed to be helpful. If so, that resident will continue at the same level for a period of time during which continuous evaluation will occur. At the end of such time the resident will receive feedback as to his/her performance and a determination will be made as to whether or not the resident could advance at that time.

If the initial faculty review reveals that the resident is unlikely to improve with remediation, the resident will be terminated from the program pending the due process procedure.

If the above requirement (#8) regarding taking and passing USMLE III is not met, the resident will not advance to the next level of training. In this case, he/she may have to extend their residency by the number of days equal to the delay in beginning the PGY 3 year. If a resident must extend their residency training beyond the three years, they may not receive pay or benefits at that time, depending on the total number of current residents at Hamot. We will continue to cover the residents on malpractice insurance however.

HMC-03258
CONFIDENTIAL

# LISA BROWN, M.D., v. HAMOT MEDICAL CENTER
## Civil Action No. 05-32E

Plaintiff's Exhibits in Opposition to
Defendant's Motion for Summary Judgment

# EXHIBIT EE

| HAMOT MEDICAL CENTER | MEDICAL EDUCATION POLICY |
|---|---|

EFFECTIVE DATE: August 6, 1999
REVISED BY MED: September 6, 2002

SUBJECT: Grievance Resolution and Due Process Page No. 1 of 2 Pages
For Residency Physicians/Interns

## PURPOSE

This policy outlines the due process procedure by which residents/interns are expected to deal with a grievance. It applies to complaints or grievances arising from alleged unfair or discriminatory treatment by the faculty, Program Director, VP for Medical Education, Osteopathic DME or by other employees of Hamot Medical Center (HMC). This policy also must be utilized for adjudication of resident/intern complaints and grievances related to dismissal, non-renewal of the Agreement of Appointment or any other action that could threaten a resident's/intern's intended career. All residents'/interns' grievances should be appropriately resolved in a timely manner. It is the role of the institution to support an approach to resolving such grievances and it is expected that the resident/intern him/herself will be an active participant in that process.

## PROCEDURE

Any grievance related to an individual resident's/intern's competence or professional behavior should be brought directly to the appropriate Program Director. Other non-resident/intern professional competency related issues must also be brought directly to the respective residency director. For issues concerning suspected professional impairment, the resident is referred to the appropriate institutional processes outlined in the impairment policy.

Issues arising out of interactions with a peer are expected to be resolved directly with the individual in question. If the issue continues to be unresolved, the administrative/supervisory hierarchy should be appropriately utilized which may include the VP for Medical Education.

Any resident/intern who believes that an issue concerning him/her, including any adverse recommendation affecting the resident's/intern's training (e.g. probationary status for the resident/intern), that has not been adequately addressed after the above steps may invoke the Due Process Procedure as outlined below. Any resident/intern who has a concern about an issue involving compliance with corporate policy is requested to follow the process outlined in the corporate compliance policy.

Grievance issues involving other individuals not associated with the residency/internship programs should be brought to the attention of the appropriate supervisor (nursing, medical staff, other administrative staff). The appropriate attending physician should be informed and involved if the issue relates directly to clinical care.

HMC-03260

CONFIDENTIAL

Grievance Policy
Page Two

Hamot Medical Center Resident/Intern Due Process Procedure

Any problem, grievance, misunderstanding, or alleged violation(s) of policies or Agreement of Appointment breeches will be resolved as follows:

Step #1. The resident/intern must attempt to resolve the grievance or complaint via the usual chain of command beginning with the individual, then that persons' advisor or supervisor and then the program director.

Step #2. Should the resident/intern feel that the issue has not been adequately resolved or is not satisfied with the program directors' decision, he/she may file a written complaint within fourteen (14) days with the Sr. VP of Medical Education.

Step #3. If Step #2 resolution is still unsatisfactory to the resident/intern or the VP for Medical Education, the resident/intern and/or the VP for Medical Education may direct the matter immediately, in writing, within seven days, to the Medical Education Committee. A committee appointed by the Chair of the MEC, comprising of the VP for Medical Education or designate, the osteopathic DME, a representative of the residency program, a member of the Medical Education Committee, a resident selected from the resident's program by the aggrieved resident, and the Chair of the MEC (or a designate) shall receive and evaluate all pertinent information including, if necessary, direct testimonies from the affected parties within thirty (30) days of having been appointed. The resident/intern shall have the right to meet with the committee and to call witnesses in his/her behalf. The committee shall make its decision and resolve the matter, in writing, by majority vote within fourteen (14) days of concluding its review.

Said decision shall be final and binding on the parties, subject to approval of the Medical Education Committee, Medical Staff Executive Committee and the Board of Directors. Any action taken by any person on behalf of HMC shall be subject to the protections and immunities provided in Section 3 and the confidentiality requirements of Section 4 of the Pennsylvania Peer Review Protection Act.

HMC-03261
CONFIDENTIAL