IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LISA BROWN, M.D., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 05-32 E |
| ) | |
| HAMOT MEDICAL CENTER, ) | |
| ) | |
| Defendant. ) | |

PLAINTIFF'S REPLY BRIEF IN SUPPORT OF
HER MOTION FOR PARTIAL SUMMARY JUDGMENT

While the dispute between the parties raises issues both serious and numerous, Plaintiff ("Brown") moved for partial summary judgment based on select portions of the contract ("Agreement" or "Resident Agreement") between her and Defendant ("Hamot"). Hamot's Memorandum of Points and Authorities in Opposition to Brown's Motion fails to recognize relevant undisputed facts, fails to support facts it claims are disputed, and fails to successfully challenge applicable law. Brown thus is entitled to the partial summary judgment sought.

   A.   Hamot Breached Contractual Termination Provisions

Hamot argues that it did not terminate Brown's contract; instead, it simply decided not to renew her contract. This argument, however, is plainly at odds with Hamot's own contract.

The Court should first review Section 5 of the contract between Hamot and Brown. Brown Ex. B. It includes Hamot's recognition that promotion is mandatory

unless a resident's participation is terminated. Ex. B § 5.[1]  Thus, by contract, Hamot has drastically curtailed its range of options with regard to how it may end a resident's participation in the Program.

Without accounting for this language, Hamot argues that it "has consistently and undisputedly stated that its action was a decision <u>not to renew</u> the Agreement under Section 5." Hamot Opposition at 3 (emphasis in original).  Hamot ignores the language of Section 5 which states that action taken under Section 5 is in fact a <u>termination</u>. Hamot then ignores the other relevant place in the Agreement where the word "termination" appears -- Section 3.  Section 3, of course, provides that termination must be for "proper cause."  The language of Section 3 and Section 5 is <u>not</u> mutually exclusive; instead, it is complementary.

Hamot's use of the word "termination" in both Section 5 and Section 3 has a determinative effect.  First, "termination" is not a word subject to ambiguity under the circumstances, and so is ripe for interpretation by the Court.  <u>Stendardo v. Federal Nat'l Mortgage Ass'n</u>, 991 F.2d 1089, 1094 (3d Cir.1993).   At minimum, it certainly is distinct from "not renew," Hamot's position on this issue.  Second, as a matter of contract interpretation, parallel terms are subject to the doctrine, also used in statutory interpretation, that like terms are assumed to have like meaning and should be interpreted alike.  <u>See, e.g.</u>, <u>Taracorp., Inc. v. NL Industries, Inc.</u>, 73 F.3d 738, 744 (7th Cir. 1996).  Third, as a practical matter, the Resident Agreement simply does not provide for passive non-renewal, the position Hamot now adopts.  Under Section 5 any

---

[1] This provision states that "the resident shall be promoted to the next level of resident training . . . unless either [Hamot] or the Resident shall give written notice to the other of termination . . . ."

exception to the mandatory promotion of residents must be done by "termination" -- Hamot's word -- from the Program.

In sum, the terms of the contract are plain and not reasonably subject to different interpretations. Whatever Hamot wishes was in the Agreement, the language of the Agreement states that when Hamot affirmatively ends a resident's participation in the Program, that is a termination. Termination must be made for proper cause. Hamot did not have proper cause.

      B.     <u>Hamot Did Not Have Contractual Proper Cause</u>

Hamot next argues that, even if it was required to have proper cause for Brown's termination, that such proper cause existed. This is another after-the-fact rationalization that offers Hamot no refuge from summary judgment.

Hamot showed in its Brief in Support of Summary Judgment that Hamot officials involved in Brown's termination, and its subsequent review, did not consider whether Hamot had "proper cause" for its action. None of Hamot's medical professionals involved in Brown's termination could recall such a discussion. J. David Albert, M.D., chaired the committee that reviewed Brown's dismissal from the program. He testified that he had no knowledge of anyone on the Committee discussing the standard of "proper cause" for termination. Brown Ex. K at 33. James Pepicello, a Senior Vice President at Hamot and the individual who initiated Hamot's review of Brown's termination through grievance proceedings, likewise testified that he did not consider the proper cause standard in the context of Brown's termination. Brown Ex. J at 49. Finally, John Lubahn, the terminating official, did not recall discussing "proper cause"

with the faculty when he raised Brown's termination. Brown Ex. L, attached, Additional Excerpt from Lubahn Transcript at 11 lines 11 to 13.

Hamot now attempts to list alleged deficiencies in Brown's performance as justifying its decision. But the Court need not consider how to interpret "proper cause," and need not consider any facts about Brown's performance. The analysis has two simple steps. First, Hamot promised, through Sections 5 and 3 of the Agreement, not to terminate residents unless it had "proper cause." Second, Brown can show definitively that Hamot did not apply a "proper cause" standard in her termination from the Program, because no responsible Hamot official could either define this standard; state that it was applied to Brown; or state, at the time she was terminated, that her conduct met this standard. Consequently, if Hamot did not even consider the standard it promised Brown (and all residents) it would use in termination decisions, then Hamot breached its contract with Brown as a matter of law. Accordingly, the Court should grant summary judgment for Brown on Count Three.

