NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 08-1393

LISA BROWN, M.D.,
                        Appellant

v.

HAMOT MEDICAL CENTER

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(D.C. Civil No. 05-cv-00032-E)
District Judge: Honorable Maurice B. Cohill, Jr.

Submitted Under Third Circuit LAR 34.1(a)
March 3, 2009

Before: BARRY, WEIS, and ROTH, Circuit Judges

(Opinion Filed: March 26, 2009)

OPINION

BARRY, Circuit Judge

Lisa Brown appeals from the District Court's grant of summary judgment to

Hamot Medical Center ("Hamot") on her claims for gender discrimination under Title

VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2 et seq., and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. Ann. § 951 et seq., and breach of contract.  Because the Court correctly interpreted the parties' contract and correctly concluded that Brown's discrimination claims failed as a matter of law, we will affirm the judgment of the District Court.

## I.

Brown was a third-year resident in Hamot's Orthopaedics Residency Program when the Program Director notified her on March 1, 2004 that she would not be promoted to the next level of resident training due to academic and clinical deficiencies. Hamot employs its residents pursuant to one-year contracts, which provide that: "Either party may terminate this Agreement at any time upon notice thereof for proper cause," Agreement § 3(1), and:

> Upon satisfactory completion of the resident training year as determined by the program director and faculty, the Resident shall be promoted to the next level of resident training required and approved for his/her specialty, unless either [Hamot] or the Resident shall give written notice to the other of termination upon completion of the current contract year.  Such notice must be provided at least one hundred twenty (120) days before completion of the contract year.

Agreement § 5.  After being notified that she would not be promoted, Brown continued to work at Hamot until June 30, 2004, the end date of her existing contract.

Brown argues that her nonpromotion was the result of gender discrimination.  She points out that only one other woman has participated in the Orthopaedics Residency

Program at Hamot, noting also that women made up only 2.6% of all orthopaedics residents nationally in 2002. She claims, moreover, that she was subjected to unwanted gender-related and sexual comments from Hamot physicians and that Hamot showed favoritism towards men when it allowed certain men to participate in the program despite demonstrated performance problems and provided extra remedial help to certain men who received low exam scores. She argues that, to the extent she did display academic and clinical deficiencies, it was because she received a lack of support and training because she was a woman.

Hamot counters with objective evidence of serious academic and clinical problems. While Brown did receive some positive comments and evaluations while at Hamot, each of her annual and semi-annual evaluations stated that she needed improvement and needed to increase her reading to improve her knowledge base. Several attending physicians complained to the Program Director about specific incidents of deficient clinical performance, and the Director himself witnessed poor clinical and academic performance on more than one occasion. Every year, residents were required to take the Orthopaedic In-Training Examination ("OITE"), and Brown's scores were consistently extremely low.[1]

Brown challenged the Program Director's decision under Hamot's Grievance

---

[1] In 2001, Brown ranked in the sixth percentile nationally among residents in her year of training; in 2002, she ranked in the tenth percentile; and in 2003 she ranked in the second percentile.

Resolution and Due Process Procedure, and Hamot's Grievance Committee unanimously upheld the decision.  The Medical Education Committee, Medical Staff Executive Committee, and Hamot Board of Directors unanimously upheld the decision as well.  During these review processes, Brown did not contend that her nonpromotion was due to gender discrimination.

The District Court granted summary judgment to Hamot, finding that Brown failed to state a prima facie case of gender discrimination because she failed to show that she was qualified to move on to the next year of residency and failed to show that similarly situated persons were promoted while she was not.  The Court also found that, even if Brown had succeeded in stating a prima facie case, she failed to rebut Hamot's legitimate nondiscriminatory reasons for nonpromotion with adequate evidence of pretext, and no reasonable jury could find that she was not promoted for other than academic reasons.  The Court also rejected the claims of breach of contract, finding that, under the plain language of the contract, Hamot did not need "proper cause" for nonpromotion and was not contractually or otherwise bound to follow its Advancement and Dismissal Policy.

Brown renews her claims on appeal.  We have jurisdiction pursuant to 28 U.S.C. § 1291 and exercise plenary review over the District Court's order granting summary judgment.  McGreevy v. Stroup, 413 F.3d 359, 363 (3d Cir. 2005).

## II.

**A.   Discrimination Claims**

We interpret Brown's Title VII and the PHRA claims coextensively, as both statutes require an identical analysis under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973).  Atkinson v. LaFayette Coll., 460 F.3d 447, 454 (3d Cir. 2006).

Under the McDonnell Douglas framework, an employee seeking to establish a gender discrimination claim has the initial burden of establishing a prima facie case by showing: (1) that she was a member of a protected class, (2) that she was qualified for the job, and (3) another person, not in the protected class, was treated more favorably.  If the employee succeeds in stating a prima facie case, the burden shifts to the employer to state a legitimate, nondiscriminatory reason for its action.  Then, the employee may respond by showing that the employer's proffered reason was actually a pretext for gender discrimination.

The District Court found that Brown was not qualified to advance to the fourth year of residency.  Brown disagrees, and argues that even if she was not qualified, it was because she was "set up to fail" due to Hamot's unequal treatment.  We have recognized that "when an employer discriminatorily denies training and support, the employer may not then disfavor the plaintiff because her performance is affected by the lack of opportunity."  Ezold v. Wolf, Block, Schorr and Solis-Cohen, 983 F.2d 509, 540 (3d Cir.

1992). Suffice it to say that we agree with the District Court that Brown has not shown that any similarly situated male resident was treated more favorably than she. The Court correctly concluded that Brown failed to establish a prima facie case.

Even assuming, however, that Brown established a prima facie case, Hamot came forward with legitimate nondiscriminatory reasons for her nonpromotion (namely, poor academic and clinical performance), and Brown failed to cast doubt on those reasons.[2] Stated somewhat differently, and as the District Court recognized, Brown did not present evidence from which any reasonable jury could conclude that "but for" her gender, she would have been promoted. See Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994). Summary judgment was properly granted to Hamot on Brown's gender discrimination claims.

**B.  Breach of Contract**

Brown argues that the District Court erred when it found that the parties' employment contract did not require "proper cause" for her nonpromotion and did not bind Hamot to follow its Advancement and Dismissal Policy. Under Pennsylvania law, if the contractual language is clear (that is, not ambiguous), construction of the contract

---

[2] For example, while Brown denies that she was ever late in responding to the emergency room or inferior in terms of providing emergency care, as reported by several attending physicians, she does not deny that she was unable to respond to key questions during a presentation, arguing only that one other resident present at the presentation was similarly unable to do so. She conceded that she had trouble finding time to read, and she does not dispute her poor OITE scores.

is a matter of law over which we exercise plenary review, while, if the language is ambiguous, interpretation of the contract is a matter of fact that we review for clear error.

The District Court correctly concluded that the contractual language was not ambiguous and, therefore, that Hamot did not breach the contract by terminating its relationship with Brown without establishing the "proper cause" that Brown alleged was required. As the Court recognized, the contract contemplates two different ways by which the relationship between Hamot and a resident can end: (1) either party may terminate the contract immediately at any time for proper cause, pursuant to § 3(1), or (2) either party may elect not to continue to the next level of training, provided that notice is given 120 days before completion of the contract year, pursuant to § 5, as it was here. The Court also correctly concluded that nothing in the contractual language required Hamot to follow its own Advancement and Dismissal Policy.

## III.

We will affirm the judgment of the District Court.