### C. Hamot Violated Its Advancement and Dismissal Policy

Forced now to face the inconsistencies and errors that infused all aspects of its decision to terminate Brown, Hamot takes the remarkable position in its Opposition Brief that it is not required to follow its own rules, drafted by the Program Director himself, in a matter as important as the dismissal of residents. A jury's likely interest in this position is a matter for another day. For now, Hamot's position is wrong and can be disregarded as a summary judgment defense.

Hamot first argues that its Advancement and Dismissal Policy is not a contract. This argument has no merit. The Policy is expressly incorporated into the Resident

4

Agreement. Brown Exhibit B ¶ 4.[2] Hamot then attempts to support its argument by citing cases such as Beider v. W.R. Grace, Inc., 461 F. Supp. 1013 (E.D. Pa. 1978); Nicholas v. Penn. State Univ., 227 F.3d 133 (3d Cir. 2000); and Richardson v. Cole Memorial Hospital, 466 A.2d 1084 (Pa. Super. Ct. 1983). These cases are not relevant because each concerns an at-will employee who seeks to prove that, by virtue of a policy or handbook, the employee had an implied employment contract. See, e.g., Beider, 461 F. Supp. at 1016. Brown was not an at-will employee, and she is not seeking to prove that the Advancement and Dismissal policy constitutes an implied employment contract. Instead, Brown and Hamot entered into a contract whereby Hamot promised Brown that Hamot's rules, regulations, and policies would govern their relationship. In sum, the cases on which Hamot relies to disregard strict application of the Advancement and Dismissal Policy do not apply to this case.

Hamot also argues that it is not bound to comply with the Advancement and Dismissal Policy because the provision in the contract relating to policies, rules and regulations states that only the resident is bound by such policies. This argument is also without merit. Just as a contract need not be signed by both parties to be enforceable, Sullivan v. Allegh. Ford, 423 A.2d 1292, 1295 (Pa. Super. Ct. 1980), the only conceivable reason the Agreement is phrased that way is because Hamot, as the employer, drafter, and enforcer of its policies, cannot avoid being bound by them. It

---

[2] This provision states that "[Hamot] and the Resident intend to be legally bound by the terms of this Agreement, and the Resident also agrees to be bound by all terms of the [Hamot] rules and regulations and other policies approved by the Medical Staff Executive Committee . . . ." It is difficult to question the intent of the parties -- the determination of which is the purpose of contract interpretation, Mellon Bank, N.A. v. Aetna Business Credit, Inc., 619 F.2d 1001, 1009 (3d Cir.1980) -- when such intent is so stated.

5

need not expressly state its obligation to follow its own policies. As a practical matter, it makes no sense as it concerns a policy in which Hamot-resident interaction is so closely intertwined that only Brown is bound by the policy. Indeed, this position would render Brown's adherence to the Policy, as required by the Agreement, meaningless. How could Brown carry out any remedial faculty assignments, for example, if Hamot were not bound to give them? Governing law provides that contract terms will not be construed so as to render them meaningless. USX Corp. v. Liberty Mut. Ins. Co., 444 F.3d 192, 200 (3d Cir. 2006). Hamot's interpretation would cause this result, and thus should carry no weight.

Hamot next asserts that in any event, it followed the Advancement and Dismissal Policy. Hamot here again attempts to show alleged performance deficiencies by Brown. These assertions are fully rebutted by evidence which cannot be disputed as a matter of law. First, Hamot recognized in its Agreement with Brown that "the Resident meets all requirements for participation in a graduate program of medical education conducted by" Hamot. Brown Exhibit B at 1, ¶ 3. Second, Hamot's Advancement and Dismissal Policy requires that any deficiencies be handled through a process of warnings, feedback, and probation. It is undisputed that these processes were not followed before Brown was terminated, given that Hamot has failed to rebut Brown's relevant evidence. Ex. G, Aug. 15, 2006 Brown Decl. ¶¶ 18-33. Brown's probationary period had ended, and the Advancement and Dismissal Policy makes no exceptions if additional remediation is necessary.

Thus, as a matter of law Hamot did not follow its own Advancement and Dismissal Policy, which it promised by contract to apply to Brown.

D.  <u>Conclusion</u>

Hamot has failed to provide adequate evidence to show that there are genuine disputes of material fact precluding summary judgment for Brown on Counts Three and Four, or that Brown is not entitled to judgment as a matter of law. Accordingly, the Court should grant Brown's Motion for Partial Summary Judgment.

Respectfully submitted,

Leech Tishman Fuscaldo & Lampl

__/s/ Patrick Sorek_____
Patrick Sorek
Pa. ID 41827
Alisa N. Carr
Pa. ID 56658
Citizens Bank Building, 30th Floor
525 William Penn Place
Pittsburgh, Pennsylvania  15219
(412) 261-1600

Counsel for plaintiff